IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAULA F. DeFRANK )
    Plaintiff )
)
v. ) CASE NUMBER 1:07cv775-WKW
)
ARMY FLEET SUPPORT, L.L.C., ) (JURY DEMAND)
    Defendant )

## COMPLAINT

NATURE OF THE ACTION

This is an action under the Rehabilitation Act of 1973, § 504, *et seq.*, as well as the laws of the State of Alabama, to redress unlawful treatment of the plaintiff while she was employed by Army Fleet Support, L.L.C. ("AFS").

JURISDICTION AND VENUE

1) Jurisdiction of this court is invoked over this action pursuant to 28 U.S.C. §§ 1331, 1343(a) (4), 1367(a); 29 U.S.C. § 794; and 2000(d). All actions alleged herein occurred while the plaintiff was employed by the defendant in Coffee County, Alabama.

PARTIES

2) The Plaintiff, Paula F. DeFrank, is above the age of nineteen years and a resident of Houston County, Alabama, at all times pertinent to this suit.

3) The Defendant, Army Fleet Support, L.L.C., is an entity doing business in the state of Alabama, as well as elsewhere.

1

## FACTS

4) Paula DeFrank was hired to work as an aircraft mechanic at Fort Rucker, Alabama by Dyncorp Technical Services, LLC in January 2000. She was initially assigned to the motor pool and upon completion of her probationary period was re-assigned as a mechanic to Hanchey Army Air Field. DeFrank performed the duties of her job satisfactorily and was continued, or rehired, in her employment as an aircraft mechanic by the defendant Army Fleet Support, L.L.C., when the defendant won the aircraft maintenance contract for Fort Rucker from the U. S. Department of Defense. DeFrank continued to perform her duties satisfactorily while employed by AFS.

5) DeFrank was injured in an automobile accident in January 2004. As a result of these injuries, her physician instructed that she not return to work until she had consulted with an orthopedic surgeon. DeFrank's orthopedic surgeon, Dr. John Dorchak, scheduled her for surgery and instructed she could return to work until August 3, 2004 with restrictions that she not engage in repetitive motion or outstretched reaching and not lift more than 20 pounds. AFS accommodated these restrictions and she returned to work on or about June 29, 2004.

6) DeFrank endured a lengthy period of recuperation following her surgery in August 2004, and was authorized by Dr. Dorchak to return to work on February 15, 2005 with restrictions stated as "no lifting > 25 lbs; no climbing; no excessive bending."

7) DeFrank was hospitalized again by her general physician February

14 through 21, 2005, and released to return to work on February 23rd. She returned to work on that date and AFS accommodated her physical restrictions as established by Dr. Dorchak.

8) Shortly after returning to work DeFrank was reassigned from the UH 64 helicopter project to establish a parts return area for the OH 58 helicopter project. She successfully performed her work with the accommodations provided by AFS even though she was in treatment for her constant pain until on or about July 18, 2005, when she began a period of disability leave ordered by her neurosurgeon. Another employee was assigned to the OH 58 helicopter parts return assignment while DeFrank was on short-term disability leave.

9) Dr. Dorchak again authorized DeFrank to return to work, with restrictions, on December 27, 2005. AFS initially refused to accommodate DeFrank's restrictions on December 22, 2005. DeFrank asked to be transferred to a position as a material inspector, but was denied because there were no positions available.

10) The defendant finally approved her request for return to duty on January 11, 2006 with accommodations for restrictions stated as "no lifting over 20 pounds; no repetitive bending for three months". DeFrank's Return to Work authorization was back-dated to December 27, 2005 by the defendant.

11) When DeFrank returned to work her supervisor and coworkers subjected her to isolation and diminished work assignments. DeFrank's supervisor informed her that he did not know why she was there. Despite this

treatment she continued to work to the best of her ability until on or about February 22, 2006 when her supervisor began to not give her any work assignments and she was ignored and ostracized by her supervisor and co-worker.

12) DeFrank filed a grievance with the defendant complaining of disability discrimination on February 23, 2006. No action was taken on this grievance.

13) AFS completed another Return to Work form for DeFrank on March 27, 2006 which listed her restrictions as "no lifting over 25 lbs.; no excessive bending for three months".

14) DeFrank continued to work under these adverse conditions until on or about April 4, 2006, when she asked her co-worker why they were not communicating like they had before. He responded "You know what's going on!" and then said "You need to go to church!"; "You need Christ in your life!"; and, "I rebuke you!"

15) DeFrank told her supervisor about this conduct and he informed her that he would speak to the co-worker. He later called DeFrank into his office and told her "As of tomorrow, you are going back on the helicopter." DeFrank told him that she had physical restrictions and he responded that he did not know what they were. When DeFrank obtained a copy of her work restrictions for him, he told her that another employee was working with restrictions and that she would be returned to unrestricted duty on the next day.

16) On April 5, 2006, DeFrank's general physician ordered her not to

4

work for thirty days. DeFrank subsequently had additional surgery, but was denied short-term disability leave by AFS. She was authorized to return to work by her physician on June 19, 2006, with a restriction of "no lifting above 20 lbs.; no excessive bending". AFS refused to permit DeFrank to return to work, stating that her disability could not be accommodated.

