IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAULA F. DeFRANK, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 1:07cv775-WKW |
| ARMY FLEET SUPPORT, LLC, | § | |
| Defendant. | § | |

DEFENDANT ARMY FLEET SUPPORT, LLC'S
EVIDENTIARY SUBMISSION IN
<u>SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Defendant Army Fleet Support, LLC ("AFS") hereby submits this evidentiary

submission in support of its contemporaneously filed Motion for Summary Judgment:

## INDEX

| Exhibit  No. | Description |
|---|---|
| A | Affidavit of John L. Hamlin with exhibits |
| B | Excerpts from deposition of Paula F. DeFrank with exhibits |
| C | Affidavit of Darlene Whelan with exhibits |
| D | Excerpts from deposition of Byron Register |
| E | Excerpts from deposition of Lowell Green with exhibits |

Respectfully submitted this 14th day of May 2008.

ARMBRECHT JACKSON LLP
Post Office Box 290
Mobile, Alabama 36601
Phone:        (251) 405-1302
Facsimile:    (251) 432-6843


By    /s/ Kirk C. Shaw (SHAW0466)
         Attorney for Army Fleet Support LLC


## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Jimmy Jacobs, LLC
4137 Carmichael Road, Suite 100
Montgomery, AL  36106


/s/ Kirk C. Shaw (SHAWK0466)

# EXHIBIT A

STATE OF ALABAMA

COUNTY OF DALE

## AFFIDAVIT OF JOHN L. HAMLIN

John L. Hamlin, after being first duly sworn, deposes and says as follows:

1.    My name is John L. Hamlin. I am over the age of majority and competent to testify to the matters stated herein. This affidavit is based on my personal knowledge.

2.    I am General Manager of Army Fleet Support, LLC ("AFS"). Prior to September 17, 2007, I was Director, Business and Contracts, for AFS. I held that position beginning in December 2005 and until I became General Manager.

3.    AFS was the successful bidder in response to the US Army Aviation & Missile Command's ("the Government's") Request for Proposals to provide maintenance and logistics support to aircraft assigned to the US Army Aviation Center, Aviation Technical Test Center, US Army Aeromedical Research Laboratory and other tenant and satellite units at Fort Rucker, Alabama, beginning December 1, 2003. The primary objective of the Government's contract to AFS ("the Contract") was, and is, to provide aircraft maintenance in support of the flight training programs at Fort Rucker.

4.    AFS was awarded this Contract through competitive bidding that involved the incumbent contractor, DynCorp Technical Services, LLC; Sikorsky Support Services Incorporated, a previous contractor; and others.

5.    This Contract is the largest aircraft maintenance contract in the Department of Defense. More than 3,200 people are employed by AFS in its maintenance and logistics program at Fort Rucker.

**Exhibit A**

6.    The services performed by AFS under the Contract are on a Cost Reimbursable Plus Award and Incentive Fee basis, as provided in the Request for Proposal upon which all bidders bid.  In other words, AFS is reimbursed by the Government for its costs, plus an agreed percentage of the savings below target costs and the opportunity for incentive fees, based on performance.  The base period of the Contract was for one year, with options to extend up to a total of ten years, three months. Currently, the Contract has been extended by the Government through September 30, 2008.

7.    Per the contract terms dictated by the Government in its Request for Proposals, "[a]ll work will be performed in government furnished facilities at Fort Rucker, Alabama, and other locations as required." *(Section C.1 of Attachment 1 (Continuation Sheet) of the Performance Work Statement, p. 2 to my affidavit.)* The Government's Contract further provides that "[t]he Government will furnish the materials, supplies, equipment, machinery, [and] tools specified in the exhibits [to the Contract]." *(Id., § C.10.1, p. 4-5 to my affidavit.)* These materials, supplies, etc. include: existing aircraft maintenance facilities; Government-owned vehicles; new equipment training for the maintenance of new equipment that AFS is required to support; protective and flight clothing; utilities; aviation and motor vehicle fuels, oils, and petroleum products required in the execution of the Contract; and reproduction (duplication) services. *(Id., §§ C.10.1.1. - C.10.7 & Attachments 9, 9a, 10, 11 & 14, pp. 4-6, 10-17 to my affidavit. (The detailed lists following Attachments 9 and 9a have been omitted.))* AFS is

2

accountable to return the facilities and non-expendable property to the Government or to turn them over to the successor contractor at the conclusion of the Contract.

8.     The furnishing of the above property pursuant to the Contract is not a subsidy or gift to AFS by the Government. These provisions were in the Request for Proposal issued by the Government and on which AFS and all other bidders submitted their Proposals. As a practical matter, since the objective of the Contract is to provide aircraft maintenance in support of the flight training programs at Fort Rucker, and the Government owns all of the real property and facilities comprising Fort Rucker, the successful bidder must maintain its operation on Fort Rucker to accomplish its mission in a timely manner. The facilities on Fort Rucker and most of the equipment used there by AFS pre-existed the onset of the Contract and was used by previous contractors.

9.     It is my understanding that the Government has entered similar contracts with other maintenance contractors over, approximately, the last fifty years. Were the Government not to furnish the property and services listed, the successful bidder would have to furnish that property and, in turn, charge the Government for same on a "cost-plus" basis.

10.     The Government's furnishing of certain facilities and property for the use of AFS does not increase AFS's profits. If anything, it reduces AFS's profits since the Contract is a "cost-plus" one and AFS has no opportunity to earn a profit on the cost of the facilities and property furnished by the Government.

11.     In performing its Contract with the Government, AFS is subject to many

3

regulations and directives. Those include regulations of The Department of Defense and

The Department of the Army. *(Id., § C.12, pp. 7-9 to my affidavit).*

   Further, Affiant saith not.

                      JOHN L. HAMLIN

Sworn to and subscribed to
before me on this the ___9<u>th</u>___
day of May, 2008.

NOTARY PUBLIC

[Affix Notarial Seal]

My Commission Expires:

June 20. 2010

| ATTACHMENT 1 CONTINUATION SHEET SECTION C.1 | Reference No. of Document Being Continued PIIN/SINN DAAH23-03-R-0211    MOD/AMD  AMD 0006 DESCRIPTION/SPECIFICATIONS/WORK STATEMENT INTRODUCTION | Page i SECTION C.1 |
|---|---|---|
| Name of Offeror or Contractor: | | |

C.1    INTRODUCTION...........................................................................................................1
    C.1.1    Performance Work Objective.............................................................................1
    C.1.2    Changes to the Available Aircraft Requirement ...............................................1
    C.1.3    Applicable Documents.........................................................................................1
    C.1.4    Performance Inspection Criteria.........................................................................1
    C.1.5    Tasks in Performance Work Statement (PWS) .................................................2

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 1 |
|---|---|---|
| | PIIN/SINN DAAH23-03-R-0211    MOD/AMD  AMD 0006 | |
| SECTION C.1 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT | SECTION C.1 |
| | INTRODUCTION | |

## C.1    INTRODUCTION

The purpose of this contract is to provide quality maintenance support to the aircraft assigned as reflected in Attachment 2 to the US Army Aviation and Missile Command (AMCOM), Aviation Technical Test Center (ATTC), US Army Aeromedical Research Laboratory and other tenant and satellite units on Fort Rucker, Alabama. All work will be performed in government furnished facilities at Fort Rucker, Alabama, and other locations as required.

### C.1.1    Performance Work Objective

The primary objective of this contract is to provide aircraft maintenance in support of the flight training at Fort Rucker, Alabama. For each month during the fiscal year (FY), the Government will provide the Contractor a fixed percentage of aircraft fleet required to be available for each day of the month having flight operations. The required number of available aircraft will vary by aircraft type. Contractor must execute aircraft maintenance to meet the available aircraft requirement for the month. The monthly projected available aircraft required for FY04 is provided in **Attachment 2**. Contractor must develop and execute a maintenance program to ensure the specified numbers of aircraft listed are available for launch. The Contractor shall maintain aircraft in accordance with appropriate Technical Manuals, Federal Aviation Regulations, and US Army Aviation Center (USAAVNC) Regulations and all Army Regulations.

### C.1.2    Changes to the Available Aircraft Requirement

Changes to Attachment 2 may be made by the Contracting Officer Representative (COR) and provided to the Contractor two (2) weeks prior to the beginning of the month. After the two (2) week point, the requirement for available aircraft is fixed. Configuration and number of aircraft required shall be provided to the Contractor on a daily basis. Changes to aircraft configuration and configuration quantity only will be submitted no later than 3:00 pm the day prior to the actual requirement. Changes in configuration do not affect the number of aircraft required to be available.

### C.1.3    Applicable Documents

a. Where specific version of a document is called out as a reference, no other version shall be used without prior written consent of the Contracting Officer. The applicable version of subsidiary (second-tier) documents listed below shall be that version dated either concurrent with or just prior to the date of the listed documents.

b. The Contractor shall generate and/or provide documentation as required by this Performance Work Statement, and the Contract Data Requirements List (CDRL) at Exhibit A. Exhibit A shall also apply to all options years.

c. The documents listed on the Document Summary List (DSL) at Attachment 7 form a part of this contract to the extent invoked by specific reference in other paragraphs of this contract. Revision letters, amendment indicators, notices, supplements, tailoring, and dates are omitted when listed in other parts and sections of the contract. Documentation identified on the DSL shall be made available upon request for Government review in its current available format.

d. Deliverable and non-deliverable data shall be capable of electronic transmission and storage to Government facilities or Government access electronically to the data at Contractor facilities. The Contractor shall maintain a system that provides electronic delivery/access to the Government. Data not developed under this contract will be provided in its currently available format.

### C.1.4    Performance Inspection Criteria

For this acquisition, the Government desires to emphasize mission, performance, quality of maintenance, supply management, limited depot repair of parts, and cost effectiveness. The performance inspection criteria for this contract are established in Attachment 8.

| CONTINUATION SHEET SECTION C.1 | Reference No. of Document Being Continued PIIN/SINN  DAAH23-03-R-0211        MOD/AMD  AMD 0006 DESCRIPTION/SPECIFICATIONS/WORK STATEMENT INTRODUCTION | Page 2 SECTION C.1 |
|---|---|---|

**C.1.5**    **Tasks in Performance Work Statement (PWS)**

The Contractor shall perform the entire spectrum of tasks as described in this PWS.  Tasks include the following areas:

| C.2 | AIRCRAFT MAINTENANCE |
|---|---|
| C.3 | MAINTENANCE OF COMPONENTS AND EQUIPMENT |
| C.4 | AUTOMATION |
| C.5 | OTHER SERVICES |
| C.6 | SUPPLY |
| C.7 | UNIQUE ATTC REQUIREMENTS |
| C.8 | MANAGEMENT AND PERSONNEL |
| C.9 | GENERAL PROVISIONS |
| C.10 | GOVERNMENT FURNISHED PROPERTY AND SERVICES |
| C.11 | DEFINITIONS AND ACRONYMS |
| C.12 | REFERENCES |

**ATTACHMENTS**

1    Performance Work Statement
2    Required Aircraft Table
3    Assigned Aircraft
3a    Projected Assigned Aircraft FY 04 - FY13
4    US Army Aviation Center (USAAVNC) Flying Hour Program
      Critical Flight Hour Program
5    US Army Aviation Technical Test Center (ATTC) Estimated Flight Hours
6    ATTC Projected Maintenance Man hour Requirements Satellite Units
6a    Fort Rucker Historical Maintenance Man hour Requirements Satellite Units and Other
      Specific Tasks
7    Document Summary List/Regulations
8    Incentive Fee Determination Criteria
9    Government Furnished Property – Material and Supplies
9a    Government Furnished Property – Equipment
10    Government Furnished Property – Facilities
11    Government Furnished Property – General Service Agency (GSA) Vehicle Density List
12    Contract Security Classification Specification (DD Form 254)
13    Inter/Intraservice Support Agreement or Other Approved
14    Government Furnished Property - ATTC
15    Projected National Maintenance Program

**EXHIBITS**

Exhibit A    Contract Data Requirements List (CDRL)

| ATTACHMENT 1 CONTINUATION SHEET | Reference No. of Document Being Continued PIIN/SINN  DAAH23-03-R-0211     MOD/AMD  0001 | Page i |
|---|---|---|
| SECTION C.10 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GOVERNMENT FURNISHED PROPERTY AND SERVICES | SECTION C.10 3 April 2003 |
| Name of Offeror or Contractor: | | |

**C.10.   GOVERNMENT FURNISHED PROPERTY (GFP) AND SERVICES** ...................... **1**

   **C.10.1**   Government Property ............................................................................. **1**
      C.10.1.1   Government Facilities ............................................................. 1
      C.10.1.2   Government-Owned Vehicles .................................................. 1
      C.10.1.3   Government-Owned Aircraft .................................................. 1

   **C.10.2**   Calibration Service and Maintenance ................................................... **1**

   **C.10.3**   New Equipment Training (NET) ......................................................... **1**

   **C.10.4**   Protective and Flight Clothing ........................................................... **2**

   **C.10.5**   Utilities .............................................................................................. **2**

   **C.10.6**   Mobility Fuels ................................................................................... **2**

   **C.10.7**   Reproduction Service ........................................................................ **2**

   **C.10.8**   Contractor Provided Equipment ........................................................ **2**

   **C.10.9**   Utilization of Government Furnished Equipment ............................... **2**

   **C.10.10**   Status Report ................................................................................... **2**

| ATTACHMENT 1 CONTINUATION SHEET | Reference No. of Document Being Continued<br>PIIN/SINN DAAH23-03-R-0211    MOD/AMD 0001 | Page 1 |
|---|---|---|
| SECTION C.10 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT<br>GOVERNMENT FURNISHED PROPERTY AND SERVICES | SECTION C.10<br>3 April 2003 |

## C.10. GOVERNMENT FURNISHED PROPERTY (GFP) AND SERVICES

### C.10.1    Government Property

The Government will furnish the materials, supplies, equipment, machinery, tools specified in the exhibits. The Government will also provide repair parts and components for all Army aircraft, except the TH-67 through DoD Supply System (See Part C.6). Property provided by the Government will be in accordance with current Table of Distribution and Allowance (TDA) or as approved by the KO. The Contractor shall accomplish all maintenance functions relating to Government provided equipment under the terms of this contract as required by the Government Property clause.

### C.10.1.1    Government Facilities

The Government will furnish for use by the Contractor existing aircraft maintenance facilities, reserving for its own use such facilities as are required for flight operations, maintenance inspections, and supply and storage. The maintenance of facilities, commonly referred to as "repairs and utility", functions, will be the responsibility of the Government. For all alterations, modifications, or additions to facilities, a Facilities Engineering Work Request (DA Form 4283) shall be submitted through the Property Administrator (PA) to the Directorate of Engineering and Logistics (DEL). **The Government will provide facilities listed in Attachment 10 Lists Facilities.** The Contractor shall not perform any modifications to Government facilities without approval of the PA and the KO.

### C.10.1.2    Government-Owned Vehicles

The Government will furnish vehicles for official use by the Contractor. Government furnished non-tactical vehicles (NTV) will be furnished and maintained by the Government Services Administration (GSA) from GSA Interagency Fleet Management System (IFMS). All other types of Government-owned vehicles, i.e., fuel trucks, 5-ton wrecker, electric golf carts, etc., shall be furnished by the Government, but Contractor shall perform all maintenance. These Government-owned vehicles shall not be used to transport contractor employees between their homes and places of employment or for any personal business or benefit. All contractor employees operating Government-owned vehicles shall have a valid appropriate state operator's permit. Whenever possible, gas or electric powered "golf carts" shall be utilized in place of trucks, sedans, vans, or other "on-road" vehicles. The GSA Vehicle Density List at Attachment 11 contains trucks, sedans, and vans provided by the Government for contractor use. The Equipment List at Attachment 4a contains other type vehicles provided by Government for contractor's use. Contractor maintain a management information system on all vehicles and provide status IAW DI-MISC-80508.

