# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PAULA F. DeFRANK, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 1:07cv775-WKW |
| ARMY FLEET SUPPORT, LLC, | § | |
| Defendant. | § | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT ARMY FLEET SUPPORT, LLC'S
## MOTION FOR SUMMARY JUDGMENT

KIRK C. SHAW
ARMBRECHT JACKSON LLP
POST OFFICE BOX 290
MOBILE, ALABAMA 36601
(251) 405-1300 - TELEPHONE
(251) 432-6843 - FACSIMILE

# TABLE OF CONTENTS

**PAGE**

I.   PRELIMINARY STATEMENT.................................................................... 1

    A.  Nature of the Case .................................................................. 1

    B.  Proceedings To Date................................................................ 3

II.  UNDISPUTED MATERIAL FACTS ........................................................ 3

    A.  AFS's Contract With The Federal Government ...................................... 3

    B.  Plaintiff's Employment at AFS .................................................... 4

    C.  Plaintiff's Application for Social Security Disability Benefits and Her
        Alleged Inquiry of AFS Regarding Unemployment Compensation
        Benefits ............................................................................ 7

    D.  Additional Facts Regarding AFS's Contract With The Government.................... 8

ARGUMENT AND AUTHORITIES ................................................................ 10

    A.  Standard For Summary Judgment .................................................. 10

    B.  The Rehabilitation Act Does Not Provide Plaintiff A Private Cause of
        Action Against AFS, A Federal Contractor...................................... 12

    C.  Even If The Court Were to Consider Plaintiff's Claim As Appropriate
        Under § 504, There Is No Substantial Evidence That Defendant Is A
        "Recipient of Federal Financial Assistance" So As to Come under That
        Section ............................................................................ 18

    D.  The Court Should Decline to Exercise Jurisdiction Over Plaintiff's State
        Law Claim........................................................................ 25

CONCLUSION ............................................................................................ 28

CERTIFICATE OF SERVICE ...................................................................... 29

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Allstate Ins. Co. v. Eskridge,* 823 So. 2d 1254 (Ala. 2001) ............................................. 27

*Arline v. School Bd. of Nassau County,* 772 F.2d 759 (11th Cir. 1985) ..................... 19, 25

*Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353
(11th Cir. 1997)............................................................................................2, 25, 26

*Bell Atl. Corp. v. Twombly,* ___ U.S. ____, 127 S.Ct. 1955, 1965,
167 L.Ed.2d 929 (2007) ...................................................................................... 12

*Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)................................. 13

*Cannon v. University of Chicago,* 441 U.S. 677 (1979) ......................................... 16, 17

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ...................................................... 11

*Cort v. Ash,* 422 U.S. 66 (1975)..................................................................................... 15

*Crowne Investments, Inc. v. Bryant,* 638 So. 2d 873, 877 (Ala. 1994)............................ 26

*Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358
(11th Cir. 1999)................................................................................................. 11

*Davis v. United Airlines,* 662 F.2d 120 (2nd Cir. 1981)...................................................... 17

*DeVargas v. Mason & Hanger-Silas Mason Co.,* 911 F.2d 1377, 1382
(10th Cir. 1990)........................................................................................20, 23, 24

*Dunlap v. BellSouth Telecommunications, Inc.,* 431 F. Supp. 2d 1210,
1218-19 (M.D. Ala. 2006)............................................................................... 2, 26

*Fisher v. Tuscon,* 9th Cir. 1981, 27 FEP Cases 892........................................................ 13

*Foremost Ins. Co. v. Parham,* 693 So. 2d 409 (Ala. 1997).............................................. 27

*Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) ............................................. 11

*Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003) ...................................................... 12

*Hodges v. Santa Fe R.R. Co.,* 10th Cir. 1984, 34 FEP Cases 457,
1 AD Cases 565 ................................................................................................... 13

*Howard v. Uniroyal, Inc.,* 719 F.2d 1552, 1555 (11th Cir. 1983) ......... 2, 12, 13, 14, 15, 18

*Jacobson v. Delta Airlines*, 742 F.2d 1202, 1210 (9th Cir. 1984) .................................. 20

*Jones v. Alabama Power Co.*, 10 A.D.D. 1095, 3 A.D. Cas. (BNA) 1717,
1731 (N.D. Ala. 1995)................................................................... 20, 25

*Lampkin v. United Parcel Service,* 2008 WL 1925120, *2-3 (M.D. Ala. 2008)........ 11, 12

*Leskinen v. Utz Quality Foods, Inc.*, 30 F. Supp. 2d 530, 534 (D.Md. 1998)............ 20, 21

*Mass v. Martin Marietta Corp.*, 805 F. Supp. 1530 (D. Colo. 1992) ............................. 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) .............. 11

*Moore v. Sun Bank of N. Fla.,* 923 F.2d 1423 (11th Cir. 1991) ...................................... 20

*Muller v. Hotsy Corp.*, 917 F. Supp. 1389 (N.D.Iowa 1996) .......................................... 20

*Reed v. Riley,* 2008 WL 906571, *2 (M.D. Ala. 2008).................................................... 12

*Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980), *cert. den.*
449 U.S. 889 (1980) .................................................................. 2, 12, 13, 15, 17, 18

*Squire v. United Airlines, Inc.*, 973 F. Supp. 1004, 1008 (D.Colo.1997) ....................... 20

*The McCutchen Co., Inc. v. Media General, Inc.,* _____ So. 2d _____,
2008 WL 204449 (Ala. 2008)....................................................................... 27

*United Air Lines v. Davis,* 2d Cir. 1981, 26 FEP Cases 1527 ......................................... 13

*United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437
(11th Cir. 1991)............................................................................................. 11

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004)...................... 10, 11