17) DeFrank requested that AFS allow her to reclassify to any other position, but AFS refused this accommodation on the grounds that she could not request reclassification while she was on disability leave. The defendant did not discuss any other accommodation with her. On October 19, 2006 the defendant sent her a letter informing her that her employment was terminated on October 12, 2006.

18) DeFrank sought the assistance of the defendant's human resources office in securing unemployment benefits upon her termination of employment. The defendant's personnel informed DeFrank that she was not eligible for unemployment because she was an "inactive" employee of the defendant. DeFrank relied upon this representation of the defendant and did not make application for unemployment benefits that she was entitled to and for which she had made contribution during her employment by the defendant.

**COUNT ONE**
**(Rehabilitation Act of 1973, Section 504)**

19) Plaintiff incorporates by reference each and every allegation contained in paragraphs one through eighteen as if fully rewritten herein and

further states:

20) Count One of this Complaint is brought pursuant to 29 U.S.C. § 794 et seq.

21) The defendant, Army Fleet Support, L.L.C., is an entity receiving Federal financial assistance under programs or activities conducted by an Executive agency as defined in 29 U.S.C. § 794 et seq. Specifically, the defendant receives federal assistance in a number of means, including but not limited to, the use of real property; training and other services; the use of vehicles, specialized equipment, and other personal property; the lease or real and/or personal property owned by the federal government for less than fair market value; and, in other ways not listed here.

22) The Plaintiff is a qualified individual with a disability, or one with a record of a disability, or one who is perceived to have a disability, as defined in 42 U.S.C. § 12111(8), and who was an employee of the defendant at all times pertinent to this suit..

23) The Plaintiff was unlawfully discriminated against by the denial of accommodation for said disability, or the record or perception thereof; and by her discharge from employment by the defendant Army Fleet Support, because of her disability, or record or perception thereof, and in retaliation for seeking said accommodations.

24) Fleet Services unlawfully retaliated against DeFrank for pursuing her rights under the Rehabilitation Act and/or the Americans with Disabilities Act

6

by withdrawing her accommodations and terminating her employment, as well as by other means according to proof at the trial of this matter.

25) The actions of the Defendant in this denial of rights secured by law were committed intentionally and in reckless disregard for the law.

WHEREFORE, the plaintiff prays that Army Fleet Support, upon a trial by jury, be adjudicated to have violated the Rehabilitation Act, that she be awarded (i) appropriate damages to compensate her for any and all back pay and other benefits, including but not limited to reinstatement, promotions, transfers, and any other appropriate relief that the plaintiff has lost as a result of defendant's violation of the Rehabilitation Act; (ii) appropriate "compensatory damages" within the meaning of 42 U.S.C. § 1981a or as otherwise allowed by state and federal law; (iii) punitive damages in an appropriate amount as determined by the jury under state or federal law; (iv) prejudgment interest; (v) compensation for any increased tax liability she incurred as a consequence of the defendant's wrongful acts; (vi) that the defendant be permanently enjoined from continuing these unlawful practices; (vii) reasonable costs and attorney's fees; and (viii) any and all other relief to which she may be entitled in law or in equity.

## COUNT TWO
### (Fraud/Deceit)

26) The plaintiff reasserts and realleges paragraphs one through twenty-five as if fully set forth herein.

27) This count is brought pursuant to the Code of Alabama 1975, §§ 6-5-

100 *et seq.*

28) The defendant induced the plaintiff to forego application for unemployment benefits to which she was entitled by misrepresenting her eligibility to receive benefits under the law. The defendant secured a financial benefit by inducing the plaintiff to forego application for said benefits.

29) The plaintiff believed said representations, relied upon them, and acted upon them by not submitting an application for unemployment compensation benefits as set forth above.

30) Said representations were false and were made by the defendant by mistake, but with the intent that the plaintiff rely upon them; and/or said representations were false and the defendants, without knowledge of the true facts, recklessly misrepresented the facts; and/or said representations were false and the defendants knew they were false, but made them regardless of this knowledge..

31) The defendant acted in bad faith in wantonly and intentionally misrepresenting these facts to the plaintiff.

32) The plaintiff claims compensatory and punitive damages of the defendant in such amount as the jury may determine at the trial of the matter.

WHEREFORE, plaintiff prays that, after a trial by jury, judgment be entered against the defendant on this count with an award of compensatory damages equal to her financial losses and mental strain and emotional distress and an award of punitive damages in such amount as the jury determines to be sufficient to punish the defendants and to deter further wrongdoing.

THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.

Respectfully submitted this 28th day of August 2007.

/s/ Jimmy Jacobs
JIMMY JACOBS (JAC051)
Attorney for Plaintiff
4137 Carmichael Rd, Ste 100
Montgomery, Alabama 36106
(334) 215-1788

9

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000248
Cashier ID: khaynes
Transaction Date: 08/29/2007
Payer Name: JIMMY JACOBS
------------------------------------
CIVIL FILING FEE
 For: JIMMY JACOBS
 Case/Party: D-ALM-1-07-CV-000775-001
 Amount:         $350.00
------------------------------------
CHECK
 Check/Money Order Num: 2502
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

PAULA F. DeFRANK  v. ARMY FLEET
SUPPORT, L.L.C.
```