### C.10.1.3    Government-Owned Aircraft

Title and control of Government-owned aircraft shall remain in and with the Government.

### C.10.2    Calibration Service and Maintenance

The Government will furnish only that calibration service and maintenance on Test, Measurement, and Diagnostic Equipment (TMDE), which is determined to be beyond the capability, responsibility and authority of the Contractor in accordance with those references cited in C.5.5 of this PWS.

### C.10.3    New Equipment Training (NET)

The Government will, when required, provide NET to the Contractor for the maintenance of new equipment introduced which the Contractor is required to support. Upon notification by the KO or COR that training is available, the Contractor shall provide personnel who require the training for performance of duties. Each person provided such training will incur a minimum two (2) year obligation, after completion of training, to serve in the job classification/position for which the training was received, provided the person remains employed by the Contractor. Persons receiving NET of two weeks or longer will not be eligible for additional formal training during the two (2) year obligation, unless such additional training is on equipment for the same aircraft system or there is a requirement to train an employee on more than one type aircraft during this period.

| ATTACHMENT 1 CONTINUATION SHEET | Reference No. of Document Being Continued PIIN/SINN  DAAH23-03-R-0211    MOD/AMD  0001 | Page 1 |
|---|---|---|
| SECTION C.10 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GOVERNMENT FURNISHED PROPERTY AND SERVICES | SECTION C.10 3 April 2003 |

## C.10.    GOVERNMENT FURNISHED PROPERTY (GFP) AND SERVICES

### C.10.1    Government Property
The Government will furnish the materials, supplies, equipment, machinery, tools specified in the exhibits. The Government will also provide repair parts and components for all Army aircraft, except the TH-67 through DoD Supply System (See Part C.6). Property provided by the Government will be in accordance with current Table of Distribution and Allowance (TDA) or as approved by the KO. The Contractor shall accomplish all maintenance functions relating to Government provided equipment under the terms of this contract as required by the Government Property clause.

### C.10.1.1    Government Facilities
The Government will furnish for use by the Contractor existing aircraft maintenance facilities, reserving for its own use such facilities as are required for flight operations, maintenance inspections, and supply and storage. The maintenance of facilities, commonly referred to as "repairs and utility" functions, will be the responsibility of the Government. For all alterations, modifications, or additions to facilities, a Facilities Engineering Work Request (DA Form 4283) shall be submitted through the Property Administrator (PA) to the Directorate of Engineering and Logistics (DEL). **The Government will provide facilities listed in Attachment 10 Lists Facilities.** The Contractor shall not perform any modifications to Government facilities without approval of the PA and the KO.

### C.10.1.2    Government-Owned Vehicles
The Government will furnish vehicles for official use by the Contractor. Government furnished non-tactical vehicles (NTV) will be furnished and maintained by the Government Services Administration (GSA) from GSA Interagency Fleet Management System (IFMS). All other types of Government-owned vehicles, i.e., fuel trucks, 5-ton wrecker, electric golf carts, etc., shall be furnished by the Government, but Contractor shall perform all maintenance. These Government-owned vehicles shall not be used to transport contractor employees between their homes and places of employment or for any personal business or benefit. All contractor employees operating Government-owned vehicles shall have a valid appropriate state operator's permit. Whenever possible, gas or electric powered "golf carts" shall be utilized in place of trucks, sedans, vans, or other "on-road" vehicles. The GSA Vehicle Density List at Attachment 11 contains trucks, sedans, and vans provided by the Government for contractor use. The Equipment List at Attachment 4a contains other type vehicles provided by Government for contractor's use. Contractor shall maintain a management information system on all vehicles and provide status IAW DI-MISC-80508.

### C.10.1.3    Government-Owned Aircraft
Title and control of Government-owned aircraft shall remain in and with the Government.

### C.10.2    Calibration Service and Maintenance
The Government will furnish only that calibration service and maintenance on Test, Measurement, and Diagnostic Equipment (TMDE), which is determined to be beyond the capability, responsibility and authority of the Contractor in accordance with those references cited in C.5.5 of this PWS.

### C.10.3    New Equipment Training (NET)
The Government will, when required, provide NET to the Contractor for the maintenance of new equipment introduced which the Contractor is required to support. Upon notification by the KO or COR that training is available, the Contractor shall provide personnel who require the training for performance of duties. Each person provided such training will incur a minimum two (2) year obligation, after completion of training, to serve in the job classification/position for which the training was received, provided the person remains employed by the Contractor. Persons receiving NET of two weeks or longer will not be eligible for additional formal training during the two (2) year obligation, unless such additional training is on equipment for the same aircraft system or there is a requirement to train an employee on more than one type aircraft during this period.

| ATTACHMENT 1 CONTINUATION SHEET | Reference No. of Document Being Continued PIIN/SINN DAAH23-03-R-0211.    MOD/AMD 0001 | Page 2 |
|---|---|---|
| SECTION C.10 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GOVERNMENT FURNISHED PROPERTY AND SERVICES | SECTION C.10 3 April 2003 |

### C.10.4    Protective and Flight Clothing
The Government will furnish protective and flight clothing, which shall be utilized by contractor personnel in areas requiring such in the performance of the contract. The Contractor shall submit requests for protective and flight clothing to the PA for approval.

### C.10.5    Utilities
The Government will furnish utility related services currently available in the facilities to be provided. These utilities include heating fuels, gas, electricity, water, and sewage. The Contractor shall abide by installation regulations on energy conservation.

### C.10.6    Mobility Fuels
The Government will furnish all aviation and motor vehicle fuels, oils, and petroleum products required in the execution of the contract.

### C.10.7    Reproduction Service
The Government shall provide, if available, all reproduction (duplication) required under the Government printing and binding regulations. If the Government cannot provide required services within the necessary timeframe, the contractor is authorized to utilize commercial sources. The contractor shall select the most economical means of obtaining services, considering overall quality services provided.

### C.10.8    Contractor Provided Equipment
The Contractor will provide all facilities, equipment, repair parts, supplies, and materials required by this contract except as otherwise designated as GFP/GFE. The Contractor shall assume property responsibility for Aircraft Basic Issue List Items (DA Form 2408-17 and DA Pam 738-751). Mechanics' hand tools as appearing on approved tool lists and supplies required to maintain said tools in functional condition are specifically excluded from provision as GFE under this contract. The Contractor shall submit an Installation Duplicating Equipment Inventory Report IAW DI-MISC-80508.

### C.10.9    Utilization of Government Furnished Equipment
The GFE shall be utilized in accordance with and utilization data shall be collected and reported on GFE as required by the FAR, DFARS, AFARS, and AR 71-13.

### C.10.10    Status Report
Vehicle and Equipment Deadline Status Report shall be prepared IAW DI-MISC-80508.

| ATTACHMENT 1 CONTINUATION SHEET | Reference No. of Document Being Continued PIIN/SINN  DAAH23-03-R-0211        MOD/AMD | Page i |
|---|---|---|
| SECTION C.12 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT REFERENCES | SECTION C.12 21 March 2003 |
| Name of Offeror or Contractor: | | |

**C.12    REFERENCES**............................................................................................................1

   **C.12.1    Primary Reference Documents**..........................................................................1

   **C.12.2    Reference Publications**......................................................................................1

   **C.12.3    Publications List**................................................................................................1

      C.12.3.1    Government Publications ..........................................................................1

      C.12.3.2    Commercial Publications .........................................................................2

      C.12.3.3    Army Approved Directives.......................................................................2

| ATTACHMENT 1 CONTINUATION SHEET SECTION C.12 | Reference No. of Document Being Continued PIIN/SINN DAAH23-03-R-0211    MOD/AMD DESCRIPTION/SPECIFICATIONS/WORK STATEMENT REFERENCES | Page 1 SECTION C.12 21 March 2003 |
|---|---|---|

## C.12    REFERENCES

### C.12.1    Primary Reference Documents

### C.12.2    Reference Publications

Government and commercial references required in support of this PWS total approximately 85,000 separate publications, precluding their being listed individually. Therefore, upon request, a copy of the most current DA Form 12 series, Adjutant General Publication Center Printout, and available indexes of commercial publications maintained by the present contractor will be made available. Also, upon request, the master library and engineering technical data library maintained in Building 415 by the present contractor will be available for review. Also, the contractor shall maintain a complete set of Army Approved Directives (C.12.3.3) in Building 412 designated reference library.

### C.12.3    Publications List

Specific types of government and commercial publications required, but not limited to, in support of this PWS are as follows:

### C.12.3.1    Government Publications

Department of the Army Regulations (AR)
Department of the Army Pamphlets (DA Pam)
Department of the Army Circulars (DA Cir)
Department of the Army Memorandums (DA Memo)
Department of Defense Regulations (DOD Reg)
Department of Defense Manuals
Federal Information Processing Standards (FIPS)
Common Tables of Allowance (CTA)
Department of the Army Field Manuals (DA FM)
Department of the Army Technical Manuals (DA TM)
Department of the Army Modification Work Orders (DA MWO)
Department of the Army Technical Bulletins (DA TB)
Department of the Army Training Circulars (DA TC)
Table of Organizational Equipment (TOE)
Federal Supply Classification (FSC)
Letter Orders (LOS)
Supply Bulletins (SB)
Department of Defense Specifications and Standards (DOD Specs & Stds)
Depot Maintenance Work Requirements
Department of Defense Flight Information Publications (DOD FLIPS)
US Army Aviation Center Regulations (USAAVNC Reg)
US Army Aviation Center Circulars (USAAVNC Cir)
US Army Aviation Center Pamphlets (USAAVNC Pam)
DA Regulations (USAAVNC Suppl to DA Reg)
    Federal Aviation Administration Regulation (FAR)
    Federal Aviation Administration Type Certificates
    Federal Aviation Administration Advisory Circulars
    Federal Aviation Administration Airworthiness Directives
    Federal Aviation Administration Summary of Supplement Type Certificates
    Military Specifications and Standards (MIL Specs & Std)
    Other Miscellaneous Publications
    US Army Test and Evaluation Command Regulations (ATEC Reg)
    US Army Test and Evaluation Command Pamphlets (ATEC PAM)
    US Army Materiel Command Regulations (AMC Reg)

| ATTACHMENT 1 CONTINUATION SHEET SECTION C.12 | Reference No. of Document Being Continued PIIN/SINN  DAAH23-03-R-0211     MOD/AMD DESCRIPTION/SPECIFICATIONS/WORK STATEMENT REFERENCES | Page 2 SECTION C.12 21 March 2003 |
|---|---|---|

      US Army Materiel Command Pamphlets (AMC Pam)
      US Army Developmental Test Command Regulations (DTC Reg)
      US Army Developmental Test Command Pamphlets (DTC Pam)
      US Army Developmental Test Command Circulars (DTC Cir)
      US Army Aviation Technical Test Center Regulations (ATTC Reg)
      US Army Aviation Technical Test Center Pamphlets (ATTC Pam)
      US Army Aviation Technical Test Center Circulars (ATTC Cir)
      ATTC Supplements to AMC Regulations (ATTC Suppl to AMC Reg)
      ATTC Supplements to DTC Regulations (ATTC Suppl to DTC Reg)
      ATTC Supplements to DA Regulations (ATTC Suppl to DA Reg)

**C.12.3.2**    **Commercial Publications**
      Manufacturers' Information Letters
      Manufacturers' Service Letters
      Manufacturers' Service Notices
      Manufacturers' Service Instructions
      Manufacturers' Service Bulletins
      Manufacturers' Sales Letters
      Manufacturers' Operator's Manuals
      Manufacturers' Services Manuals
      Manufacturers' Maintenance Manuals
      Manufacturers' Repair Parts Listings
      Manufacturers' Overhaul Manuals
      Manufacturers' Parts Price Lists
      Manufacturers' Engineering Drawings
      Commercial Publications.
      Manufacturers' Engineering Specifications
      Manufacturers' Special Service Tools
      Manufacturers' Test Specifications
      Other Miscellaneous Publications

**C.12.3.3**    **Army Approved Directives.**
      Contractor Procedural Manuals
      Contractor Process Controls
      Contractor Engineering Standards
      Contractor Engineering Change Memos
      Depot Level Maintenance Authorizations
      Technical Directive Routers
      DA Form 2028 Responses, Approved Pending Manual Changes
      Other Miscellaneous Publications

SECTION J                    **MATERIALS AND SUPPLIES**                    DAAH23-03-R-0211
ATTACHMENT 9                                                                      Page 1
                                                                              21 March 2003

1. The materials and supplies listing consists of the following:

   (a)  Authorized Stockage List (ASL)

      1.  RIC ALD
      2.  RIC W0H
      3.  TH 67

   (b)  Prescribed Load List (PLL)

      1.  AH-64A
      2.  AH-64D
      3.  CH-47
      4.  OH-58C
      5.  OH-58D
      6.  UH-1
      7.  UH-60

   (c)  Shop Stock Level (SSL)

      1.  AMSS
      2.  AMSS TH-67
      3.  Cairns Field TH-67
      4.  Hanchey Field
      5.  Lowe Field

SECTION J                    **EQUIPMENT**                    DAAH23-03-R-0211
ATTACHMENT 9a                                                 Page 1
                                                              21 March 2003

    1. The Defense Property Accounting System (DPAS) listing contains the Industrial Property List that consists of Table of Distribution and Allowances (TDA) property and other equipment that are authorized for performance under the contact and the quantities currently on hand. The contractor is authorized to requisition the authorized quantities on this listing. Deliveries will be subject to availability from the appropriate commodity command. Changes to the authorized quantities will be considered effective upon written approval by the PBO.

    2. The Government shall approve and provide the necessary Department of Defense Activity Address Codes (DODAAC) for the Contractor to perform the activities and acquisitions of the mission assignment.

    3. The TDA items hand-receipted from other property books for use on the contract are clearly identifiable as such.

    4. A joint inventory will be made during Phase-In/Phase-Out in accordance with the contract clause "Continuity of Services".