## Statutes, Regulations and Treatises

14 CFR § 1251.102(f)....................................................................................... 19

24 CFR § 8.3 ................................................................................................... 19

28 CFR § 41.3(e) ............................................................................................. 19

28 U.S.C. § 1367(a)......................................................................................... 25

29 CFR § 32.3 ................................................................................................................ 19

29 U.S.C. § 793 ....................................................................................................... 12, 14

29 U.S.C. § 794 ............................................................................................. 1, 12, 18, 19

32 CFR § 56.3 (b) .......................................................................................................... 19

34 CFR § 104.3(h) ......................................................................................................... 19

41 C.F.R. §§ 60-1.2, 60-1.20 ....................................................................................... 14

45 CFR § 84.3(h) ........................................................................................................... 19

49 CFR § 27.5 ................................................................................................................ 19

8 BNA FAIR EMPLOYMENT PRACTICES MANUAL 421:867 ........................................... 13

ALA. CODE § 25-4-78(2) & (5) ..................................................................................... 28

*Fed.R.Civ.P.* 12(b)(6) ............................................................................................. 12, 18

*Fed.R.Civ.P. 8(a)(2)* ..................................................................................................... 12

*Fed.R.Civ.P. 56(c)* ....................................................................................................... 11

*Fed.R.Civ.P. 56(e)(2)* ................................................................................................... 11

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAULA F. DeFRANK, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 1:07cv775-WKW |
| ARMY FLEET SUPPORT, LLC, | § | |
| Defendant. | § | |

MEMORANDUM IN SUPPORT OF
DEFENDANT ARMY FLEET SUPPORT, LLC'S
MOTION FOR SUMMARY JUDGMENT

Defendant Army Fleet Support, LLC submits this memorandum in support of its

Motion for Summary Judgment.  Defendant's motion is due to be granted because the

Plaintiff fails to state a claim under the Rehabilitation Act of 1973 upon which relief can

be granted and her state law claim of fraud and deceit should be decided by state courts

and, therefore, dismissed by this Court.

## I.    PRELIMINARY STATEMENT

A.    **Nature of the Case**

This is an action by Plaintiff Paula F. DeFrank ("Plaintiff") against Defendant

Army Fleet Support ("AFS") for an alleged violation of Section 504 of the Rehabilitation

Act of 1973, 29 U.S.C. § 794(a) (Count One) and alleged fraud and deceit (Count Two).

Plaintiff contends that she is a qualified individual with a disability and that AFS discriminated against her when it did not return her to work in mid-June 2006. She also contends that AFS misled her as to her entitlement to unemployment compensation benefits thereafter.

AFS is the contractor that provides maintenance and logistics support for rotary-wing aircraft at Fort Rucker, Alabama under a contract with the U. S. Army Aviation and Missile Command. Because AFS is a federal contractor, Plaintiff's remedy for alleged disability discrimination lies under § 503 of the Rehabilitation Act, not § 504, which is for programs and activities receiving federal financial assistance. There is no private right of action available to Plaintiff under § 503. *Howard v. Uniroyal, Inc.,* 719 F.2d 1552, 1555 (11th Cir. 1983); *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980), *cert. den.* 449 U.S. 889 (1980). Section 503 provides an administrative remedy to employees of federal contractors through the Office of Federal Contract Compliance Programs, not a private right of action in court. Therefore, Plaintiff's Count One is due to be dismissed for failure to state a claim upon which relief can be granted. *(Id.)*

Plaintiff's Count Two for alleged fraud and deceit is a state-law claim. Once Plaintiff's federal claim is dismissed, Count Two should be dismissed also because "state courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir. 1997); *Dunlap v. BellSouth Telecommunications, Inc.,* 431 F. Supp. 2d 1210, 1218-19 (M.D. Ala. 2006).

**B.    Proceedings To Date**

Plaintiff filed the instant action on August 28, 2007.  Defendant answered her

Complaint on September 20, 2007.  Discovery is ongoing and scheduled to conclude on

or before July 28, 2008.  A pretrial conference is scheduled for August 11, 2008, with

trial to occur during the term of court commencing on September 22, 2008, in Dothan,

Alabama.

## II.    UNDISPUTED MATERIAL FACTS

**A.    AFS's Contract With The Federal Government**

1.      In 2003, AFS was the successful bidder in response to a Request for

Proposal issued by the US Army Aviation & Missile Command ("the Government") to

provide aircraft maintenance and logistics support to the flight training programs at Fort

Rucker, Alabama, effective December 1, 2003 ("Contract").  (Hamlin Aff. (Exh. A), ¶ 3).

2.      AFS was awarded the Contract through competitive bidding that involved

several bidders, including the incumbent contractor, DynCorp Technical Services, LLC

("DynCorp"), and a previous contractor, Sikorsky Support Services Incorporated.

(Hamlin Aff. (Exh. A), ¶ 4).

3.    The Government has been awarding aircraft maintenance service contracts at Fort Rucker through competitive bidding in this manner for approximately fifty years. (*Id.*, ¶ 9.)