**GOVERNMENT FURNISHED PROPERTY - FACILITIES**

The facilities identified with this Performance Work Statement will be provided to the Contractor by the Government.  (*indicates shared with Government)

| FACILITY NO. | DESCRIPTION - FIELD | TOTAL AREA |
|---|---|---|
| 405 | AC Comp Maintenance-Ground Equip Shop-Main Post | 12400 |
| 412 | Admin General Purpose-ACLC | 14602 |
| 413 | Flam Material Storage-Motor Pool-Main Post | 120 |
| 414 | Tech Publication Storage - Main Post | 288 |
| 415 | AC Comp Maintenance - AMSS - Main Post | 71176 |
| 416 | AC Paint Shop - AMSS - Main Post | 3800 |
| 423 | Storage General Purpose Inst-AMSS - Main Post | 400 |
| 424 | Storage General Purpose Inst-AMSS - Main Post | 48 |
| 426 | QA/CAL General Purpose-X-Ray - Main Post | 638 |
| 427 | AC Parts Storage - AMSS - Main Post | 1800 |
| 429 | Storage General Purpose - AMSS - Main Post | 288 |
| 1003 | Storage General Purpose – Main Post (STAMIS) | 6000 |
| 1004 | Storage General Purpose - Main Post (STAMIS) | 9000 |
| 1005 | Storage General Purpose - Main Post (STAMIS) | 9000 |
| 1013 | AC Comp Maintenance - Trans Run Stand - Main Post | 3000 |
| 1106 | Mgmt General Purpose – QDR | |
| 1206 | Flam Material Storage - Main Post | 1200 |
| | AC Parts Storage - | 780 |
| | Gear -Warehouse | 9000 |
| 1302 | Storage General Purpose -Ind Property Warehouse | 9100 |
| 1303 | Storage General Purpose - Shipping Warehouse | 9000 |
| 1305 | Storage General Purpose - Receiving Warehouse | 9000 |
| 1401 | Storage General Purpose - AMSS Warehouse | 9320 |
| 1402 | Storage General Purpose - AMSS Warehouse | 9000 |
| 7205 | Flam Material Storage | 120 |
| 10401 | AC Engine Test Cell - Tank Hill | 240 |
| 10406 | Sep Toilet/Shower - Tank Hill | 64 |
| 25105 | AC Maintenance Hanger - Knox | 21801 |
| 25161 | Maintenance General Purpose - Knox Motor Pool | 3000 |
| 25162 | Flam Material Storage - Knox | 1,200 |
| 25165 | AC Maintenance Hanger - Knox | 58,713 |
| 25166 | Storage Bldg - Knox Warehouse | 14,000 |
| 25641 | Ammo Break Down Area - Molinelli Range | 400 |
| 25642 | Storage Bldg – Molinelli Range | 352 |
| 25645 | General Storage + Break Room – Molinelli Range | 1,200 |
| 25646 | Latrine – Molinelli Range | 352 |
| 25647 | Jet Fuel Storage ABV - Molinelli Range | 1,120 |
| 30101 | AC Maintenance Hanger - Cairns | 37,989 |
| 30103 | AC Maintenance Hanger - Cairns | 35,392 |
| 30113 | AC Maintenance Hanger - Cairns | 4,000 |
| 30301 | AC Maintenance Hanger - Cairns | 24,616 |
| 30302 | AC Maintenance Hanger - Cairns | 5,670 |
| 30303 | AC Maintenance Hanger - Cairns | 24,436 |
| 30304 | AC Maintenance Hanger - Cairns | 4,000 |
| 30306 | AC Parts Storage - Cairns | 1,000 |
| 30308 | Storage Shed General Purpose - Cairns | 64 |
| 40105 | Storage General Purpose - Lowe | 120 |
| 40106 | Navy Building, Air - Lowe | 36 |
| 40108 | Storage Shed General Purpose - Lowe | 120 |
| 40113 | AC Maintenance Hanger - Lowe | 25,058 |

SECTION J                    **GOVERNMENT FURNISHED PROPERTY - FACILITIES**         DAAH23-03-R-0211
ATTACHMENT 10                                                                        Page 2 of 2

| FACILITY NO. | DESCRIPTION - FIELD | TOTAL AREA |
|---|---|---|
| 40114 | AC Comp Maintenance-Avionics & Supply - Lowe | 2,000 |
| 40115 | AC Parts Storage - Lowe | 3,452 |
| 40116 | Flam Material Storage – Lowe | 120 |
| 40117 | AC Maintenance Hanger - Lowe | 35,392 |
| 40119 | Storage Shed-Paint - Lowe | 140 |
| 40120 | AC Maintenance Hanger - Lowe | 34,220 |
| 40128 | Maintenance-Vehicle & Ground Equip Shop - Lowe | 1,000 |
| 40135 | AC Paint Shop - Lowe | 7,273 |
| 40137 | Storage Shed Gen Purpose - Lowe | 5,000 |
| 40139 | AC Plastic Media Stripping - Lowe | 3,200 |
| 40146 | Flam Material Storage - Lowe | 200 |
| 40152 | Flam Material Storage - Lowe | 120 |
| 40188 | Admin General Purpose-by Washrack - Lowe | 480 |
| 5004T | Admin General Purpose-Trailer - Hanchey | 840 |
| 5005T | Admin General Purpose-Trailer - Hanchey | 840 |
| 5006T | Admin General Purpose-Trailer - Hanchey | 1,440 |
| 50130 | Hanger Shop Space-Avionics - Hanchey | 7,500 |
| 50132 | Storage Shed General Purpose - Hanchey | 288 |
| 50201 | AC Maintenance Hanger - Hanchey | 35,213 |
| 50202 | AC Maintenance Hanger - Hanchey | 15,607 |
| 50203 | AC Parts Storage - Hanchey | 14,400 |
| 50204 | AC Maintenance Hanger - Hanchey | 15,164 |
| 50205 | Flam Material Storage - Hanchey | 925 |
| 50207 | AC Maintenance Hanger - Hanchey | 14,500 |
| 50208 | AC Comp Maintenance-Supply/Armament Repair | 15,638 |
| 50209 | AC Maintenance Hanger - Hanchey | 18,585 |
| 50210 | Flam Material Storage - Hanchey | 232 |
| 50211 | Storage General Purpose-Motor Pool/Eng Shop | 2,530 |
| 60104 | AC Maintenance Bay - Shell Field | 8,471 |
| 60105 | AC Maintenance Bay - Shell Field | 8,471 |
| 60106 | POL Storage - Shell Field | 120 |
| 60110 | Avionics/Flight Line (right side only)- Shell | 1,620 |
| 60113 | QC/PC/Test Flight/Records - Shell | 4,000 |
| 60118 | Motor Pool/Sheet Metal - Shell | 4,000 |
| 60126 | Supply/Storage - Shell | 4,000 |
| L2840 | Admin General Purpose-Data Processing - Daleville | 5,000 |

# GSA VEHICLE DENSITY LISTING

Listed below are the vehicles provided by GSA.  A joint inventory will be made on the contract clause "Continuity of Services" during the Phase-In-Phase-Out (PIPO)

| GSA # | TMP # | Year | Model |
|-------|-------|------|-------|
| G12-13221 | D001 | 1999 | BREEZE |
| G32-00969 | D200 | 2001 | TCFE2409 |
| G41-33045 | D027 | 1997 | ASTRO |
| G41-33048 | D048 | 1997 | S10 |
| G41-33049 | D049 | 1997 | S10 |
| G41-33050 | D045 | 1997 | S10 |
| G41-33051 | D051 | 1997 | S10 |
| G41-33052 | D012 | 1997 | S10 |
| G41-33053 | D053 | 1997 | S10 |
| G41-33054 | D054 | 1997 | S10 |
| G41-33055 | D035 | 1997 | S10 |
| G41-33056 | D005 | 1997 | S10 |
| G41-33057 | D057 | 1997 | S10 |
| G41-33058 | D038 | 1997 | S10 |
| G41-34376 | D041 | 1997 | S10 |
| G41-34377 | D043 | 1997 | S10 |
| G41-34383 | D026 | 1997 | F150 |
| G41-34384 | D029 | 1997 | F150 |
| G41-34388 | D055 | 1997 | F150 |
| G41-34395 | D036 | 1997 | AEROSTAR |
| G41-36919 | D042 | 1998 | S10 |
| G41-42914 | D021 | 1999 | WINDSTAR |
| G41-42938 | D056 | 1999 | RAM 1500 |
| G41-42945 | D006 | 1999 | CARAVAN |
| G41-42971 | D050 | 1999 | RAM 1500 |
| G41-42972 | D022 | 1999 | RAM 1500 |
| G41-42976 | D024 | 1999 | RAM 1500 |
| G41-42978 | D028 | 1999 | CARAVAN |
| G41-43001 | D030 | 1999 | CARAVAN |
| G41-43002 | D034 | 1999 | CARAVAN |
| G41-43023 | D032 | 1999 | RANGER |
| G41-43024 | D014 | 1999 | RANGER |
| G41-43025 | D011 | 1999 | RANGER |
| G41-43026 | D037 | 1999 | RANGER |
| G41-43027 | D033 | 1999 | RANGER |
| G41-43030 | D052 | 1999 | RANGER |
| G41-43031 | D059 | 1999 | RANGER |
| G41-43034 | D003 | 1999 | RANGER |
| G41-43035 | D004 | 1999 | RANGER |
| G41-43037 | D010 | 1999 | RANGER |
| G41-43038 | D015 | 1999 | RANGER |
| G41-43039 | D002 | 1999 | RANGER |
| G41-43042 | D031 | 1999 | RANGER |
| G41-43046 | D017 | 1999 | RANGER |
| G41-43047 | D008 | 1999 | RANGER |

SECTION J
ATTACHMENT 11

# GSA VEHICLE DENSITY LISTING

DAAH23-03-R-0211
Page 2 of 4

| GSA # | TMP # | Year | Model |
|-------|-------|------|-------|
| G41-43049 | D020 | 1999 | RANGER |
| G41-43050 | D023 | 1999 | RANGER |
| G41-43051 | D061 | 1999 | RANGER |
| G41-43052 | D044 | 1999 | RANGER |
| G41-43053 | D063 | 1999 | RANGER |
| G41-49389 | D013 | 2000 | S10 |
| G41-49394 | D046 | 2001 | RAM 1500 |
| G41-49395 | D040 | 2001 | RAM 1500 |
| G41-49396 | D166 | 2001 | RAM 1500 |
| G41-49403 | D161 | 2001 | RAM 1500 |
| G41-49406 | D128 | 2001 | RAM1500 |
| G41-49441 | D163 | 2001 | RAM1500 |
| G41-49442 | D160 | 2001 | RAM1500 |
| G41-49443 | D168 | 2001 | RAM 1500 |
| G41-49444 | D165 | 2001 | RAM 1500 |
| G41-49445 | D064 | 2001 | RAM 1500 |
| G41-57057 | D007 | 2001 | S10 |
| G41-57087 | D065 | 2001 | WINSTAR |
| G41-65066 | D009 | 2002 | S10 |
| G41-65069 | D025 | 2002 | S10 |
| G41-65074 | D019 | 2002 | S10 |
| G42-39802 | D111 | 2000 | B2500 |
| G42-39803 | D067 | 2000 | B2500 |
| G42-43730 | D114 | 2001 | 1500 |
| G42-43731 | D127 | 2001 | 1500 |
| G42-43734 | D102 | 2001 | 1500 |
| G42-43737 | D066 | 2001 | RAM1500 |
| G42-45174 | D093 | 2001 | 1500 |
| G42-45177 | D133 | 2001 | RAM1500 |
| G42-45198 | D099 | 2001 | 1500 |
| G42-48441 | D081 | 2002 | RAM1500 |
| G42-48462 | D158 | 2002 | C1500 |
| G42-48466 | D159 | 2002 | C1500 |
| G42-80642 | D164 | 1997 | E150 |
| G42-80647 | D110 | 1997 | E150 |
| G43-05263 | D090 | 1999 | RAM 2500 |
| G43-05264 | D092 | 1999 | RAM 2500 |
| G43-05268 | D074 | 1999 | 2500 |
| G43-05284 | D079 | 1999 | RAM 2500 |
| G43-05487 | D094 | 1999 | P30 |
| G43-05495 | D108 | 1999 | 2500 |
| G43-09206 | D072 | 2000 | 3500 |
| G43-09210 | D112 | 2000 | 3500 |
| G43-09221 | D095 | 2000 | P30 |
| G43-14161 | D097 | 2001 | RAM 2500 |
| G43-14166 | D073 | 2001 | F350 |
| G43-20543 | D087 | 2002 | E350 |
| G43-63168 | D096 | 1997 | C3500 |

15

**GSA VEHICLE DENSITY LISTING**

| GSA # | TMP # | Year | Model |
|-------|-------|------|-------|
| G43-67534 | D107 | 1997 | P30 |
| G43-67569 | D071 | 1997 | F250 |
| G43-67570 | D076 | 1997 | F250 |
| G43-67571 | D077 | 1997 | F250 |
| G43-67572 | D078 | 1997 | F250 |
| G43-67573 | D080 | 1997 | F250 |
| G43-67574 | D070 | 1997 | F250 |
| G43-67575 | D075 | 1997 | F250 |
| G43-67576 | D082 | 1997 | F250 |
| G43-67577 | D083 | 1997 | F250 |
| G43-67578 | D068 | 1997 | F250 |
| G43-67580 | D069 | 1997 | F250 |
| G43-67582 | D085 | 1997 | P30 |
| G43-67585 | D084 | 1997 | P30 |
| G43-67586 | D088 | 1997 | P30 |
| G43-67587 | D089 | 1997 | P30 |
| G61-04860 | D134 | 1999 | CHEROKEE |
| G61-08952 | D126 | 2001 | CHEROKEE |
| G61-34843 | D125 | 1997 | CHEROKEE |
| G62-05084 | D129 | 1999 | RAM 1500 |
| G62-26956 | D124 | 1996 | BRONCO |
| G62-29570 | D091 | 1997 | F250 |
| G63-07360 | D113 | 2001 | F350 |
| G63-11633 | D105 | 2002 | K3500 |
| G63-28089 | D104 | 1997 | C3500 |
| G63-28091 | D103 | 1997 | C3500 |
| G63-28092 | D106 | 1997 | C3500 |
| G63-28093 | D109 | 1997 | C3500 |
| G63-28095 | D101 | 1997 | C3500 |
| G63-28096 | D098 | 1997 | C3500 |
| G63-30151 | D100 | 1997 | F350 |
| G71-00018 | D119 | 1998 | F-800 |
| G71-00021 | D121 | 1998 | F-800 |
| G71-00023 | D120 | 1998 | F-800 |
| G71-00026 | D122 | 1998 | F-800 |
| G71-00027 | D116 | 1998 | F-800 |
| G71-00028 | D115 | 1998 | F-800 |
| G71-00552 | D130 | 2000 | C6500 |
| G71-01215 | D177 | 2001 | S&P |
| G71-01824 | D178 | 2003 | 4200 S & P |
| G71-17367 | D117 | 1998 | F-800 |
| G71-17368 | D176 | 1998 | F-800 |
| G71-17369 | D118 | 1998 | F-800 |
| G71-17376 | D170 | 1998 | F-800 |
| G71-17743 | D123 | 2002 | 4700 |
| G82-00050 | D132 | 1992 | F900 T/T |
| G82-01986 | D400 | 1990 | 7100 4X2 |
| G90-01420 | D131 | 1991 | WRECKER |

SECTION J
ATTACHMENT 11

# GSA VEHICLE DENSITY LISTING

DAAH23-03-R-0211
Page 4 of 4

| GSA # | TMP # | Year | Model |
|-------|-------|------|-------|
| G91-04543 | D406 | 1994 | 28'F/BED S&P |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF ALABAMA

SOUTHERN DIVISION

PAULA F. DeFRANK,          )

      Plaintiff,          )

vs.          )    CASE NO.:

ARMY FLEET SUPPORT, LLC,   )    1:07cv775-WKW

      Defendant.          )

      The deposition of PAULA DeFRANK taken pursuant to the Alabama Rules of Civil Procedure before Tina L. Harrison, Court Reporter and Notary Public, State at Large, at Court Reporting Associates, Inc., 256 Honeysuckle Road, Suite 23, Dothan, Alabama, on the 27th day of March, 2008, commencing at approximately 9:00 a.m.

**Exhibit B**



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22          Q.    Well, you had your automobile accident

23    in January of '04?

1        A.      Correct.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1

2

3

4

5

6

7

8

9

10

11     Q.    Now, when you -- Army Fleet Support

12  actually began its contract with the Army on

13  December 1st of 2003.  And you were an employee of

14  Army Fleet Support from the outset; is that right?

15     A.    Yes.

16

17

18

19

20

21

22

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15     Q.    Now, you were employed with the

16 predecessor contractor DynCorp?

17     A.    Yes.

18     Q.    And when did you begin work for DynCorp?

19     A.    January of 2000.

20     Q.    And did you work for them all the way up

21 until the end of November of 2003?

22     A.    Yes.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Q.    And was there some particular thing that

19  caused you to drop your union membership?