4.    The Contract is the largest aircraft maintenance contract in the Department of Defense. (*Id.*, ¶ 5.)

**B.    Plaintiff's Employment at AFS.**

5.    Plaintiff was employed by AFS at the inception of its Contract on December 1, 2003, as an Aircraft Mechanic working at Hanchey Field.  *(DeFrank Dep. (Exh. B), 47:11-15*).[1]

6.    Previously, Plaintiff had worked as an Aircraft Mechanic for AFS's predecessor, DynCorp, since January 2000. *(Id., 48:15-22).*

7.    On January 4, 2004, Plaintiff was involved in an automobile accident. *(Id., 28:22 - 29:1).*

8.    Following her accident, Plaintiff worked for AFS approximately six weeks in 2004 (from June 29 through August 10), then again in 2005 for approximately 4 ½

---

[1]Deposition references are to page and line, e.g., "47:11-15" refers to page 47, lines 11 through 15; "28:22 - 29:1" refers to page 28, line 22, through page 29, line 1.

months (from February 23 through July 15). *(Whelan Aff. (Exh. C), ¶ 4).*

9.    Plaintiff returned to work on both occasions with temporary physical limitations imposed by one of her physicians. *(DeFrank Dep. (Exh. B), 64:14 - 65:10 & Def. Exh. 3; 67:18 - 68:8 & Def.'s Exh. 4).*

10.    AFS accommodated Plaintiff on both occasions by assigning her to assist in performing "parts turn-in" work on the Apache helicopters at Hanchey Field. *(Id., 63:20 - 64:7; 74:7-15).*

11.    On January 11, 2006, Plaintiff returned to work for AFS a third time following an absence of approximately six months. Again, her physician imposed temporary physical restrictions upon her. *(Id., 75:13 - 76:22, Def.'s Exh. 6; 87:23 - 88:6 & Def.'s Exh. 8).*

12.    AFS accommodated Plaintiff on this occasion by assigning her to assist in "parts turn-in" with co-employee Byron Register on the OH-58 helicopters at Hanchey Field. *(Id., 89:11 - 90:15).*

13.    Register had been assigned to do parts turn-in on the OH-58's around Thanksgiving, 2005. *(Register Dep. (Exh. D), 46:11 - 18).*

14.    On or about April 4, 2006, Plaintiff was told that she was to work on a helicopter crew as an Aircraft Mechanic beginning the following day. *(DeFrank Dep. (Exh. B), 173:5 - 11; 174:2 - 7).*

15.    Plaintiff became upset and left work before completing her shift. *(Id., 176:23 - 177:15).*

16.    Plaintiff did not return to work the following day.  Instead, she went to one of her physicians who sent a statement to AFS that she, the physician, "feel[s] it is [in Plaintiff's] best interest medically to refrain from work for the next month." *(Id. 177:13-17; 179:19 - 180:1; 183:3-8).*

17.    Plaintiff did not attempt to return to work until mid-June, 2006, when she brought or sent return-to-work slips from two of her physicians with the restriction of "no lifting over 20 lbs. [and] no excessive bending for 3 months" and "no lifting with right arm until follow-up," respectively. *(Id., 191:12 - 192:5 & Def.'s Exh. 20; 193:13 - 194:7 & Def.'s Exhs. 22 & 23).*

18.    The Assistant Field Manager at Hanchey Field stated that they could not accommodate Plaintiff's limitations of "no lifting over 20 lbs and no excessive bending for three months" for that length of time.  (The Assistant Field Manager was not told of the additional limitation of "no lifting with right arm until follow-up.") *(Green Dep. (Exh.*

*E), 47:5-23 & Pl.'s Exh. 10).*

19.    Thereafter, Plaintiff never returned to Human Resources with another return-to-work slip from a physician.  *(DeFrank Dep. (Exh. B), 201:6 - 202:2).*

**C.    Plaintiff's Application for Social Security Disability Benefits and Her Alleged Inquiry of AFS Regarding Unemployment Compensation Benefits**

20.    Plaintiff applied to Social Security for disability benefits sometime prior to May 2006. *(DeFrank Dep. (Exh. B), 188:2 - 189:6 & Def.'s Exh. 19).*

21.    In November 2006, Plaintiff presented a "Visit Status Report" from one of her physicians in which his response to "Work Restrictions" was "No Work."  *(Id., 203:22 - 204:21 & Def.'s Exh. 27).*

22.    Plaintiff states that sometime between mid-June 2006 and August 24, 2007, on a date that she does not recall, Penny Westrick, AFS's Benefits Coordinator, told Plaintiff that she "could not claim" unemployment compensation benefits because she "was still a part of the company and could be called back."  *(Id., 209:8 - 211:14).*

23.    Under the Collective Bargaining Agreement, Plaintiff may return to work, if able, at any time within the length of time she has worked for AFS and its predecessors

or five years, whichever is longer.  *(Id., 59:18 - 60:12; Whelan Aff. (Exh. C), ¶ 6).*

24.    In Plaintiff's case, she has until April 2011within which to return to work for AFS, if able. *(Id.).*

25.    Plaintiff never applied for unemployment compensation benefits with the Alabama Employment Service, nor did she inquire of that agency about her eligibility for such benefits. *(DeFrank Dep. (Exh. B), 209:13-18;  211:8-10).*

26.    Plaintiff has applied for or received unemployment compensation benefits on at least three occasions previously. *(Id., 211:18 - 214:22 & Def.'s Exh. 28).*

> **[Defendant submits that the above, undisputed material facts are all that are required for the Court to grant summary judgment to Defendant as to Count One and to dismiss Plaintiff's state law claim under Count Two.  However, should the Court consider the applicability of § 504 to Plaintiff's claim, the following additional, undisputed facts are material.]**

**D.    Additional Facts Regarding AFS's Contract With The Government**

27.    The base period for AFS's Contract was for one year, with options for the Government to extend it up to a total of ten years, three months.  Currently, the Contract has been extended by the Government through September 30, 2008.  (Hamlin Aff. (Exh. A), ¶ 6.)

28.    The services performed by AFS under its Contract are on a "Cost Reimbursable Plus Award and Incentive Fee" basis.  This is in accordance with the Request for Proposals issued by the Government.  In other words, AFS is reimbursed by the Government for its costs, plus an agreed percentage of the savings below targeted costs and the opportunity for incentive fees based on performance.  (*Id.*)

29.    All bidders responding to the Government's Request for Proposals submitted their Proposals on the above basis. (*Id.*, ¶ 4.).