20    A.    After you're out six -- longer than six

21  months -- I believe that's what -- is the time

22  frame.  You're out on long-term disability -- after

23  six months -- six months -- I'm sorry.  The six

months is the time frame that you're on short-term

disability, and after that you're no longer on

short-term disability.

Q.    But you still have rights under the

collective bargaining agreement even after that six

months, do you not?

A.    Yes.

Q.    For a period of time equal to your

seniority or five years, whichever is less, you

still have rights under the collective bargaining

agreement, do you not?

A.    Yes.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20        Q.    During the time that you returned to

21  work prior to your surgery, the time you returned

22  to work for Army Fleet Support, what did you do?

23        A.    Aviation parts turn-in, the parts turn-

1    in.

2       Q.    And on what aircraft?

3       A.    The Apache.

4       Q.    Were you the sole person doing the parts

5    turn-in on the Apache on your shift?

6       A.    I do not remember at that time if anyone

7    else was with me or not.

8

9

10

11

12

13

14       Q.    Ms. DeFrank, I'm handing you what's been

15    marked as Defendant's Exhibit 3.  Do you recognize

16    this as being the doctor slip you got from

17    Dr. Dorchak and then the return to work slip that

18    accompanied that that was made out by Army Fleet

19    Support for your return in June of 2004?

20       A.    Yes.

21       Q.    And these restrictions that are on the

22    return to work slip would have been those that

23    Dr. Dorchak said should apply to you during the

1   time you worked prior to your surgery?

2       A.    Yes.

3       Q.    This indicates that you were going to

4   have surgery on August the 5th of 2004.  Does that

5   sound right to you?

6       A.    That's an approximate date.

7       Q.    Now, these were temporary restrictions,

8   were they not?  They were to apply until you had

9   your surgery?

10       A.    Yes.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      Q.    All right.  Let me hand you Defendant's

19 Exhibit 4.  This is a three-page document.  The

20 first page is entitled, Return to Work Slip.  It's

21 an Army Fleet Support form.  Then the second page

22 is a slip from Dr. Diana Mancuso, and the third

23 slip is a -- the third page is a doctor's slip from

1  Dr. Dorchak at the Hughston Clinic.  Do you

2  recognize these as being documents regarding your

3  return to work in February of 2005?

4      A.    Yes.

5      Q.    Why did you have two doctors' slips?

6  All right.  Well, I think I may --

7      A.    Well, one is dated -- they've got two

8  different dates on them.

1

2

3

4

5

6

7        Q.      Now, when you came back to work in

8  February of '05, what did you do for Army Fleet

9  Support?

10        A.      I want to say the parts turn-in.

11        Q.      And was it with the Apaches?

12        A.      Yes.

13        Q.      Were you working -- the only person

14  doing parts turn-in on your shift?

15        A.      Now, that I don't remember.

16

17

18

19

20

21

22

23

1

2

3

4

5

6

7

8

9

10

11

12

13    Q.    Now, Ms. DeFrank, I've handed you

14  Defendant's Exhibit 6.  The top page is a return to

15  work slip, and the second page is a letter from

16  Dr. Dorchak at the Hughston Clinic.  And he refers

17  to your anterior cervical fusion of August 12th of

18  '04.  He doesn't specifically state what it was in

19  '05 that caused you to have to be out.  Does

20  looking at this help you remember what it was --

21  what your problem was that caused you to be out?

22    A.    No.

23    Q.    You have no recollection of what the

1    problem was that caused you to be off work for --

2        A.    Well, I was off for the cervical fusion

3    in August of 2004.  I don't remember how many

4    months I was out.

5        Q.    Well, you returned February 23rd of

6    2005.

7        A.    Okay.

8        Q.    And then you worked until early July of

9    2005, and then you were off until the end of

10   December of '05.  And my question is, Do you recall

11   what the problem was that caused you to be off?

12       A.    To be off at what time, again, please?

13       Q.    From July of '05 until this return to

14   work slip in December of '05.

15       A.    I don't remember.  Right at this moment

16   I don't remember.

17       Q.    Okay.  This slip and Dr. Dorchak's

18   letter that's attached indicates that he's imposing

19   restrictions on you of no lifting over 20 pounds,

20   no repetitive bending for three months.  Again,

21   he's imposed temporary restrictions on you?

22       A.    Correct.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23        Q.      I'm going to hand you Defendant's

1    Exhibit 8.  This is a return to work slip dated

2    January 11 of 2006 in which it is stated that

3    Lowell Green said that the company can accommodate

4    your medical restrictions at that point.  Do you

5    recall that happening?

6         A.    Yes.

1

2

3

4

5

6

7

8

9

10

11    Q.    Actually, that slip that you had given

12 him on December the 22nd said that you would be

13 able to return to work on December the 27th.  So

14 we're talking about a lesser time frame than what I

15 had said earlier.  Do you recall going back to work

16 on January the 11th of 2006?

17    A.    It was in January.

18    Q.    You don't recall the date?

19    A.    No.

20    Q.    And you went back to work as a parts

21 turn-in -- in the parts turn-in area?

22    A.    Yes.

23    Q.    For the OH-58 helicopter?

1        A.      Yes.

2        Q.      Is that right?  It was not the Apache

3   helicopter?

4        A.      No.

5        Q.      And there was already an individual

6   assigned to work in that area, was there not?

7        A.      Yes.

8        Q.      Do you recall that person's name?

9        A.      Yeah.

10       Q.      Who was that?

11       A.      Byron Register.

12       Q.      Okay.  And prior to your coming in the

13   parts turn-in area, he had been working there by

14   himself, had he not?

15       A.      Yes.

1

2

3

4

5        Q.    Well, didn't you get an instruction in

6   early April that you needed to -- you were going to

7   have to get your tools and go back and work on

8   helicopters there, the OH-58s?

9        A.    What year?

10       Q.    '06, 2006.

11       A.    Yes.

12

13

14

15

16

17

18

19

20

21

22

23

1

2      Q.    And what do you recall him saying to

3  you?

4      A.    That he told me I was going back on the

5  helicopter tomorrow and I would not be doing parts

6  turn-in, that Byron Register would be doing parts

7  turn-in.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          Q.      Okay.   Let me go back now.   When Tony

1  Wasco told you to go work on the helicopters, he

2  did not tell you that there wouldn't -- somebody

3  couldn't help you lift or somebody couldn't do

4  something that required bending if you could not do

5  it, did he?

6      A.    He said I had to go back -- I had to go

7  back to working on the aircraft tomorrow and I had

8  to do the jobs just as well as someone else.

9      Q.    Okay.  But that doesn't mean you can't

10 be accommodated if there's some particular task

11 that you're not able to do, did it?

12     A.    Right.

13     Q.    Now, you left work before the end of

14 your shift that day, did you not?

15     A.    Yes.

16     Q.    And you never came back?

17     A.    That's correct.

18

19

20

21

22

23

19    Q.    So you didn't come back the next day to

20  find out what accommodation you might be given

21  working on the helicopters?

22    A.    No.

23    Q.    You went to Dr. Mancuso?

A.     Right.

1

2

3      Q.    Now, she issued you -- she says down

4    there under P, which I guess is prescribed, We have

5    given her a leave of absence for one month.    Is

6    that Defendant's Exhibit 16?   Is that what she gave

7    you on that occasion?

8      A.    Yes.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1

2      Q.    And this is a report -- operative report

3  for that surgery, Defendant's 18 -- excuse me --

4  Defendant's 19 -- no.  Defendant's 18.  Do you

5  recall having this surgery on May the 4th of '06?

6      A.    Yes.

7      Q.    During this time you also applied for

8  disability benefits with Social Security

9  Administration, did you not?

10     A.    Yes.

11     Q.    Do you recall whether it was April or

12 early May that you applied for social security

13 disability benefits?

14     A.    No, I don't.

15

16          (Whereupon, Defendant's Exhibit 19 was

17           marked for identification and same is

18           attached hereto.)

19

20     Q.    I'm going to hand you Defendant's

21 Exhibit 19, which is a letter from the Social

22 Security Disability Determination Service.  It has

23 a form attached to it signed by you authorizing

1    Dr. Granger to disclose information.  And the date

2    of your signature is May the 7th of '06.  Would

3    that be when you applied for social security

4    disability benefits?

5         A.    I don't know.  I don't know if that --

6         Q.    It was at least by that date.

1

2

3

4

5

6

7

8

9

10

11

12      Q.    Now, I'm going to hand you what's been

13  marked as Defendant's Exhibit 20.  Do you recognize

14  this as a return to work slip from Dr. Dorchak

15  dated June the 14th of '06?

16      A.    Yes.

17      Q.    And did you actually see him on this

18  occasion, or did you call and request a return to

19  work slip?

20      A.    I don't remember.

21      Q.    But he gave you a slip with the same

22  restrictions -- same temporary restrictions that he

23  had done on earlier occasions:  No lifting beyond

1    20 pounds, no excessive bending for three months;

2    is that right?

3        A.    Yes.

4        Q.    And that was dated June the 14th.  On

5    June the 14th, you also went to see Dr. Granger.

1

2

3

4

5

6

7

8

9

10

11

12

13      Q.    I'm going to hand you Defendant's

14  Exhibit 22.  Do you recognize this as the return to

15  work slip that Dr. Granger's office gave you on

16  June the 14th?

17      A.    Yes.

18      Q.    Now, that said, May return to work on

19  June 15, '06.  No lifting with right arm until

20  follow-up.  Does it not?

21      A.    Yes.

22

23          (Whereupon, Defendant's Exhibit 23 was

1          marked for identification and same is

2          attached hereto.)

3

4     Q.    Let me hand you Defendant's Exhibit 23.

5 Do you recognize this as being the facsimile cover

6 that you used to send this Exhibit 22 to AFS?

7     A.    Yes.

1

2

3

4

5

6      Q.    Was it -- all right.  Your last

7 restrictions from Dr. Dorchak would have expired on

8 mid-September of 2006; is that right?  Do you

9 agree?  It would be Exhibit 20.

10     A.    It would have expired when?

11     Q.    Mid-September.  In other words, this is

12 dated mid -- June 14th, and it's for three months.

13 So that would be July, August, September --

14 mid-September --

15     A.    Right.

16     Q.    -- that the restrictions would be up.

17 Did you get any return to work slip from

18 Dr. Dorchak in mid-September and take it back to

19 AFS?

20     A.    Not that I remember.

21     Q.    You never actually brought back any

22 return to work slip after mid-June to AFS, did you?

23     A.    I don't remember.

Q.    You don't remember doing it, do you?

A.    Correct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22      Q.    Ms. DeFrank, look at Defendant's Exhibit
23   27.  This is a document from the Hughston Clinic, a

1    Visit Status Report.  And if you look up here under

2    date and time, it says 11, slash, 13, slash, 2006.

3    Do you see that?

4        A.    Yes.

5        Q.    And then down here midway it's got work

6    restrictions, and the words "no work" are circled.

7    And it appears to be signed down at the bottom by

8    Dr. Dorchak.  Do you recognize that --

9        A.    I don't recognize the handwriting, but I

10   remember this sheet.

11       Q.    Okay.  What do you -- why was that

12   sent -- apparently, it was faxed to Penny at AFS,

13   who I assume is Penny Westrick?

14       A.    Yes.

15       Q.    Why was that faxed to Penny, if you

16   know?

17       A.    Because Penny asked for an updated

18   restriction or requested a return to work at that

19   time.

20       Q.    Okay.  And Dr. Dorchak said no work?

21       A.    Yes.

22

23

1

2

3

4

5

6

7

8      Q.    Now, one of your claims relates to

9  unemployment compensation.  Can you explain to me

10  what that claim is about?

11      A.    If you've worked at a job and you're

12  laid off, you can claim unemployment benefits.

13      Q.    Okay.  Did you do that in this case?

14      A.    I didn't actually go down to the

15  unemployment office.  No.

16      Q.    Did you call them?

17      A.    No.  I was told by personnel -- or HR

18  that I could not draw unemployment.

19      Q.    Who told you that?

20      A.    Penny Westrick.

21      Excuse me.  If we're not going to be --

22      Q.    Do you need to take a break?

23      A.    If we're not going to be leaving anytime

1    soon, yes.

2         Q.    Sure.

3         A.    It is just extremely hot in here.

4

5              (Whereupon, a short recess was taken.)

6

7         Q.    Ms. DeFrank, we were talking about your

8    unemployment compensation claim in your lawsuit,

9    and you had told me that you spoke to Penny

10   Westrick in human resources.  And what did she tell

11   you?

12        A.    She told me that I could not claim

13   unemployment.

14        Q.    Did she say why?

15        A.    I was still a part of the company and

16   could be called back.

17        Q.    All right.  She was referring to your

18   rights under the collective bargaining agreement

19   to --

20        A.    Right.

21        Q.    -- come back to work?

22        A.    Right.

23        Q.    Okay.  When was this conversation?

1      A.     It was in 2006.

2      Q.     Do you remember when?

3      A.     No.

4      Q.     Did you talk to anyone else, a

5  supervisor or a manager, at Army Fleet Support

6  about that?

7      A.     No.

8      Q.     Did you talk to the unemployment

9  compensation office?

10     A.     No.

11     Q.     Well, do you know now whether you can or

12  cannot apply for unemployment compensation in your

13  situation?

14     A.     I believe I can.

15     Q.     Have you had anybody confirm that

16  belief?

17     A.     No.

18     Q.     Now, you have applied for unemployment

19  compensation before, have you not?

20     A.     Yes.

21

22          (Whereupon, Defendant's Exhibit 28 was

23           marked for identification and same is

1        attached hereto.)

2

3      Q.    I'm going to hand you what's been marked

4    as Defendant's 28.  Is this related to an

5    unemployment compensation claim that you made back

6    in 2000?

7      A.    Yes.

8      Q.    By whom were you employed?

9      A.    In 2000 I was employed by DynCorp.

10      Q.    And what occurred that caused you to

11    file for unemployment compensation?

12      A.    I'm not sure at the time.  I must have

13    been out for something, I guess.  I don't remember.

14      Q.    This appears to be a situation where you

15    were off work due to a medical situation, and you

16    had a physician -- and that may be Dr. Granger --

17    to sign this statement confirming his treatment of

18    you; is that right?

19      A.    I don't know.

20      Q.    This came out of Dr. Granger's records,

21    and I see his initials down there, signature of

22    physician, DKG, which I think are Dr. Granger's

23    initials.

1          A.      Is that a G?

2          Q.      Yes.  I think that's the way he does a

3     G.  Did you get unemployment compensation on that

4     occasion?

5          A.      No.

6          Q.      Do you know why?

7          A.      No.

8          Q.      Did you appeal it to an appeals referee?

9          A.      I don't remember.

10         Q.      Do you have any other documents related

11    to this unemployment compensation claim that you

12    made in 2000?

13         A.      If I do, I gave it to my attorney.

14         Q.      Do you recall anything else about your

15    claim in 2000, the nature of the claim?

16         A.      No.

17         Q.      Does my summary of it, that you were off

18    because of a medical condition and filed for

19    unemployment compensation, sound correct to you?

20         A.      It could be.

21         Q.      This would have been not too long after

22    you had gone to work for DynCorp.  Were you

23    eligible for short-term disability benefits under

1   DynCorp's agreement?

2       A.     I don't -- I don't remember.

3       Q.     Have you ever filed for unemployment

4   compensation on any other occasion?

5       A.     Yes, I have.

6       Q.     When was that?

7       A.     I don't remember the dates.

8       Q.     Well, who were you employed by?

9       A.     The time I was laid off with the Naval

10  Air Depot.

11      Q.     Okay.  In Pensacola?

12      A.     Yes.

13      Q.     I think you -- didn't you say you were

14  laid off twice there?

15      A.     Yes.

16      Q.     Did you get unemployment compensation on

17  both occasions?