30.    The Government's Request for Proposals provided that "[a]ll work will be performed in government furnished facilities at Fort Rucker, Alabama, and other locations as required."  It also provided that "[t]he Government will furnish the materials, supplies, equipment, machinery, [and] tools specified in the exhibits [to the Request for Proposals]." (*Id.*, ¶ 7 & Attach. 1, §§ C.1 & C.10.1 (pp. 2, 4-5).

31.    The exhibits to the Request for Proposals detail that the Government provides: existing aircraft maintenance facilities; Government-owned vehicles; new equipment training for the maintenance of new equipment that the contractor would be required to support; protective and flight clothing; utilities; aviation and motor vehicle fuels, oils, and petroleum products required in the execution of the Contract; and reproduction (duplication) services."  (*Id.*, § C.10 & Attachs. 9, 9a, 10, 11 & 14 (pp. 4-6, 10-17).

32.    The Government owns the real property and facilities at Fort Rucker. (*Id.*, ¶ 8.).

33.    Were the Government not to furnish the property and services listed in its Request for Proposal, the successful bidder would have to furnish that property and, in turn, charge the Government for same on a "cost-plus" basis.  (*Id.*, ¶ 9).

34.    The Government's furnishing of facilities and property to AFS does not increase AFS's profits.  If anything, it reduces AFS's profits since the Contract is a "cost-plus" one and AFS has no opportunity to earn a profit on the costs of the facilities and property furnished by the Government. (*Id.*, ¶ 10.).

35.    AFS is subject to numerous regulations, including Department of Defense regulations and Department of the Army regulations, in performing its Contract for the Government. (*Id.*, ¶ 11 & Attach. 1 (§ C.12 (pp. 7-9)).

## ARGUMENT AND AUTHORITIES

A.    **Standard For Summary Judgment**

The standard for summary judgment in the Eleventh Circuit has been articulated many times by that court and this court. *See, e.g.*, *Wilson v. B/E Aerospace, Inc.*, 376

F.3d 1079, 1085 (11th Cir. 2004), and *Lampkin v. United Parcel Service,* 2008 WL

1925120, *2-3 (M.D. Ala. 2008). In *Lampkin,* this Court stated:

> Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* Under *Rule 56,* the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.,* 477 U.S. at 322-23.

> Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." *Fed.R.Civ.P. 56(e)(2).* To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir. 1991)). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

*Lampkin,* 2008 WL 1925120 at *2-3.[1]


**B.    The Rehabilitation Act Does Not Provide Plaintiff A Private Cause of Action Against AFS, A Federal Contractor**

Because AFS is a federal contractor, Plaintiff's remedy, if any, lies under § 503 of

the Rehabilitation Act, not § 504, which pertains to programs and activities receiving

federal financial assistance. *Howard v. Uniroyal, Inc.,* 719 F.2d 1552 (11th Cir. 1983);

*Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980). A leading treatise summarizes

the law regarding an employee's right to a private cause of action against her employer

under the Rehabilitation Act as follows:

> A private right of action under [the Rehabilitation Act] is contingent on whether the employer is covered by section 503 (29 U.S.C. § 793; federal contractors) or section 504 (29 U.S.C. § 794; programs and activities receiving federal

---

[1] Although AFS has couched its motion in terms of a motion for summary judgment, the Court could address it under the standard for a motion to dismiss, since AFS's argument is that Plaintiff's federal cause of action (Count One) fails to state a claim upon which relief can be granted. (Answer (Doc.1), First Affirmative Defense). This Court has stated the standard for consideration of a motion to dismiss as follows:

> A *Rule 12(b)(6)* motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P. 8(a)(2).* A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1964-65 (citations omitted); *see also Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003) (stating that the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff). The court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S.Ct. at 1974. Failure to state a claim for relief results in the dismissal of the complaint. *Fed.R.Civ.P.* 12(b)(6).

*Reed v. Riley,* 2008 WL 906571, *2 (M.D. Ala. 2008).

financial assistance or conducted by any federal executive agency or the U. S. Postal Service).

*Federal Contractors* - Section 503 (29 U.S.C. § 793) provides for an administrative remedy.  Applicants for employment by or **employees of federal contractors have no private right of action.**  Individuals may refer complaints to the OFCCP for investigation, however (*see Hodges v. Santa Fe R.R. Co.,* 10th Cir. 1984, 34 FEP Cases 457, 1 AD Cases 565; *United Air Lines v. Davis,* 2d Cir. 1981, 26 FEP Cases 1527; *Fisher v. Tuscon,* 9th Cir. 1981, 27 FEP Cases 892; *Rogers v. Frito Lay,* 5th Cir., 1980, 22 FEP Cases 16).

(8 BNA FAIR EMPLOYMENT PRACTICES MANUAL 421:867 (emphasis supplied)).

The former Fifth Circuit's 1981 decision in *Rogers,* cited above, to the effect that a disabled employee of a federal contractor does not have a private right of action under § 503 of the Rehabilitation Act, is governing precedent on the Eleventh Circuit.  This was acknowledged by the Eleventh Circuit in *Howard v. Uniroyal, Inc.,* 719 F.2d 1552 (11th Cir. 1983), when it stated:

In *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980),[5] the former Fifth Circuit extensively reviewed the available evidence of Congressional intent in section 503 and held that *Congress did not intend to provide handicapped individuals with an implied private cause of action under section 503.*

_____

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent.