18      A.     Yes.

19      Q.     All right.  Any other employer you

20  worked for that you applied for unemployment

21  compensation?

22      A.     I don't remember.

23

1  when you were talking to Penny Westrick about

2  unemployment compensation, you did not call the

3  unemployment compensation office and inquire about

4  your rights?

5      A.    No.

# ARMY FLEET SUPPORT

## RETURN TO WORK SLIP

**DATE:** 6-28-04        **TIME:** 1:05 pm   **Last Day Worked:** 12-31-03

☒ **Short-Term Disability**   ☒ **FMLA**   ☐ **OTJ Injury** (use *only* if no Medical Pass)   ☐ **Other**

| EMPLOYEE NAME | NUMBER | CLASSIFICATION | LOCATION/SHIFT |
|---|---|---|---|
| Paula DeFrank | 014311 | A/c Mech | Hanchey-1 |

☐ Authorized to return to work with **NO RESTRICTIONS** on ——————————————

☐ Presently working and released from **RESTRICTED/LIGHT DUTY** on ——————————

☒ Authorized to return to work on ___6-29-04___ with the following **RESTRICTION/LIGHT DUTY:** No lift/push/pull >20#, No outstretched reach, No overhead work, No repetitive motion w/arms + neck.

☒ Able to Accommodate Medical Restriction(s)?   ☒ **Can**   ☐ **Cannot**
- Per Field Representative (name/title): George Anderson, Field Mgr.
- Date 6-28-04
- Comments Work until 8-3-04, Surgery 8-5-04 [Record # 04-0010]

☐ Prescribed Medications N/A
- Non Narcotics: ——————————————————————
- Narcotics: ——————————————————————

   ***Narcotic Drugs cannot be taken within 6 hours of shift start time nor during shift***
   **Employee Initials:**_____

An employee returning with restrictions or assigned to light duty will not be entitled to work overtime in accordance with Article 11.1 of the Collective Bargaining Agreement, until Personnel receives a statement from the doctor stating the employee may return to normal duties.

Employees on Restricted Duty will be by-passed when scheduling or polling for overtime. If asked, the employee must refuse the overtime. In either case, whether by-passed, or asked and refused, the employee is not charged.

**Manager, Personnel Services** _____ J. Addison 12948 _____

**Benefits / Worker's Comp Representative** _____ RCA 020078 6-28-04 _____

Original:   Personnel File
Copies:     Finance & Accounting
            Department Head
            Employee

Form 01-288
Rev. 1/30/04

**DEFENDANT'S EXHIBIT**

3   3/27/08

**Field Notified**
   Date:_____   Method: ☐ Email   ☐ Fax   ☐ Phone

   POC: _____

# ARMY FLEET SUPPORT

## RETURN TO WORK SLIP

DATE: _02-22-05_     TIME: _____     Last Day Worked: _08-10-04_

☑ **Short-Term Disability**     ☐ **FMLA**     ☐ **OTJ Injury** (use _only_ if no Medical Pass)     ☐ **Other**

| EMPLOYEE NAME | NUMBER | CLASSIFICATION | LOCATION/SHIFT |
|---|---|---|---|
| DeFrank, Paula | 014311 | A/C Mech | Hanley -1 |

☐ Authorized to return to work with **NO RESTRICTIONS** on _____

☐ Presently working and released from **RESTRICTED/LIGHT DUTY** on _____

☑ Authorized to return to work on _02-23-05_     with the following **RESTRICTION/LIGHT DUTY:** _No lifting over 25 lbs - No climbing - No excessive bending_

☐ Able to Accommodate Medical Restriction(s)?     ☑ **Can**     ☐ **Cannot**
- **Per Field Representative** (name/title): _George Anderson_
- **Date** _____
- **Comments** _Rec # 05-0149_

☐ Prescribed Medications
- **Non Narcotics:** _____
- **Narcotics:** _Morphine Sulfate_
  **\*\*Narcotic Drugs cannot be taken within 6 hours of shift start time nor during shift\*\***
  **Employee Initials:** _PD_

An employee returning with restrictions or assigned to light duty will not be entitled to work overtime in accordance with Article 11.1 of the Collective Bargaining Agreement, until Personnel receives a statement from the doctor stating the employee may return to normal duties.

Employees on Restricted Duty will be by-passed when scheduling or polling for overtime. If asked, the employee must refuse the overtime. In either case, whether by-passed, or asked and refused, the employee is not charged.

**Manager, Personnel Services** _____ _020314_

**Benefits / Worker's Comp Representative** _____

| | |
|---|---|
| Original: | Personnel File |
| Copies: | Finance & Accounting |
| | Department Head |
| | Employee |

Form 01-288
Rev. 1/30/04

**Field Notified**

Date:_____     Method: ☐ Email  ☐ Fax  ☐ Phone

POC: _____

**DEFENDANT'S EXHIBIT**
4   3/27/08

# ARMY FLEET SUPPORT

# RETURN TO WORK SLIP

**DATE:** 12-22-05    **TIME:** 10:30    **Last Day Worked:** 07-15-05

☒ **Short-Term Disability**    ☐ **FMLA**    ☐ **OTJ Injury** (use <u>only</u> if no Medical Pass)    ☐ **Other**

| EMPLOYEE NAME | NUMBER | CLASSIFICATION | LOCATION/SHIFT |
|---|---|---|---|
| DeFrank, Paula F. | 014311 | A/C Mech | Hanchey-1 |

☐ Authorized to return to work with **NO RESTRICTIONS** on _____

☐ Presently working and released from **RESTRICTED/LIGHT DUTY** on _____

☒ Authorized to return to work on 12-27-05 _____ with the following **RESTRICTION/**
**LIGHT DUTY:** No lifting over 20 lbs. No repetitive bending
for 3 months

☐ Able to Accommodate Medical Restriction(s)?    ☐ **Can**    ☒ **Cannot**

• Per Field Representative (name/title): Lowell Green

• Date 12-22-05 _____

• Comments _____

☐ Prescribed Medications

• Non Narcotics: _____

• Narcotics: _____

   **\*\*Narcotic Drugs cannot be taken within 6 hours of shift start tim~~    during shift\*\***

   **Employee Initials:** _____

An employee returning with restrictions or assigned to ligh
the Collective Bargaining Agreement, until Personnel recei
duties.

Employees on Restricted Duty will be by-passed when sche
overtime. In either case, whether by-passed, or asked and i

**Manager, Personnel Services** _____

**Benefits / Worker's Comp Representative** _____

Scheduled
to return to
work on
01-09-06
Per Joanne G.

...ce with Article 11.1 of
...may return to normal

...must refuse the

| Original: | Personnel File |
|---|---|
| Copies: | Finance & Accounting |
| | Department Head |
| | Employee |

Form 01-288
Rev. 1/30/04

**DEFENDANT'S EXHIBIT**

60  3/27/08

**Field Notified**

Date: _____    Method: ☐ Email    ☐ Fax    ☐ Phone

POC: _____



## John D. Dorchak, M.D.

December 22, 2005

RE: Paula Defrank
Chart No: 497498

To: Whom It May Concern

Paula Defrank is a patient of mine at The Hughston Clinic in Columbus, Ga. She underwent an anterior cervical fusion on 8/12/04. She can return to work as of 12/27/05 with no lifting greater than 20 pounds and no repetitive bending. These restrictions are in effect until three months from now.

If you have any further questions, you can contact me at (706) 494-3257.

Sincerely,

John D. Dorchak, M.D.

# ARMY FLEET SUPPORT

## RETURN TO WORK SLIP

DATE: 01-11-06    TIME: 12:41    Last Day Worked: 07-15-05

☐ Short-Term Disability    ☐ FMLA    ☐ OTJ Injury (use only if no Medical Pass)    ☐ Other

| EMPLOYEE NAME | NUMBER | CLASSIFICATION | LOCATION/SHIFT |
|---|---|---|---|
| DeFrank, Paula | 014311 | A/c Mech | Hanchey-1 |

☐ Authorized to return to work with **NO RESTRICTIONS** on ——————

☐ Presently working and released from **RESTRICTED/LIGHT DUTY** on ——————

☒ Authorized to return to work on 12-27-05    with the following **RESTRICTION/LIGHT DUTY**: No lifting over 20 lbs - No repetitive bending for 3 months

☒ Able to Accommodate Medical Restriction(s)?    ☒ Can    ☐ Cannot    Record # 06-0350

  • Per Field Representative (name/title): Lowell Green

  • Date 01-11-06

  • Comments Mr Green had previously denied accommodation

☐ Prescribed Medications for restrictions on 12-22-05

  • **Non Narcotics:** ——————

  • **Narcotics:** ——————

  ***Narcotic Drugs cannot be taken within 6 hours of shift start time nor during shift**

  **Employee Initials:** ——————

An employee returning with restrictions or assigned to light duty will not be entitled to work overtime in accordance with Article 11.1 of the Collective Bargaining Agreement, until Personnel receives a statement from the doctor stating the employee may return to normal duties.

Employees on Restricted Duty will be by-passed when scheduling or polling for overtime. If asked, the employee must refuse the overtime. In either case, whether by-passed, or asked and refused, the employee is not charged.

**Manager, Personnel Services** ——————

**Benefits / Worker's Comp Representative** Penny Westrick 015702

Original:    Personnel File
Copies:    Finance & Accounting
    Department Head
    Employee

Form 01-288
Rev. 1/30/04

DEFENDANT'S EXHIBIT
8  3/27/08

**Field Notified**

  Date: ——————    Method: ☐ Email  ☐ Fax  ☐ Phone

  POC: ——————

DIANA M. MANCUSO, M.D. P.A.
Family Practice
West Main Street • Suite 16
DOTHAN, ALABAMA 36305

4/5/06

To Whom It May Concern,

Mr. Paula Defrank is currently
my patient. I feel it is in
her best interest medically to
refrain from work for the next
month. If you have any
questions, please contact me at
(334) 793-4120.

Sincerely,

Diana M. Mancuso, M.D. /dov

Diana M. Mancuso, MD

DEFENDANT'S
EXHIBIT

16   3/27/08

# DISABILITY DETERMINATION SERVICE
DMAF
POST OFFICE BOX 2371
MOBILE, ALABAMA 36652 - 2371

15134

*1757599969*

Local Number 433-2820

Toll - Free Number 1-800-292-6743

Fax Number 1-866-486-6536

May 15, 2006

TAX ID: 200870135

CLAIM: 401316

PAY TO: SOUTHERN BONE & JOINT

TDN: 1757599969

SOUTHERN BONE & JOINT
SPECIALISTS
POST OFFICE BOX 729
DOTHAN AL 36302-0729

RE:   PAULA FRANCENE DEFRANK
AKA:

148 RADFORD CIRCLE
DOTHAN AL 36301
A/N:  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 INT/SSA
DOB:  March 22, 1955

D Keith Granger MD

The Disability Determination Service (DDS) is writing to obtain medical evidence on behalf of this individual who has applied for disability or blindness benefits under the Social Security Act. The DDS is responsible for determining if the person is disabled or blind. A signed authorization for release of information is enclosed.

Please furnish either a summary and/or copies of your medical office records along with laboratory findings, x-ray interpretations, EKG tracings, and other studies that you may have on this individual.

The DDS would like to have a statement based on your medical findings and observations, expressing your opinion on the limiting effects of the individual's physical and mental abilities to perform basic work related functions, i.e. lifting, ~king, standing, sitting, etc. If the claim involves a child, we need to know how the child's ability to function is limited ~pared to children of the same age who are unimpaired.

The DDS is authorized to pay for this information. This payment does not apply to Federal records. This authorization cannot be transferred to a third party or another tax number. A reply within 10 days would be appreciated. Unless the information is received within 60 days, no payment can be made.

PLEASE SIGN THE LETTER IN THE SPACE BELOW, AND RETURN IT TO THE DDS WITH THE REQUESTED INFORMATION. NO OTHER BILLING IS NECESSARY.

AUTHORIZED AMOUNT  $ 15.00

SIGNATURE OF PHYSICIAN OR AUTHORIZED REPRESENTATIVE

VENDOR: SOUTH0174



**DEFENDANT'S EXHIBIT**

JH15-18-06

19 3/27/08

SBJ 104

Sincerely,

Jack Miller
Disability Specialist, Telephone Ext.

Enclosures

M~~1 - ACG

RQID: `757599969401316  SITE: V19 DR: S
SSN: 423822970 DOCTYPE: 0001 RF: D CS: 5d90



NAME (First, Middle, Last)                                                OMB No. 0960-0623
Paula F DeFrank
SSN                                          Birthday
        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                          (mm/dd/yy)    03/22/1955

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):
**OF WHAT**   *All my medical records; also education records and other information related to my ability to perform tasks.*  **This includes specific permission to release:**

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) *including, and not limited to:*
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or venereal disease which may include, but are not limited to, diseases such as hepatitis, syphilis, gonorrhea and the human immunodeficiency virus, also known as Acquired Immune Deficiency Syndrome (AIDS); and tests for HIV.
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**
- All medical sources (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers
- Others who may know about my condition (family, neighbors, friends, public officials)

*Granger, D. Keith*

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services"), including contract copy services, and doctors or other professionals consulted during the process. [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**   Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.
☐ Determining whether I am capable of managing benefits ONLY (check only if this applies)                SBJ 105

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed (below my signature).
- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- I have read both pages of this form and agree to the disclosures above from the types of sources listed.

**PLEASE SIGN USING BLUE OR BLACK INK ONLY**   IF not signed by subject of disclosure, specify basis for authority to sign
**INDIVIDUAL** authorizing disclosure             ☐ Parent of minor  ☐ Guardian  ☐ Other personal representative (explain)
SIGN (m) *Paula DeFrank*

(Parent/guardian/personal representative sign here if two signatures required by State law)   ᴅ.

Date Signed *May 7, 06*    Street Address
                            148 Radford Circle
Phone Number (with area code)   City                            State    ZIP
794-9311    334    Dothan                                       AL    36301-

**WITNESS**   *I know the person signing this form or am satisfied of this person's identity:*
SIGN (m) *Ken L. Ott*                IF needed, second witness sign here (e.g., if signed with "X" above)
Phone Number (or Address)           SIGN ᴅ.
18 Radford Circle                   Phone Number (or Address)

...s general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.
Form SSA-827 (1-2005) ef (01-2005) Use 2-2003 and Later Editions Until Supply is Exhausted        Page 1 of 2

Jerry Memedat, PA-C
DEA # MMI116246
License 039090

## The Hughston Clinic, P.C.
6262 Veterans Parkway ~ P.O. Box 9517 ~ Columbus, GA 31908
706/324-6661 ~ Fax: 706/494-3103

NAME _Paula DeFrank_     AGE _____

ADDRESS _____

DATE _6/14/06_

℞

She Can Return to work
as of 6/19/06
with No lifting above 20 lbs.
No excessive bending for
2 months.

Refill _____ times
☐ Label
This Prescription Authorized Through _____
by _____
     Signature _DeFrank_
DEA # _____

To insure brand name dispensing, prescriber must write "Brand Necessary" on the prescription.

**DEFENDANT'S EXHIBIT**

20  3/27/08

# SOUTHERN BONE & JOINT SPECIALISTS, P.C.

To:  Whom it may concern                                    Date: 06/14/2006

Name:  -DEFRANK, PAULA F

This is to certify that this patient

[✓]  Was treated in my office today.

[ ]  Will be unable to work for the period _____

[✓]  May return to work on 6/15/06 NO LIFTING WITH RIGHT ARM UNIL FOLLOW UP

[ ]  Should not participate in physical education for the period _____

[ ]  Other:

_VO DLS / THUIS, LPN_

**DEFENDANT'S EXHIBIT**

22  5/27/08

**The UPS Store**
2932 Ross Clark Cir.
334.671.0881 Tel
334.671.1821 Fax
Monday – Friday
8:00a.m. – 6:30p.m.
Sat. 10:00a.m. – 4:00p.m.