*Id.* at 1555 (emphasis supplied). In *Howard,* the plaintiff sought to bring a contract claim under Alabama law as a direct third-party beneficiary of the § 503(a) affirmative action clause contained in contracts between Uniroyal, a federal contractor, and the federal government. Judge Varner of this Court held that § 503 preempted state law and there was no private cause of action under the Rehabilitation Act. He dismissed plaintiff's complaint under § 503 for failure to state a claim upon which relief can be granted. On appeal, the Eleventh Circuit affirmed Judge Varner's decision.

In the present case, it is undisputed that AFS is a federal contractor subject to § 503(a) of the Rehabilitation Act. (*Hamlin Aff.,* Exh. A, ¶¶ 3-11 & Attachments thereto.) Under § 503(a), any contract in excess of $10,000.00 entered into by "any federal department or agency for the procurement of . . . nonpersonal services . . . shall contain a provision requiring that [the contractor] shall take affirmative action to employ and advance in employment qualified individuals with disabilities. . . ." 29 U.S.C. § 793(a). Section 503(b) provides that "[i]f any individual with a disability believes any contractor has failed or refused to comply with the provisions of [its federal] contract…, such individual may file a complaint with the Department of Labor" which shall "promptly investigate" and "take such action . . . as the facts and circumstances warrant. . . ." *Id.* at § 793(b). The Department of Labor ("DOL") has delegated responsibility for overseeing the enforcement of § 503 to the Office of Federal Contract Compliance Programs ("OFCCP"). *See* 41 C.F.R. §§ 60-1.2, 60-1.20 and OFCCP's implementing

regulations at 41 C.F.R. Part 60-741, especially § 60-741.60 - .84 (General Enforcement and Complaint Procedures).

When, in *Rogers,* the former Fifth Circuit addressed the issue of whether "handicapped" employees (now, "disabled" employees) have a private right of action against federal contractors, it was a matter of first impression for the courts. *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1085 (5th Cir. 1980) (Goldberg, J., dissenting). Accordingly, the Fifth Circuit "*extensively* reviewed the available evidence of Congressional intent" in deciding that Congress did not intend to create a private cause of action under § 503. *Howard,* 719 F.2d at 1555 (emphasis supplied). The Fifth Circuit used the four factors set out by the United States Supreme Court in *Cort v. Ash,* 422 U.S. 66 (1975) to analyze the issue. It found, first, that the Rehabilitation Act contains "duty-creating language" directed towards federal departments and agencies, not "right-creating language" directed towards handicapped persons. The court concluded:

> "The statutory language does not imply on its face any intention to endow the handicapped with a direct suit after suffering handicap-based discrimination. It merely requires those who give out federal contracts to obligate contractors to take affirmative steps to employ and advance handicapped persons. . . . The statute does not confer a clearly defined right on the benefitted class.

611 F.2d at 1079.

Second, the Fifth Circuit examined statements made in Congress at the time that the statute was enacted in 1973 and additional statements made in Congress when the Rehabilitation Act was amended in 1978.  It also compared § 503 with § 504, under which a private right of action had been held to exist.  The court concluded that there was no indication of legislative intent, explicit or implicit, from the legislative history or comparison of the two sections either creating a private right of action or denying one under § 503.  (*Id.* at 1080-84).

Third, the Fifth Circuit observed that Congress had provided a complete administrative scheme to remedy violations of § 503 and the implementing regulations provided explicit details for the operation of that plan <u>without</u> providing for a private right of action.  The court suggested that a private judicial remedy may be difficult to harmonize with the administrative enforcement framework.  It stated, "[t]he provision of an express administrative remedy for qualified handicapped persons creates at least some basis to conclude that a private right of action would be *inconsistent* with the purposes of the legislative scheme."  (*Id.* at 1084 (emphasis supplied)).

In concluding its analysis of the issue, the Fifth Circuit stated:

> Where there is silence, as *Cannon [v. University of Chicago,* 441 U.S. 677 (1979)] commands, we seek for affirmative evidence of Congressional intent.  Silence may indicate only that the question never occurred to Congress at all, or it may reflect mere oversight in failing to deal with a matter intended to be covered, or it may demonstrate

deliberate obscurity to avoid controversy that might defeat the passage of legislation, or it may, indeed, be a result merely of an assumption by Congress that the courts would recognize a private cause of action. **The issue is not whether, on the merits, balancing on-the-one-hand with on-the-other, advocates of judicial remedies have a better case than opponents, but whether, considering the purpose and function of the statute and its legislative history, we can find a legislative intent to recognize a judicial remedy.**

The task does not lend itself to certitude or dogmatism. Yet principle can shed helpful light even if not the clarity necessary for absolute confidence. **The standard is that those who contend a statute has endowed them with a cause of action must establish their proposition. The appellants have not shown that section 503 presents the "atypical situation in which All of the circumstances that the Court has previously identified as supportive of an implied remedy are present,"** *Cannon[, supra]* **or even that sufficient of them attended its enactment to warrant the implication.**

**For these reasons, we decline to do judicially what Congress has not done legislatively. . . .**

*(Id.,* at 1085) (emphasis supplied). The Fifth Circuit then affirmed the lower courts' dismissal of the two actions before it. (*See also* the analysis of the Second Circuit Court of Appeals in *Davis v. United Airlines,* 662 F.2d 120 (2nd Cir. 1981), reaching the same conclusion.)

Since *Rogers* was decided in 1980, Congress has amended the Rehabilitation Act twice, once in 1990 and again in 1992. In neither instance did Congress amend § 503 to add a private right of action for individuals. Accordingly, it is established law in the Eleventh Circuit that Plaintiff has no private cause of action against AFS, a federal

contractor. *Rogers, supra; Howard, supra.* Plaintiff's remedy, if any, was through the administrative procedures of § 503 dictated by Congress and implemented by DOL through the OFCCP, just as other allegedly aggrieved employees of AFS have done. (Whelen Aff. (Exh. C), ¶ 7 & Attachs. 1 & 2).