# FAX

| | | | |
|---|---|---|---|
| To | TANYA | From | PAULA DEFRANK |
| Company | ARMY FLEET SUPPORT | Department | |
| Fax number | 334-598-0476 | Fax number | |
| Tel number | 334-598-0412 | Tel number | 334-790-4787 |
| Date | June 15, 06 | Date | Jun 15, 06 |
| Total Pages | 2 | Job number | |

Tanya,
    I hope I spelled your name correctly.
The notes from Southern Bone & Joint is
dated for today. I talked to them this
morning and there was an error. It should of
showed Monday June 19, 06 like my other
return to work slip. This can not be corrected
until Monday. The doctor (Granger) is out of town
until then. They (SB & J) said you can call them
with no problem. (793-2663.) Please call me
if there is any problem. I HOPE NOT! THANK YOU
PAULA DEFRANK

**The UPS Store**

**DEFENDANT'S EXHIBIT**

23    3/27/08

THE HUGHSTON CLINIC, .C.

Tax ID: 581186469

please send payments to:
THE HUGHSTON CLINIC, P.C.
PO BOX 845188
BOSTON, MA 02284-3188
billing phone: (706) 324-6661

Report
of service
Main Office - Hughston Clinic
6262 Veterans Parkway
COLUMBUS, GA 31808-0517
dept phone: (706) 324-6661

printed 11/13/2008 08:07 AM

**GUARANTOR NAME AND ADDRESS**
PAULA F DEFRANK
146 RADFORD CIRCLE
DOTHAN AL, 36301

PATIENT #: 487499
PATIENT NAME(SEX): PAULA F DEFRANK [F]
PROVIDER: JOHN DORCHAK, MD
DATE/TIME: 11/13/2008 10:30 AM
DEPARTMENT: Main Office - Hughston Clinic

DOB: 03/22/1956
TELEPHONE: (334) 794-0311
INSURANCE NAME: BCBS-AL: BCBS OF ALABAMA
CERTIFICATE#: XAAB79853813
AUTH#

PPT TYPE: RECHECK
NOTES/REASON:
• 10/20/2008 rdickerson: check up on back, neck and shldr per pt bringing xrys
• 11/01/2008 rdickerson: RESCHEDULE FROM 11-01-08 PE PT
• 11/05/2008 rdickerson: resh 11-22

*ATTN: PENNY*

## HUGHSTON CLINIC
## VISIT STATUS REPORT

**DIAGNOSIS**

CODE     DETAIL
1.
2.
3.
4.

CHECK-IN -
CHECK-OUT -

**PLAN**

PRESCRIBE: Pain Medication / Steroid Injection   NASID / Therapy   Steroids / Sling/Brace   Antibiotic / Splint/Cast

TESTING: MRI   CT   EMG/NVC   Myelogram
Arthrogram   Labwork   Other: _____   Bone Scan

RECOMMEND: Functional Capacity Evaluation   Work Hardening/Conditioning
MMI REACHED: ____Today ____Weeks ____Months   PPI: ____% Extremity ____% Whole Person
SURGERY: _____

RETURN TO WORK: Today   Other: _____
WORK RESTRICTIONS: YES   NO   (NO WORK)

**SEDENTARY:**
Lift/Carry/Push/Pull/0-10 lbs.
**LIGHT DUTY:**
Lift/Carry/Push/Pull/10-25 lbs.
**MEDIUM DUTY:**
Lift/Carry/Push/Pull/25-50 lbs.
**HEAVY DUTY:**
Lift/Carry/Push/Pull/50-100 lbs.
**REPETITIVE MOTION:**
None Occasional Frequent
**PUSH/PULL TASKS:**
None Occasional Frequent

TASKS DONE AT (level):
Waist Shoulder Overhead
CLIMBING TO UNPROTECTED
HEIGHTS:
None Occasional Frequent
JOB ROTATION:
Frequent/Micro Breaks
Non-Production Work
Modify Workstation
BRACE/SLING/CRUTCH/
CANE AT WORK:
Optional Mandatory

BENDING AT WAIST LEVEL:
None Occasional Frequent
KNEELING:
None Occasional Frequent
SQUATTING:
None Occasional Frequent
STANDING:
None Occasional Frequent
OR ____Hours per Day
DRIVING:
____None ____Hours per Day

**\*\*NO DRIVING OR OPERATING MACHINERY WHILE TAKING NARCOTIC PAIN MEDICATION\*\***

COMMENTS: _____

• RETURN TO CLINIC: ____DAYS ____WEEKS ____MONTHS ____PRN
____POST TEST/SURGERY ____MD TO CALL ____PATIENT TO CALL
• PROGRESS CALL: ____DAYS ____WEEKS ____MONTHS
• IR to DR.____ for the Evaluation of:____
____Patient is dismissed from care this date.

RETURN APPOINTMENT
DATE:
TIME:

SERVICES FOR THIS PATIENT WERE RENDERED AT:

Physician Signature

DEFENDANT'S EXHIBIT

27 3b2100

Ben-254-DC
(Revised 9/97)
Reorder No. 50662

**ALABAMA DEPARTMENT OF INDUSTRIAL RELATIONS**
**UNEMPLOYMENT COMPENSATION DIVISION**
**DOCTOR'S CERTIFICATE**

☑ C/O Use    ☐ L/O Use

CLAIMANT'S SSN
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

| I.C. | | TYPE CLAIM |
| --- | --- | --- |
| | | U I |
| O-C | | R/E/S |
| | | I F |

INTERVIEWER
D. Pittman

DATE 7/20/00
☐ MAILED    ☑ DELIVERED

JUL 20 2000

DOTHAN EMPLOYMENT SECURITY OFFICE
P.O. Box 520
Dothan, AL 36302-0520

**(Local Office complete this section)**

DeFrank / Paula
(Claimant's Name)
has applied for unemployment compensation benefits effective

07 16 00. The claimant stated to us that he/she has been under your care for

tendonitis
(Common name of illness or injury). Claimant states that his/her normal occupation is

A&P mechanic. In order for this Agency to determine if the claimant is entitled to

unemployment benefits, it is necessary to have the following information covering the period beginning @ initial visit

The claimant hereby authorizes release of the following information.

Claimant Signature Paula DeFrank    Date 7/20/00

1. This individual has been under my treatment from 4/21/00 (Date) to 6/13/00 (Date)

for (R) Subacromial bursitis (R) lateral epicondylitis.
(Conditions)

2. In your opinion, is this individual able to perform his/her duties?    ☐ Yes    ☑ No

   a. If unable to perform usual duties, is he/she able to perform any type of work?    ☑ Yes    ☐ No

   b. If this individual is able to perform his/her usual duties, on what date did this individual become able? ____

   c. Please explain any limitations (including the dates affected): From 4/21/00 (Date) to present (Date)

   No lifting or repetition use RUE (5 lb limit occas.)

3. If treatment is for pregnancy, enter expected date of confinement    N/A ____ 19 ____

REMARKS (If appropriate): Pt is referred for another opinion - defer to them

Signature of Physician ____    Phone Number (334) 793-2663

Date Completed 7/24 19 00    Address 1500 Ross Clark Circle, Dothan, Al 36301
Street & Number - City or Town    State

---

**(NOTE TO DOCTOR):** It is understood that this certificate is being furnished to the claimant as a convenience to him/her for the purpose of assisting the Alabama Unemployment Compensation Agency in making a decision on a claim for unemployment insurance. This Agency does not assume any responsibility for payment of your professional services.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(NOTE TO THE CLAIMANT):** Return this form no later than 7/30 00 (10 days if mailed, 7 local Office address above. Failure to return by this date could result in a denial of benefits.

**(TO THE LOCAL OFFICE):** Stamp the local office address in the space above. If limitations, submit claimant's past training and work experience to Central Office with completed doctor's certificate.

**DEFENDANT'S EXHIBIT**

28  3/27/08

SBJ 193

# EXHIBIT C

STATE OF ALABAMA:

COUNTY OF DALE:

### AFFIDAVIT OF DARLENE WHELAN

Darlene Whelan, after being first duly sworn, deposes and says as follows:

1.    My name is Darlene Whelan.  I am over the age of majority and competent

to testify to the matters stated herein.  This affidavit is based on my personal knowledge

or review of documents kept in the normal course of business of Army Fleet Support,

LLC ("AFS").

2.    I am Director, Employee Readiness, of AFS's operations at Ft. Rucker,

Alabama.  I have held this position since July 10, 2006.  Prior to that, I was Manager,

Human Resources, for AFS.

3.    Human Resources is one of the areas under my responsibility as Director,

Employee Readiness, at AFS.

4.    I have reviewed AFS's records of the hours worked by Ms. Paula DeFrank

since January 4, 2004.  According to those records, Ms. DeFrank returned to work for

AFS on June 29, 2004 and worked a total of 218.1 hours through August 10, 2004.  After

that, she returned to work on February 23, 2005 and worked a total of 623.8 hours

(excluding holidays, paid personal leave, unpaid employee sickness, and layoff) through

July 15, 2005.  From January 13, 2006 through April 4, 2006, Ms. DeFrank worked a

total of 294.2 hours (excluding holidays, paid personal leave, unpaid employee sickness,

reserve vacation, personal business unpaid, and union business unpaid).

5.    Ms. DeFrank did not perform any work at AFS after April 4, 2006.  On

**Exhibit C**

October 12, 2006, Ms. DeFrank was transferred from an active to an inactive employment status. This transfer is referred to as an "administrative termination," which was the terminology and computer code used by DynCorp, the maintenance contractor at Fort Rucker before AFS. For ease of transition between the two contracts, AFS continued to use DynCorp's terminology and computer code. This terminology did not mean that Ms. DeFrank had been fully separated from AFS's employment. It did not affect her rights under the collective bargaining agreement.

6.     Under the collective bargaining agreement, Ms. DeFrank retains recall rights, continues to accrue seniority, and has an absolute right to reinstatement in her last classification for the lesser of five years or the length of her seniority, so long as she is capable of performing the job. In Ms. DeFrank's case, she has until April 4, 2011, within which she may return to work for AFS, if able.

7.     Since AFS is a federal contractor, employees with disabilities who contend that they have been discriminated against because of their disability file their claims with the Office of Federal Contract Compliance Programs ("OFCCP"). OFCCP will then investigate and take appropriate action. Attached to my Affidavit as Attachments 1 and 2 are claims from employees Mitchell M. Brannon and Paul Gordon, respectively, and correspondence from OFCCP asserting its jurisdiction over those claims under § 503 of the Rehabilitation Act of 1973, among other statutes. These are examples of claims that AFS has received under § 503 as a federal contractor at Fort Rucker.

Further, Affiant saith not.

2

_Darlene Whelan_
Darlene Whelan

Sworn to and subscribed to
before me on this the _14ᵗʰ_
day of May, 2008.

_Robert R. Alexander_
NOTARY PUBLIC

[Affix Notarial Seal]

My Commission Expires:

_June 30, 2010_

3

**U.S. Department of Labor**     Employment Standards Administration
Office of Federal Contract
Compliance Programs
61 Forsyth Street SW
Atlanta, Georgia 30303





February 26, 2007

Bob Whitney
Human Resource Manager
Army Fleet Support
P.O. Box 620309
Ft. Rucker, Alabama 36362

Re:     Mitchell M. Brannon v. Army Fleet Support
234 Donnell Boulevard, Daleville, Alabama 36322
OFCCP Complaint # I00137583

Dear Mr. Whitney:

The Office of Federal Contract Compliance Programs (OFCCP) received a complaint alleging a violation of the Vietnam Era Veterans Readjustment Assistance Act of 1974 (VEVRAA) and its implementing regulations at 41 CFR 60-250, Section 503 of the Rehabilitation Act of 1973 and its implementing regulations at 41 CFR 60-741, and the Americans with Disability Act (ADA).

OFCCP's jurisdiction has been established. Therefore, on the date of this letter we assigned this complaint for further investigation. If there are any questions or concerns, please contact Vincent Whipple, Assistant District Director, U. S. Department of Labor, OFCCP, Birmingham District Office, 950 22nd Street, N. Room, 660, Birmingham, Alabama 35203; Telephone: 205-731-0820; Fax: 205-965-4726.

Sincerely,

Evelyn Teague
Regional Director—Southeast

By: _Donald Cirino_

Donald Cirino
Director of Regional Operations—Southeast

c:     OFCCP Birmingham District Office
Mitchell M. Brannon, Complainant

*Working for America's Workforce*

Attachment 1

AFS  1251

**U.S. Department of Labor**  Employment Standards Administration
Office of Federal Contract
Compliance Programs



Medical Forum Bldg.
950 22nd Street North, Suite 660
Birmingham, AL 35203
Reply to the Attention of:

March 6, 2007

CERTIFIED MAIL

Mr. Bob Whitney
Human Resources Manager
Army Fleet Support
P.O. Box 620309
Fort Rucker, Alabama 36362

Dear Mr. Whitney:

This is to notify you that the Office of Federal Contract Compliance Programs (OFCCP) has received a complaint (copy enclosed) filed under the provisions of Section 503 of the Rehabilitation Act of 1973, as amended and the Americans with Disability Act of 1990 (ADA).

This office has been assigned this complaint for investigation under the Act and OFCCP's implementing regulations at 41 CFR 60-741 (copy enclosed), which require that Federal contractors and subcontractors who have a contract of $10,000 or more not discriminate and take affirmative action to employ and advance in employment qualified individuals with disabilities.

As required by our regulations please retain full and accurate records relevant to this complaint and ensure that there is no retaliation against the complainant (41 CFR 60-741.61 and 60-741.62). Also, our regulations require that the complaint and all actions taken with regard to it shall be kept confidential (41 CFR 60-741.23).

This letter is neither a prejudgment of the issues nor an implication that your company has violated any law, but is rather a notice of complaint filing and a notice to retain information that will later permit an expeditious investigation and resolution of this matter.

You may wish to review and attempt to resolve this complaint internally. If you are successful in resolving it to the satisfaction of the complainant, we will need verification from the complainant. However, OFCCP reserves the option to conduct its own investigation if, in its judgment, the circumstances warrant.

If you do not wish to make such an attempt or are unsuccessful in doing so, you may wish to send us a statement of position or evidence concerning the complaint.

*Working for America's Workforce*

AFS    1252

2

Any such material submitted would be included in the case file, and would be considered when the complaint is investigated. Please note that during such an investigation, we may need to examine your current Affirmative Action Program required under 41 CFR 60-741.40.

The complaint investigation will also include a review of your Immigration and Naturalization Service (INS) I-9 Forms. You are to make available for inspection the I-9 Forms for each eligible employee. We are requesting that you transmit to us a list of all your employees hired after November 7, 1986 or since the last inspection of the I-9 forms for which you were found in compliance. That list should include the termination dates of the aforementioned hires that are no longer employed at your establishment. This may be a seniority list or a copy of a list used for other government agencies (e.g., a workers' compensation list, a list used to make quarterly social security payments to the IRS). This letter provides you with three (3) business days advance notice of the I-9 inspection, as required by law.

During the onsite phase of the investigation we will need to have available copies of the I-9 Forms for:

(1) All employees, both current and former, hired within the last three years or since your list inspection; and

(2) Any former employees hired more than three years ago, or since your last inspection, (but after November 6, 1986) who terminated within the past year.

You should also have available documentation; e.g. payroll records, sufficient to identify all employees for whom I-9 Forms are required.

If you have any questions, you may contact Compliance Officer Christopher Williams or the undersigned at (205) 731-0820.