C.    **Even If The Court Were to Consider Plaintiff's Claim As Appropriate Under § 504, There Is No Substantial Evidence That Defendant Is A "Recipient of Federal Financial Assistance" So As to Come under That Section.**

Properly considered, the inquiry as to Plaintiff's claim under the Rehabilitation Act has ended. Her federal claim is due to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fed.R.Civ.Proc. 12(b)(6).* However, even if the Court were to disregard established precedent in this Circuit and consider Plaintiff's claim under § 504, the outcome would be the same: AFS is due judgment as a matter of law.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, prohibits discrimination on the basis of disability by any "program or activity receiving Federal financial assistance."[2] The Act does not define the term "Federal financial assistance;"

---

[2] Section 504 provides, in part, as follows:

"No otherwise qualified individual with a disability in the United States, as defined in §705(20) of this Title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . . The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation Comprehensive Services, and Developmental Disability Act of 1978. . . .

however, the implementing regulations of the various federal agencies, including the

Department of Defense, expressly exclude procurement contracts, insurance agreements,

and guaranty contracts from its coverage.[3]


In *Arline v. School Bd. of Nassau County*, 772 F.2d 759 (11th Cir. 1985), the

Eleventh Circuit found that federal "impact aid" to schools was "Federal financial

assistance" under § 504 of the Rehabilitation Act.  But, while not specifically discussing

procurement contracts, the court said, "[w]e agree that when the federal government

makes payments for obligations incurred as a market participant, such payments do not

constitute 'federal assistance'." *Id.* at 762 (citations omitted).  Judge Propst of the

Northern District of Alabama understood that statement by the Eleventh Circuit to be

"explicit [] accept[ance] [of] the procurement contract exception set forth in the

---

29 U.S.C. §794(a).  "Program or activity" is defined in § 794(b).

[3] The Department of Defense's regulations define "Federal financial assistance" as follows:

> "*Federal financial assistance*.  Any grant, loan, contract, **(other than a procurement contract or a contract of insurance or guaranty)**, or any other arrangement by which the Federal Government provides or otherwise makes available assistance in the form of:
>
> (1)    Funds.
> (2)    Services performed by Federal personnel, including technical assistance, counseling, training, and provision of statistical or expert information.
> (3)    Real and personal property or any interest in or use of such property, including:
>     (i)    Transfers or leases of such property for less than fair market value or for reduced consideration.
>     (ii)    Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal government.

32 CFR § 56.3 (b)(emphasis supplied).  See also 28 CFR §41.3(e) (general Justice Department implementing regulations; 14 CFR §1251.102(f) (NASA); 24 CFR §8.3 (HUD); 29 CFR § 32.3 (Department of Labor); 34 CFR §104.3(h) (Department of Education); 45 CFR §84.3(h) (HHS); and 49 CFR §27.5 (Department of Transportation).

regulations." *Jones v. Alabama Power Co.*, 10 A.D.D. 1095, 3 A.D. Cas. (BNA) 1717, 1731 (N.D. Ala. 1995).  Judge Propst also noted that, in the Eleventh Circuit's subsequent decision in *Moore v. Sun Bank of N. Fla.,* 923 F.2d 1423 (11th Cir. 1991), nullifying a portion of the Small Business Administration's Regulations defining "Federal financial assistance," the Court of Appeals "expressly did <u>not</u> nullify that portion of the regulations which excludes procurement contracts from the definition of 'federal financial assistance'." *Jones*, 3 A.D. Cas. at 1730-31, quoting *Moore, supra.* at 1430 (emphasis supplied).  Accordingly, Judge Propst "refuse[d] to extend the definition of 'Federal financial assistance' to include procurement contracts." 3 A.D. Cas. at 1731.

Another court has summarized the test for Federal financial assistance as follows:

> [T]he term "financial assistance" contemplates grants, loans, or subsidies without reciprocal services or benefits.  *See, e.g., DeVargas v. Mason & Hanger-Silas Mason Co.,* 911 F.2d 1377, 1382 (10th Cir. 1990) (concluding that a corporation receives financial assistance when it receives a subsidy); *Jacobson v. Delta Airlines*, 742 F.2d 1202, 1210 (9th Cir. 1984) (finding that payments do not constitute financial assistance if they are merely compensatory); *Squire v. United Airlines, Inc.*, 973 F. Supp. 1004, 1008 (D.Colo.1997) ("Simply engaging in a contract for services with the government does not entail receipt of federal funds" for Rehabilitation Act purposes.); *Muller v. Hotsy Corp.*, 917 F. Supp. 1389 (N.D.Iowa 1996) (determining that a GSA contract does not constitute financial assistance because the government's intent is to compensate for goods and services, not to provide a subsidy).

*Leskinen v. Utz Quality Foods, Inc.*, 30 F. Supp. 2d 530, 534 (D.Md. 1998).

In Plaintiff's complaint in the present case, she contends that Army Fleet Support

is an entity covered by §504, because it receives

> "Federal assistance under programs or activities
> conducted by an Executive agency as defined in 29 U.S.C.
> § 794 et seq. Specifically, the defendant receives federal
> assistance in a number of means, including but not limited to,
> the use of real property; training and other services; the use of
> vehicles, specialized equipment, and other personal property;
> the lease of real and/or personal property owned by the
> federal government for less than fair market value; and, in
> other ways not listed here.

*Complaint* (Doc. 1), ¶ 21.

Admittedly, the Government's Contract with AFS does require that "[a]ll work

will be performed [by AFS] in government furnished facilities at Fort Rucker, Alabama

and other locations as required" and that "[t]he Government will furnish the materials,

supplies, equipment, machinery [and] tools specified in the exhibits to the Contract."