Sincerely,

Evelyn Teague
Regional Director – Southeast

By: _Linda Henderson_

Linda Henderson
District Director-Birmingham

Enclosure: 1. Complaint of Mitchell M. Brannon CAS# I00137583
2. Regulations

# Complaint of Discrimination In Employment Under Federal Government Contracts

## U.S. Department of Labor

Employment Standards Administration
Office of Federal Contract Compliance Programs



**Instructions:** Before completing this form, please read all instructions, including the Privacy Act statement below. Use this form to file a complaint of discrimination in employment under any of the OFCCP programs. Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

OMB No.: 1215-0131
Expires: 1-31-08

**Privacy Act Notice:** *I00137583*

The authority for collecting this information is Executive Order 11246, as amended; Sec. 503 of the Rehabilitation Act of 1973, as amended; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212; Title VII of the Civil Rights Act of 1964, as amended; and/or Title I of the Americans with Disabilities Act of 1990, as amended (ADA). This information is used to process complaints and conduct investigations of alleged violations of the above Order or Acts. We will provide a copy of this complaint to the employer against whom it is filed and, when matters alleged are covered by Title VII and/or the ADA, to the U.S. Equal Employment Opportunity Commission (EEOC). The information collected may be verified with others who may have knowledge relevant to the complaint. It may be used in settlement negotiations with the employer or in the course of presenting evidence at a hearing, or may be disclosed to other agencies with jurisdiction over the complaint. Providing this information is voluntary; however, failure to provide the information will restrict the action that the Department of Labor can take on your behalf and, for matters covered by Title VII or the ADA, may affect your right to sue under those laws.

**Non-Retaliation:** OFCCP regulations, and Title VII and/or the ADA where applicable, require an employer to take all necessary steps to assure that there is no retaliation against any person who files a complaint or assists in its investigation. This includes any intimidation, threat, coercion or discrimination. Please notify OFCCP immediately if any alleged attempt at retaliation is made.

**Prompt Filing :** All complaints must be filed within a specified number of days from the latest occurrence of the alleged discrimination. Executive Order 11246 - 180 days; Rehabilitation and Veterans Acts - 300 days. Exceptions must be approved by the Deputy Assistant Secretary.

| Name and address: [X] Mr. [ ] Ms. [ ] Mrs. [ ] Miss | Name and address of company you allege discriminated against you |
|---|---|
| Name: Mitchell M. Brannon | Name: Army Fleet Support |
| Line #1: 7868 Suellen St. — City: Sneads | Line #1: 234 Donnell Blvd — City: Daleville |
| Line #2: — State: FL — Zip: 32460 | Line #2: — State: AL — Zip: 36322 |
| Telephone No. (850)593-6135 | Telephone No. (334)598-0407 |

| Mail this form to Dept. of Labor OFCCP Regional Office: | Give date(s) of the latest occurrence(s) of the alleged discriminatory act(s): |
|---|---|
| Georgia        (Southeast Region) | 01/03/2007    01/09/2007    01/12/2007    01/16/2007 |

**Step 1:** Check the box next to the program you are filing under (i.e., Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended, or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212.)

**Step 2:** Under the program, check what you believe to be the basis for the discrimination against you, such as race, sex or national origin. If you think that there was more than one basis, more than one basis may be checked. You may also check more than one race/ethnic category.

[X] **Executive Order 11246**, as amended . This Order covers persons alleging discrimination because of race, color, religion, sex or national origin. If this is checked, your complaint will be dual-filed as a charge under Title VII of the Civil Rights Act of 1964. I believe I was (or continue to be) discriminated against because of my:

Bases:
- [ ] Race
- [ ] Color
- [ ] Religion
- [ ] Sex ( [ ] Female ( [ ] Male
- [ ] National Origin
- [X] Other

- [ ] Hispanic or Latino
- [ ] Not Hispanic or Latino

- [ ] American Indian or Alaska Native
- [ ] Asian
- [ ] Black or African American
- [ ] Native Hawaiian or Other Pacific Islander
- [ ] White

[X] **Section 503 of the Rehabilitation Act of 1973**, as amended - This Act covers individuals with a disability, persons with a history of physical or mental disability, and persons regarded as disabled by the employer. If this is checked, your complaint will be dual-filed as a charge under the Americans with Disabilities Act.

Basis: [X] Disability   Please check if you are a veteran. [X] Yes [ ] No

[ ] **Vietnam Era Veterans' Readjustment Assistance Act of 1974**, as amended, 38 U.S.C. 4212. This Act covers special disabled veterans, veterans of the Vietnam Era, and other protected veterans.

1

Form CC-4
Rev. Sep 2004

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

AFS   1254

IF YOUR COMPLAINT IS BASED ON VETERAN STATUS, CHECK THE FOLLOWING APPLICABLE BOX(ES).

[X] I am entitled to disability compensation under laws administered by the Department of Veterans Affairs for a disability rated at 30% or more; or rated at 10 or 20% and have been officially determined to have a serious employment disability. If you have checked this box, submit documentation from the Department of Veterans Affairs with this form.

[ ] I was discharged or released from active duty for a service connected disability. If you have checked this box, submit medical information resulting in your discharge or release with this form. (This information is available from your Master Military Record at the National Personnel Record Center, 9700 Page Blvd., St. Louis, MO 63132.)

[ ] I served on active duty for a period of more than 180 days, and was discharged or released with other than a dishonorable discharge, and the active duty occurred in the Republic of Vietnam between February 28, 1961, and May 7, 1975; or between August 5, 1964, and May 7, 1975 in all other cases.

[X] I served on active duty during a war or in a campaign or expedition for which a campaign badge has been authorized.

[X] I was discharged or released from active duty and my discharge or release date is no earlier than one year prior to today's date.

**Step 3:** Check those actions which you believe the employer took or failed to take because of your race, color, religion, sex, national origin, disability or veteran status (more than one may be checked):
Issue(s):

[X] Hiring                 [ ] Promotion                [ ] Job Assignment                 [ ] Accommodation to Disability
[ ] Termination           [ ] Demotion                 [ ] Training and Apprenticeship    [ ] Sabbath Day Observance
[ ] Layoff                [ ] Seniority                [ ] Segregated Facilities          [ ] Intimidation
[ ] Recall                [ ] Harassment               [ ] Retaliation                    [ ] Other: _____
[ ] Wages                 [ ] Job Benefits             [ ] Pregnancy Leave Policy

**FOR EACH ISSUE, EXPLAIN IN YOUR STATEMENT BELOW HOW YOU WERE DISCRIMINATED AGAINST.**

1. Do you know any other employees or applicants of your group who were treated in the same way (checked above) you allege you were?

[ ] Yes      [ ] No      If yes, include their names in your statement below and explain how they were treated.

2. Do you know any other employees or applicants who are NOT of your group who were treated in the same way (checked above) you allege you were?

[ ] Yes      [ ] No      If yes, include their names in your statement below and explain how they were treated.

**THE COMPLAINT**

Describe in detail the alleged discriminatory act(s).
    PLEASE INCLUDE:
    • Why you believe the act(s) was because of your disability, veteran status, race, color, religion, sex or national origin;
    • Dates, places, names and titles of persons involved and witnesses, if any;
    • What harm, if any, was caused to you or others with whom you work as a result of the alleged discriminatory act(s);
    • What explanation, if any, was offered for the act(s) by the employer;
    • Any information you may have on federal contracts held by the employer.

If this is a complaint based on disability, describe the disability, your history of disability, or why you think the employer regarded you as disabled.

I was referred to Army Fleet Support(AFS) by the Alabama Employment Office in Dothan, Al, by Brent Boozer(VA Rep.), for an interview on 3 Jan. 2007, for a Aircraft Mechanics position. Upon my arrival I was only able to give Mr. Duff(AFS) my resume, my completed application Mr. Duff made a copy of my drivers license while I took a small mechanical test, in which I did pass. Afterwards Mr. Duff informed me that they were not hiring aircraft mechanics. Mr. Duff said that they were only hiring for Sheet metal positions. Of which I am qualified for that postion also, and would be open on 8 Jan. 2007. This was end of my so called interview, aircraft mechanics, and sheet metal mechanics have been hired since then. Yet Mr. Duff has strung along for the past two weeks now, and is now unable to give me any information about either of these positions. AFS is hiring. As of today (17 Jan. 2007) there are 50 total positions available, as stated by Mr. Boozer, of which there are substantial Aircraft and Sheet metal mechanic positions. I have 15yrs of aircraft experience, 5 of which are from previous employment with Dyncorp/AFS, from Jan. 1999-Apr.2004, as an aircraft mechanic, at this same location (Ft. Rucker Al.). In which I left in good standing. My other 10yrs of experience is from the Navy, Dec.1986-Mar.1997, as an aircraft mechanic. I have a Security Clearance, valid drivers license, experience, and was referred to AFS by the State of Alabama Employment Office. See next page.

2

Therefore there is no reason that I see as to why I am being denied the opportunity for an interview and being considered for employment. AFS requires an A&P License or 2yrs of aircraft mantenance experience, a security clearance, and a valid drivers license, and to be reffered to by the Alabama Employment Office, to be considered for employment. As I stated above, I have all of these and went through the proper channels. I believe that AFS is aware of my disability. Part of my disability is, Post Tramatic Stress Disorder(PTSD), and I take a medication for this condition. This was an issue when I was previously considered for emlpoyment(Jan.99) and had to get written conformation by my doctor that I was phyically, and mentally capable to do my job, including having the Doctor of Industrial Health interview me, before I was hired. I believe that AFS is again not considering me because of this reason. I should not have to get permission from my doctor or any one else in order for me to work somewhere. I fully capable, mentally & physically, and qualified, to perform the the job as described in Description and Duties of Job, as described. Documintaion of VA percentage rating will be forth coming via mail. xxx End of statement xxx

(Type as much information as required into the block above)

3

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

If you have sought assistance in resolving this complaint from another source (another agency, a lawyer, internal grievance procedure, etc.) please indicate here and the name of the source, the date you sought assistance, and the result, if any:

Name  None                                                                                           Date

Result:

**FRIEND OR RELATIVE:**

Please notify OFCCP if you change your address or phone number. You may indicate here a person who would know how to reach you if OFCCP is unable to reach you at your own address or phone.

Name

Line 1                                                                    City

Line 2                                                                    State           Zip

Relationship

Telephone

| **FILED ELSEWHERE?** | **ARE YOU REPRESENTED?** |
|---|---|
| If you have filed this complaint or a similar one elsewhere, please tell us: | If you are represented by an attorney or other person or organization, please tell us: |
| Name | Name |
| Line 1          City | Line 1          City |
| Line 2          State     Zip | Line 2          State     Zip |
| Contact | Contact |
| Phone | Phone |

**SIGNATURE AND VERIFICATION**

I declare under penalty of perjury that the information given above is true and correct to the best of my knowledge or belief. (A willful false statement is punishable by law: 18 U.S.C. 1001.) I hereby authorize the release of any medical information needed for the investigation.

_____        01/17/2007
Signature of Complainant                              Date

**Public Burden Statement**

We estimate that it will take an average of 1.28 hours to complete this complaint form, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this complaint form, including suggestions for reducing this burden, send them to the Office of Federal Contract Compliance Programs Policy Division (1215-0131), 200 Constitution Avenue, N.W., Room C3310, Washington, D.C. 20210. **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**

**Do not write below this line**

The complainant has verified this complaint in my presence. This complaint is not now the basis of an investigation under Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; and/or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212.

_____        _____        _____        _____
Name of Investigator                 Title                        Signature of Investigator              Date

Subject to Protective Order in civil action no. 1:07-cv-775-WKW

AFS    1257

**U.S. Department of Labor**     Employment Standards Administration
Office of Federal Contract
Compliance Programs



Medical Forum Building
950 22nd Street North
Suite 660
Birmingham, AL 35203
Reply to the Attention of:

July 17, 2007

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Bob Whitney
Director of Human Resources
Army Fleet Support
P. O. Box 620309
Ft. Rucker, Alabama  36362

RE: Mitchell Brannon v. Army Fleet Support Case # I00127018

Dear Mr. Whitney:

This confirms our receipt of Mitchell Brannon's letter of June 4, 2007 wherein he has
agreed that his complaint has been satisfactorily resolved since you have hired him into
that Mechanic job title at $40,643.00 per year. We have also been in contact with the
complainant who has stated there has been a satisfactory resolution of the complaint.

We appreciate your efforts in resolving this matter. Should you have any questions, you
may call the undersigned at (601) 965-4668.

Sincerely,

Evelyn Teague
Regional Director-Southeast

By: *[signature]*

Linda J. Henderson
District Director – Birmingham

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

*Working for America's Workforce*     AFS    1258

**U.S. Department of Labor**

Employment Standards Administration
Office of Federal Contract
Compliance Programs

100 West Capitol Street
Suite 721 – McCoy Federal Building
Jackson, MS 39269

Reply to the Attention of:

*Medical Forum Bldg*
*950 22ⁿᵈ St. North*
*Suite 660*
*Birmingham AL*
*35203*

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

August 11, 2005

*Aug 15, 2005*

Mr. Thomas Green
General Manager
Army Fleet Support, LLC.
Post Office Box 620309
Ft. Rucker, AL 36362

Dear Mr. Green:

We wish to notify you that the Office of Federal Contract compliance Programs (OFCCP) has received a complaint (copy enclosed) filed under the provisions of the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended 38 U.S.C. 4212), Section 503 of the Rehabilitation Act of 1973, as amended, and/or the Americans with Disabilities Act of 1990.

This office has been assigned this complaint for investigation under the Order and OFCCP's implementing regulations at 41 CFR 60-250 and 60-741, which require that Federal contractors and subcontractors who have a contract of $10,000 or more not discriminate and take affirmative action to ensure equal employment opportunity without regard to race, color, religion, sex, or national origin.

As required by our regulations, please retain full and accurate records relevant to this complaint and ensure that there is no retaliation against the complainant (41 CFR 60-250.51 and .52 and 60-741.69 and .80). Also, our regulations require that the complaint and all actions taken with regard to it shall be kept confidential (41 CFR 60-250.26 and 60-741.61).

This letter is neither a prejudgment of the issues nor an implication that your company has violated any law, but is rather a notice of complaint filing and a notice to retain information that will later permit an expeditious investigation and resolution of this matter.

*Working for America's Workforce*

Attachment 2

Mr. Thomas Green
General Manager
Page 2

You may wish to review and attempt to resolve this complaint internally. If you are successful in resolving it to the satisfaction of the complainant, we will need verification from the complainant. However, OFCCP reserves the option to conduct its own investigation if, in its judgment, the circumstances warrant. If you do not wish to make such an attempt or are unsuccessful in doing so, you may send us a statement of position or evidence concerning the complaint. Any such material submitted would be included in the case file, and would be considered when the complaint is investigated. Please note that during such an investigation, we will need to conduct a compliance evaluation.

The complaint investigation will also include a review of your Immigration and Naturalization Service (INS) I-9 Forms. You are to make available for inspection the I-9 Forms for each eligible employee. We are requesting that you transmit to us a list of all your employees hired after April 30, 2002 (the last inspection of the I-9 forms for which you were found in compliance). That list should include the termination dates of the aforementioned hires that are no longer employed at your establishment. This may be a seniority list or a copy of a list used for other government agencies (e.g., a workers' compensation list, a list used to make quarterly social security payments to the IRS). This letter provides you with 3 business days advance notice of the I-9 inspection, as required by law.

If you have any questions, you may contact Compliance Officer Regina Jones at (205) 731-0820 or the undersigned at (601) 965-4668.