*(See Exhibit A, Affidavit of John L. Hamlin, ¶ 7 & Attach. "1" ("Continuation Sheet"), §'*

*C.1.).* However, the Government's provision of facilities, materials, etc. is not a "grant[],

loan[] or subsidy[] without reciprocal services or benefits" from AFS. *Leskinen*, 30 F.

Supp. 2d at 534. Rather, it is a requirement of the Contract imposed by the Government

by necessity and for obvious, financial reasons of benefit to the Government.

The "primary objective" of the Contract is for AFS "to provide aircraft

maintenance in support of the flight training programs at Fort Rucker." *(Id., ¶ 3 &*

*Attach. "1" (Continuation Sheet) § C.1.1.)*    Necessarily, AFS *must* be located on the premises of Fort Rucker to maintain helicopters there in a timely and efficient manner. (*Id.,* ¶ 8.)  The Government owns the real property and facilities at Fort Rucker.  (*Id.*)  Therefore, it only makes sense that the Government would require AFS to perform its services in "government furnished facilities [located] at Fort Rucker."  (*Id.,* Attach. "1" (Continuation Sheet), § C.1.)

Likewise, it is financially advantageous to the Government for it to "furnish the materials, supplies, equipment, machinery [and] tools that are 'specified in the exhibits to the contract'" to AFS.  The Government's Request for Proposals called for a "cost-plus" contract, i.e., one in which the Government reimburses the successful bidder for its costs, plus an agreed percentage of savings below target costs and the opportunity for incentive fees based on performance.  *Hamlin Aff.* (Exh. A), ¶ 6.  By providing the "materials, supplies, equipment, etc.," that the successful bidder requires to perform the Contract, the Government avoids having to pay the successful bidder on a "cost-plus" basis for providing those goods.  AFS, the successful bidder in this instance, must turn over all facilities, equipment, machinery, tools and unused materials and supplies to the Government (or its successor contractor) at the end of its Contract with the Government. (*Id.,* ¶ 7.)  Thus, AFS does not profit from the Government's furnishing of the facilities and items specified in the Contract.  (*Id.,* ¶ 10.)  The fact of the matter is that AFS *loses* the potential to profit by furnishing such goods to the Government on a "cost-plus" basis. (*Id.*)

In *Mass v. Martin Marietta Corp.*, 805 F. Supp. 1530 (D. Colo. 1992), the plaintiff raised a similar argument against a federal contractor, Martin Marietta, as Plaintiff does here.  Mass presented evidence that Martin Marietta received "'hundreds of millions of dollars' in federal funds pursuant to contracts with various government agencies" and that Martin Marietta used "government equipment in manufacturing goods furnished to the government" under those contracts.  *Id.* 1542.  Plaintiff argued that Martin Marietta had therefore received "Federal financial assistance," and he cited cases involving hospitals that received "Medicare and Medicaid" payments from the Government in support of his argument.

Apparently, Martin Marietta did not raise the issue that Mass's remedy against it was under § 503, not § 504, and that plaintiff had no private right of action under § 503.  Nevertheless, the district court disagreed with Mass that the Government furnished "financial assistance" to Martin Marietta.  It stated:

> When the government provides Medicare or Medicaid payments to a hospital, it receives no goods or services in return.  In contrast, the payments made by the government to defendant are part of a contract under which the government receives goods and services.  I conclude that *DeVargas*, not *Bowen* or *Baylor University Medical Center* [Medicare or Medicaid paymen/ cases], supplies the applicable rule.  I also note that this result is consistent with the definition of "federal financial assistance" used in federal regulations.  That definition specifically excludes procurement contracts. . . .

> I find no authority that either payment pursuant to a contract or use of government-owned property (or both together) constitute "federal financial assistance." I find this evidence wholly insufficient to support the conclusion that the government intended to subsidize defendant. No reasonable jury could conclude that defendant receives financial assistance.

*Id.* (citations omitted). In *DeVargas*, the Tenth Circuit declared, "[A]n entity receives financial assistance when it receives a subsidy." *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 911 F.2d 1377, 1382 (10th Cir. 1990). The Tenth Circuit held that a private corporation which had won a contract to provide security inspectors to a Department of Energy Research Laboratory did not receive "financial assistance," because the Government did not intend to give a "subsidy, as opposed to [an] intent to provide compensation." *Id.* The court found that "the [Government's] purchase from [defendant] of nonpersonal services is a procurement contract outside the reach of the Rehabilitation Act." *Id.* at 1383.

It is evident in the case at bar that the Government's provision of facilities, materials, supplies, etc. to AFS is <u>not</u> "financial assistance" to AFS. Rather, it is a requirement imposed by the Government for the Government's benefit in its Request for Proposals to prospective bidders. This provision insures that the successful bidder, in this case AFS, will provide its services in a timely and efficient manner, and at the least cost to the Government. As in *DeVargas*, this is a "purchase [by the Government] of nonpersonal services [that] is a procurement contract outside the reach of the

24

Rehabilitation Act." *Id.*  The Eleventh Circuit has "explicitly accepted" the "procurement

contract exception" to the definition of "Federal financial assistance" that is contained in

the regulations of the federal agencies.  *Jones,* 3 A.D. Cas. (BNA) at 1731, *citing Arline*

*v. School Bd. of Nassau County,* 772 F.2d 759, 762 (11th Cir. 1985).  No reasonable jury

could conclude that AFS receives "financial assistance" from the Government pursuant to

this Contract.  Accordingly, even if the Court considers Plaintiff's claim as properly

asserted under § 504 of the Rehabilitation Act, AFS is due summary judgment on Count

One of Plaintiff's Complaint.