Sincerely,

Evelyn Teague
Regional Director - Southeast

By: *[signature]*
Linda J. Henderson
District Director - Birmingham District Office

Enclosure

Dear Miss Henderson,

I am forwarding this email to you and the response from Mr. Bruce Kuehnl, regarding an issue that I have with my employer, Army Fleet Support, Ft. Rucker, Alabama. I have made it known on many occasions that I wished accomodation under the A.D.A. and have been refused. Harrassment is no longer the chief issue here, but but the adamant refusal to accomodate an employee with a Service Connected Disability. The anxiety and depression aftermath remain and the damage has been done. What I request is an investigation into why the company's own Human Resources Department did not consider the Company Policiy, Mr. Green's Policy, and Federal Law, as well as the agreement laid down in the Collective Bargaining Agreement in section 17.3 dated May 2nd, 2005. To add, section 33.1b of the same, you will see "Employees who have received factory training...MAY be assigned to the affected location..." Please note that this "lock-in" period of based on accepting factory training is only suggestive, and not written as "shall be", "must be" nor a "Mandatory" policy. Many of the people who are and who have accepted factory training have never even been put into the position to make use of their training. I appreciate your time and consideration for looking into this matter, which I feel that these are not only violations of Company Policy by representatives of a Federal Contractor, but Violations of Federal Law. Once again I Thank you. I can be contacted at work or at the address and phone number below if you require ant additional information.

Paul Gordon
155 Linda St.
Ozark, Al. 36360
(334) 774-1043
14 July 2005



Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

AFS   1228

Subj:    Denial of Accomodation for Service Connected Disability under A.D.A.
Date:    7/4/2005 8:30:49 A.M. Central Standard Time
From:    WingsOfFire56
To:      bkuehnl@pfccp.com

Dear Sir;
My name is Paul Gordon. I am a 50% Service Connected Disabled Vietnam Veteran, with severe PTSD. In recent weeks I had filed a harassment complaint against my immediate supervisor at my job, a Federal Contractor, ARMY FLEET SUPPORT at Ft. Rucker, Alabama. It was at first, an informal complaint and eventually it was "watered down", and in my opinion, "Swept under the rug". I then contacted Human Resources (which is inside of our company) and asked for their assistance. They came over and took statements from me and others, but I had already given up on the harassment issue, and told them that I wanted to request Accommodation under the Americans with Disabilities Act, due to the level of stress, anxiety and depression that I was subjected to over a period of time, and that my Service Connected Disability ( which is the direct result from 2 tours of Combat Duty in Vietnam as a Medical Corpsman, 1966 thru 1968 ), has been aggravated and worsened by these conditions. Please note, Human Resources  did not allow an outside organization to become involved in this issue, and naturally favored the company's stand against me. Harassment was no longer the issue, but they decided to re-open that discussion. After their hearings and determination, I was not only verbally refused Accommodation from  by Reclassification and Relocation, but I was also refused a copy of their findings and determination. My Union Steward was present and witness to all of these hearings. It is not only Federal Law, but Company Policy and the Personal Policy of Mr. Thomas A. Green,  AFS General Manager,  to assure "All Employees", under the letter subject dated January 24, 2005, that... "AFS reaffirms its strong commitment to the principles laid forth in the Americans with Disabilities Act". I would further like to quote from another letter dated the same.. "Disabled Veterans, Veterans of the Vietnam Era, and other veterans or persons who believe themselves to be covered by affirmative action regulations concerning disabled workers who wish to benefit under these programs are invited to identify themselves via confidential submission of the 'Invitation to Identify' ".  Add to this, section 17.13  of our own Collective Bargaining Agreement with the International Association of Machinists and Aerospace Workers.."AMERICANS WITH DISABILITY ACT" .."The Company and the Union agree to make every reasonable accommodation, seniority permitting, for disabled employees including, Location Transfer, Changes in Shift Assignments and/or Reclassification......"
There is a clause in Section 33.1B,  that by accepting certain Training that a person "MAY BE" required to remain at the affected location for a period not to exceed 24 months". There have been waivers and exceptions made to this "rule" in the past, and I also verbally requested such a waiver on several occasions. There is nothing that arbitrarily states  this "Lock In" period to be Mandatory. I am eligible for Reclassification, Relocation, and requested both under ADA, and I have been refused. I spoke to an attorney who handles a lot of our Union Issues, Mr. Wilmer Tharpe, of Newton,  Alabama and he advised me to contact your organization. His address is P.O. Box 311506, Enterprise, Alabama, (334) 393-3600 and (334) 692-3322. I would really appreciate your involvement into this matter, and I can be contacted at (334) 774-1043. My home address is 155 Linda St. Ozark, Alabama 36360. Thank you very much..Paul A. Gordon

*Paul A Gordon*

AUG 1 2005

Monday, July 04, 2005 America Online: WingsOfFire56

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

AFS   1229

U.S. Department of Labor

Employment Standards Administration
Office of Federal Contract
Compliance Programs
100 West Capitol Street
McCoy Federal Building
Suite 721
Jackson, Mississippi 39269
Reply to the Attention of:
January 18, 2006



Paul A. Gordon                              COMPLAINANT
155 Linda Street
Ozark, Alabama 36360


Army Fleet Support                          CONTRACTOR
P. O. Box 620309
Fort Rucker, Alabama 36362

Contact Person:                             Robert Whitney
                                            Human Resource Compliance
                                            Manager
                                            (334) 347-3112

## NOTIFICATION OF RESULTS OF INVESTIGATION

On October 17 and 18, 2005, the Office of Federal Contract Compliance Programs, U. S. Department of Labor, conducted an investigation of the allegations of harassment, job assignment, and failure to provide reasonable accommodation made in the complaint of Paul A. Gordon filed on September 26, 2005. Our investigation has resulted in the following findings:

1.    Army Fleet Support is a nonexempt government contractor subject to the requirements of Section 503 of the Rehabilitation Act of 1973, as amended, the Americans with Disabilities Act of 1990 (ADA), and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212.

2.    Paul A. Gordon is a disabled veteran within the meaning of Section 503 of the Rehabilitation Act of 1973, ADA, and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212, and the regulations at 41 CFR Part 60-250 and 60-741.

3.    The complainant alleges the contractor violated its obligations under the nondiscrimination and affirmative action provisions of its Federal contracts by failing to provide him with the requested accommodations of reclassification to another job title and relocation to another department to relieve the stressful and

Paul A. Gordon vs. Army Fleet Support
I00124829

harassing work environment caused by his current supervisor that worsened his disabling condition.

4. The contractor's position is that during the internal investigation of the complaint lodged by the complainant, it was found that Mr. Gordon must remain in his current position based on the fact that he voluntarily accepted specialized training that locked him into is current position Engine Mechanic for a period of no less than 24 months as it is outlined in the Collective Bargaining Agreement. The contractor stated the complainant was asked to withdraw his request for reclassification should he agree to attend the training or remove his name from the list of employees who would attend the training in order to be reclassified and relocated. The contractor's position is the complainant did not follow through with his intentions to withdraw his request to reclassify, therefore he was accepted into the training class. The contractor's investigation concluded that the complainant's claims were baseless and the only accommodation that the complainant would accept was that he be able to limit his contact with other employees and that he should be allowed to choose his supervisor. Army Fleet Support further stated that the complainant does not meet the standards of disabled as defined in the Americans with Disabilities Act; that they have continually tried to work with the complainant and provide opportunities to work within his specialized field; and that the complainant's Supervisor did not single him out to harass, but that he used the same choice of words and style of management on all employees under his supervision.

5. OFCCP's findings revealed that the contractor conducted internal investigations of the allegations of harassment and accommodations to disability on May 24, 2005 and June 9, 2005. The contractor interviewed the complainant, the complainant's witnesses and management officials during their investigative process. Paul Gordon's allegation of being singled out and harassed by his Supervisor could not be substantiated based on the interviews conducted. The interviews revealed the complainant's Supervisor, Terry Williams, did at times speak harshly to employees, but the same tone and demeanor was used with all employees. OFCCP conducted separate interviews of witnesses and management officials and found corroborative evidence that the complainant's Supervisor did treat everybody in the same manner, using the same tone and demeanor.

OFCCP's findings revealed that the Army Fleet Support utilizes Work Rules as guidelines to monitor workplace behavior and activity. The contractor provided copies of Work Rules 11, 14, 28, and 39 which outlines the work rules relating the employees conduct in the workplace. A review of the Work Rule revealed the following

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

Paul A. Gordon vs. Army Fleet Support
J00124829

Work Rule 11 defines unacceptable behavior as it relates to threatening, intimidating, coercing and the making of derogatory remarks against another employee.

Work Rule 14 defines unacceptable behavior as it relates to discrimination and harassment of other employees.

Work Rule 28 defines unacceptable behavior regarding the way an employee should conduct themselves during work hours.

Work Rule 39 details the contractor's posture on using abusive, threatening or obscene language or physical violence.

OFCCP' findings further revealed that training and reclassification are covered under the contractor's Collective Bargaining Agreement.    Training and Reclassification are identified as Articles 33.1(b)- Training, Article 33.2- Training to Qualify, Article 35.1- Reclassifications and Article 35.2- Status Change Forms. These Articles define the process by which an individual is eligible for training and/or, reclassification and the responsibilities of the individual who agreed to training as well as the stipulations surrounding reclassification after training has been completed.

The Articles clearly state once an employee has agreed to participate in a training class, they are required to remain in the affected area for a period of no less than 24 months. The complainant was given an opportunity to deny the training and instead agreed to the training which caused him to be locked into employment in the AMSS Department for a period of 24 months after the completion of the training thus negating his request for reclassification and job assignment. The complainant was aware of the Articles, and advised not to accept the training or remove his request for reclassification because of the established Articles that govern training and reclassification.  The complainant accepted the training with full knowledge of its stipulations.

6.    Based on the findings of this investigation, there was insufficient evidence to conclude that the complainant was harassed and the contractor has violated its obligations under the nondiscrimination and affirmative action provisions of Section 503, the nondiscrimination provisions of the ADA or the Vietnam Era Veterans' Readjustment Assistance Act of 1974.    There is no longer a reconsideration process; therefore, the Department's processing of this complaint is concluded.

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

AFS    1232

Paul A. Gordon vs. Army Fleet Support
I00124829

Enclosed find a right-to-sue letter, issued in compliance with 41 CFR 60-742.5(e)(1).

On behalf of the United States Department of Labor:

Linda J. Henderson                                    01/18/06
District Director                                     Date
Birmingham District Office
Southeast Region
ESA/OFCCP

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

UNITED STATES DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS
on behalf of the
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

NOTICE OF RIGHT TO SUE
UNDER TITLE I OF THE AMERICANS WITH DISABILITIES ACT (ADA)
(Dismissal)

| TO:  (Complainant's Name and Address) | FROM:  [OFCCP Office Name and Address] |
|---|---|
| Paul Gordon<br>155 Linda Street<br>Ozark, AL  36360<br>[__] On behalf of a person whose identity is confidential [29 C.F.R. 1601.7(a)] | USDOL/OFCCP<br>Medical Forum Building<br>950 22nd St North Suite 660<br>Birmingham, AL  35203 |
| | OFCCP Representative:<br>Regina Jones |
| Complaint/Charge Number<br>    I00124829 | Telephone Number<br>    205.731.0820 |

(See the additional information on the reverse side of this form.)

TO THE COMPLAINANT/CHARGING PARTY: This is your NOTICE OF RIGHT TO SUE under Title I of the ADA. It is issued because OFCCP has dismissed your complaint/charge for the following reason.

[X] The Agency's investigation found insufficient evidence that the nondiscrimination provisions of the ADA had been violated.

[__] OFCCP has determined that you are not a "qualified individual with a disability" within the meaning of Title I of the ADA.

The issuance of this NOTICE OF RIGHT-TO-SUE concludes OFCCP's processing of your complaint/charge. If you wish to pursue your complaint/charge further, you have the right to sue the employer named in your complaint/charge in United States District Court. IF YOU DECIDE TO SUE, YOU MUST DO SO WITHIN **NINETY (90) CALENDAR DAYS** OF YOUR RECEIPT OF THIS NOTICE; OTHERWISE, YOUR RIGHT TO SUE IS LOST.

An information copy of this Notice has been sent to the following employer named in your complaint charge:

[Employer's Name and Address]

Army Fleet Support
P. O. Box 620309
Fort Rucker, AL  36362

FOR THE U. S. DEPARTMENT OF LABOR:

[X] Copy of complaint/charge enclosed

_Linda J. Borden_ 01/18/06
District Director          Date

Subject to Protective Order in
civil action no. 1:07-cv-775-WKW

AFS  1234

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF ALABAMA

SOUTHERN DIVISION

PAULA F. DeFRANK,            )

       Plaintiff,            )

vs.                          )    CASE NO.:

ARMY FLEET SUPPORT, LLC,     )    1:07cv775-WKW

       Defendant.            )

      The deposition of BYRON EUGENE REGISTER,
taken pursuant to the Alabama Rules of Civil
Procedure before Tina L. Harrison, Court Reporter
and Notary Public, State at Large, at Court
Reporting Associates, Inc., 256 Honeysuckle Road,
Suite 23, Dothan, Alabama, on the 2nd day of April,
2008, commencing at approximately 10:06 a.m.

**Exhibit D**



Q.    Do you recall when you were moved to the 58s?

A.    I don't remember the date.

Q.    Do you remember the month?

A.    I want to think it was around Thanksgiving.

Q.    In 2005?

A.    Yes, sir.  I think so.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF ALABAMA

SOUTHERN DIVISION

PAULA F. DeFRANK,                    )

      Plaintiff,                     )

vs.                                  )    CASE NO.:

ARMY FLEET SUPPORT, LLC,  )    1:07cv775-WKW

      Defendant.                     )

The deposition of LOWELL A. GREEN, JR., taken pursuant to the Alabama Rules of Civil Procedure before Tina L. Harrison, Court Reporter and Notary Public, State at Large, at Court Reporting Associates, Inc., 256 Honeysuckle Road, Suite 23, Dothan, Alabama, on the 2nd day of April, 2008, commencing at approximately 2:20 p.m.

**Exhibit E**



1

2

3

4

5      Q.    None at all?  I'd like for you to look

6   at what's been marked as Plaintiff's 10.  Let me

7   know when you've had a chance to read that.

8      A.    (Witness complies.)  Okay.

9

10              MR. SHAW:  Did you read that up

11          there?

12              THE WITNESS:  Unable to

13          accommodate for this length of time.

14

15      Q.    And that is an e-mail from Ms. Owens

16   indicating that Ms. DeFrank has been released to

17   return to work as of June the 19th with

18   restrictions for no lifting over 20 pounds, no

19   excessive bending for three months.  And the

20   question is, Will you be able to accommodate?  And

21   your response was?

22      A.    This is Ron Farrington's response:

23   Unable to accommodate at this length of time.

PLAINTIFF'S
EXHIBIT

10    Green
      4/2/08

**Owens, Tanya**

n:              Farrington, Ronald
sent:           Thursday, June 15, 2006 12:46 PM
To:             Owens, Tanya; Green, Lowell A.
Subject:        Re: ACCOMMODATION

Unable to accomadate for that lenght of time.

----- Original Message -----
From: Owens, Tanya
To: Green, Lowell A.; Farrington, Ronald
Sent: Thu Jun 15 12:40:55 2006
Subject: ACCOMMODATION

The following employee has been released to return to work effective date 06/19/06 with
the following restrictions. Her restrictions are no lifting over 20 lbs and no excessive
bending for 3 months.  She is a 1st shift a/c mechanic and her supervisor is Bruce
Swarthout. Will you be able to accommodate?


DEFRANK, PAULA # 014311


Thank you,

Tanya Owens

 y Fleet Support

Personnel Specialist

334-503-3519

E-fax 598-5936

AFS  0073

1