**D.    The Court Should Decline to Exercise Jurisdiction Over Plaintiff's State Law
        Claim.**

Plaintiff's only remaining claim against AFS is a state-law claim for alleged fraud

or deceit.  (Complaint (Doc. 1), ¶¶ 26-32).  Plaintiff seeks to invoke the Court's

supplemental jurisdiction under § 1367(a).  (28 U.S.C. § 1367(a)).  However, "where the

district court has dismissed all claims over which it has original jurisdiction," the court

may decline to exercise supplemental jurisdiction.  (*Id.,* § 1367(c)(3)).  "Where

§ 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity

may influence the court's discretion to exercise supplemental jurisdiction. . . .  State

courts, not federal courts, should be the final arbiters of state law."   *Baggett v. First*

*Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir. 1997).

This Court has recently followed the Eleventh Circuit's directive in *Baggett* that state courts should decide state law questions. *See Dunlap v. BellSouth Telecommunications, Inc.,* 431 F. Supp. 2d 1210, 1218-19 (M.D. Ala. 2006). Since Plaintiff's jurisdiction-conferring claim is being dismissed prior to trial, the considerations underlying the supplemental jurisdiction doctrine --- judicial economy, convenience, fairness and comity --- compel this Court to dismiss Plaintiff's state law claim in order for it to be decided, if at all, by an appropriate state court. *Baggett, supra* at 1353.

Alternatively, the Court should enter summary judgment for AFS on Plaintiff's "fraud/deceit" claim. Plaintiff testified that she was told by Penny Westrick, AFS's Benefits Coordinator, at some unspecified date after mid-June 2006 that she "could not claim" unemployment compensation benefits because she "was still part of the company and could be called back." (DeFrank Dep. (Exh. B), 209:8 - 211:14). Assuming Plaintiff's testimony to be true, as the Court must when evaluating AFS's motion for summary judgment, Plaintiff's claim of "fraud/deceit" fails for at least three reasons. First, Ms. Westrick's alleged statement was obviously a mere opinion or prediction regarding future events, not a definitive statement of "existing fact" actionable under Alabama's fraud statute. *E.g., Crowne Investments, Inc. v. Bryant,* 638 So. 2d 873, 877 (Ala. 1994) (insurance agent's statement to insured that the insurance was "guaranteed issue" was, in the context in which made, a statement of opinion as to what he "thought," not a statement of "existing fact"); *The McCutchen Co., Inc. v. Media General, Inc.,* ____

So. 2d ____, 2008 WL 204449 (Ala. 2008) (statement by television advertising seller's sales manager that buyer could expect to obtain at least fifty new customers per month as a result of the advertising campaign was not a misrepresentation of a material fact, but a statement of opinion or a prediction of future events made without intent to deceive and, therefore, not fraudulent).

Second, under Alabama's "reasonable reliance" standard for cases filed after March 14, 1997, a plaintiff cannot recover for fraud "if a reasonably prudent person who exercised ordinary care would have discovered the true facts." *Foremost Ins. Co. v. Parham,* 693 So. 2d 409 (Ala. 1997). *E.g., Allstate Ins. Co. v. Eskridge,* 823 So. 2d 1254 (Ala. 2001) (employee could not have reasonably relied on manager's statement that employee could "just come back to work" to mean that employee was authorized to take a sick leave of an indefinite and perhaps lengthy period, then return to work without any limitation on the time he was away from work and without regard to the condition of his health when he returned.) In the case at bar, Plaintiff had applied for unemployment compensation on at least three previous occasions. (DeFrank Dep. (Exh. B), 211:18 - 214:22). She had received unemployment compensation benefits on at least two of those occasions. She admitted that she did not contact the Alabama Employment Service to apply for unemployment compensation benefits or even inquire about her eligibility for such benefits at any time after mid-June 2006. (*Id.,* 209:13-18; 211:8-10). Even if one assumes that Plaintiff would have been eligible for unemployment compensation benefits had she applied, Plaintiff did not act as a "reasonably prudent person exercising ordinary

care" when she failed to apply, or even inquire, about such benefits to the Alabama Employment Service.

Third, Plaintiff can not show that she would have been granted unemployment compensation benefits had she applied. When Plaintiff sought to return to work in mid-June 2006, she brought with her a doctor's return-to-work slip limiting her physical movements for three months, which AFS was unable to accommodate. After her three months temporary restriction had expired, Plaintiff never returned to AFS to work. In other words, she arguably voluntarily quit her work or failed to make herself available to work, either of which would preclude her from receiving unemployment compensation benefits. ALA. CODE § 25-4-78(2) & (5). Further, Plaintiff could not recall when she allegedly inquired of Ms. Westrick about unemployment compensation benefits, other than that it was sometime prior to August 24, 2007. Thus, Plaintiff can not establish that, at the time she allegedly inquired of Ms. Westrick, the Alabama Employment Service would have granted her benefits, had she applied.

## CONCLUSION

Accordingly, for the reasons stated above, judgment should be entered for the Defendant, Army Fleet Support, LLC, as to Count One of Plaintiff's Complaint and Count Two should be dismissed without prejudice or, in the alternative, summary judgment should be entered in favor of Defendant as to that count, as well.

Respectfully submitted,

ARMBRECHT JACKSON LLP
Post Office Box 290
Mobile, Alabama 36601
Phone:        (251) 405-1302
Facsimile:    (251)  432-6843


By____/s/ Kirk C. Shaw (SHAW0466)_____

Attorney for Army Fleet Support LLC


## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Jimmy Jacobs, LLC
4137 Carmichael Road, Suite 100
Montgomery, AL  36106


/s/ Kirk C. Shaw (SHAWK0466)_____