IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAULA F. DeFRANK,                        §

     Plaintiff,                         §

v.                                       §    CASE NO. 1:07cv775-WKW

ARMY FLEET SUPPORT, LLC,                 §

     Defendant.                         §

## DEFENDANT'S MOTION TO SUPPLEMENT ITS EVIDENTIARY SUBMISSION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Army Fleet Support, LLC ("AFS") moves the Court for an Order allowing it to supplement its Evidentiary Submission in Support of Motion For Summary Judgment (Doc. 22-2) and shows unto the Court as follows:

1.     In responding to AFS's motion for summary judgment, Plaintiff Paula DeFrank ("Plaintiff") filed excerpts from her deposition in the case at bar and excerpts from the deposition of AFS manager John L. Hamlin in an earlier case, *Christine Bennett v. Army Fleet Support, LLC,* 1:06-cv-723-MHT, U.S. District Court for the Middle District of Alabama, among other exhibits.

2.     Plaintiff filed only selected pages from the above depositions, not the complete transcripts or all pages of testimony relating to a particular issue.

3.     In order for the Court to have before it the entire testimony of these individuals regarding the issues raised by Plaintiff in her response, AFS submits that a limited number of additional pages from each deposition transcript is needed.

4..     Further, AFS submits the Supplemental Affidavit of John L. Hamlin for the purpose of adding (i) Section C.9 of Attachment 1 (Continuation Sheet) of the Performance Work Statement that was attached to Mr. Hamlin's initial Affidavit and (ii) Federal Acquisition Regulations 31.205-44 and 31.205-46 to the record. This Supplemental Affidavit is submitted in response to Plaintiff's claim that the Government's reimbursement of AFS's costs for "lean management" training is "outside" AFS's contract with the Government and constitutes "federal financial assistance."

5.     Section C.9 of Attachment 1 (Continuation Sheet) of the Performance Work Statement was produced to Plaintiff during discovery. Federal Acquisition Regulations were referenced during discovery and were a matter of public record, available on-line to Plaintiff.

WHEREFORE, AFS moves the Court for leave to supplement its Evidentiary Submission by adding the following exhibits:

| Exhibit No. | Description |
|---|---|
| F | Pages 39, 54, 56, 121 and 122 from John L. Hamlin's deposition in *Bennet v. AFSt* |
| G | Page 176, 177 and 179 from Plaintiff Paula DeFrank's deposition herein |
| H | Supplemental Affidavit of John L. Hamlin |

ARMBRECHT JACKSON LLP
Post Office Box 290
Mobile, Alabama 36601
Phone:        (251) 405-1302
Facsimile:   (251) 432-6843


By___/s/ Kirk C. Shaw (SHAW0466)_____

Attorney for Army Fleet Support LLC


## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Jimmy Jacobs, LLC
4137 Carmichael Road, Suite 100
Montgomery, AL  36106


/s/ Kirk C. Shaw (SHAWK0466)_____

# EXHIBIT F

**FREEDOM COURT REPORTING**

Page 1

1                IN THE UNITED STATES DISTRICT COURT

2             FOR THE MIDDLE DISTRICT OF ALABAMA

3                        SOUTHERN DIVISION

4

5    CHRISTINE BENNETT,              )

6              Plaintiff,            )        **COPY**

7    vs.                            )    CASE NUMBER:

8    ARMY FLEET SUPPORT,            )    1:06-CV-723-MHT

9    LLC,                           )

10             Defendant.            )

11

12          DEPOSITION OF JOHN LEROY HAMLIN

13          In accordance with Rule 5(d) of

14   The Alabama Rules of Civil Procedure, as

15   Amended, effective May 15, 1988, I, Cindy

16   Weldon, am hereby delivering to Ethan

17   Dettling, the original transcript of the

18   oral testimony taken on the 21st day of

19   June, 2007, along with exhibits.

20          Please be advised that this is the

21   same and not retained by the Court Reporter,

22   nor filed with the Court.

23

**FREEDOM COURT REPORTING**

Page 39

1  bidders as a result of the Government

2  furnished equipment?

3      A.    Not to my knowledge.

4      Q.    Is there any ability or provision

5  for a bid on this contract without the

6  Government furnished equipment?

7      A.    The AFS is prohibited from using

8  the facilities or equipment on this contract

9  to support other contracts without the

10  permission from the contracting officer.

11      Q.    We talked earlier briefly about

12  costs that are not reimbursable?

13      A.    Yes.

14      Q.    And among those, I think that you

15  mentioned property owned by AFS?

16      A.    Yes.

17      Q.    Okay.  Explain what that means.

18      A.    AFS owns a few pieces of

19  furniture, several computers, a printer, a

20  copy machine that we will use for --

21  primarily for functions that are not related

22  to this contract such as a new business

23  opportunity.  That has to be totally fire

Page 54

1    manager because the skill is perishable.

2        Q.    Does the skill -- It's a skill

3    that remains so long as you're working with

4    a company that's implementing the lean?

5        A.    Yes.

6        Q.    And AFS is doing that?

7        A.    Yes.

8        Q.    And this was a new program

9    introduced; correct?

10       A.    It was part of the proposal, that

11   we would introduce lean thinking.  And it

12   has been directed by the Government to

13   implement lean.

14       Q.    But you had not received any lean

15   training prior to this contract, had you?

16       A.    I did.

17       Q.    You did?

18       A.    Yes.

19       Q.    Describe that.

20       A.    That was with Dell Computer

21   Corporation in Austin, Texas.  It was also

22   forty hours of instruction for one week.

23       Q.    Was that during the period when

## FREEDOM COURT REPORTING

Page 56

1    programs that primarily deal with supply and

2    management that are Army programs.

3        Q.    Army software?

4        A.    Way beyond software.  It's a

5    system.  It's new programs.  It includes

6    hardware, software use of the program.

7        Q.    This training provided regarding

8    any new -- I don't know what you call it --

9    new tools required to work on new equipment?

10        A.    There are, particularly in the

11    environmental arena.  There are equipment

12    that are -- specialized equipment that has

13    to have training on, or specifically in the

14    shops arena, something like a laser, laser

15    cleaner or a -- something to do with lasers

16    in the repair process.

17        Q.    You said environmental arena?

18        A.    Yes, sir.

19        Q.    I'm not sure I understand.

20        A.    For example, environmental health

21    and safety in terms of test equipment that's

22    testing for asbestos or contaminants in the

23    air such as gamium (spelled phonetically) or

# FREEDOM COURT REPORTING

Page 121

1      A.    We have a system where we have a

2   purchase request that is processed to the

3   Government for their approval.   There is a

4   provision that if it's less than a certain

5   dollar amount, they can use a credit card

6   for a local purchase.

7           But then that is subject to be

8   audited by the proper administrator or the

9   DC auditor.   And if it's found that it was

10  not reimbursable, then AFS is liable to

11  reimburse the Government for that cost.

12     Q.    You were asked many questions

13  about the lean training.   Is the training

14  that you and others at AFS receive in

15  connection with lean a benefit to the

16  Government?

17     A.    Yes, sir.   The training I went to

18  in Knoxville, Tennessee was at the request

19  of the deputy to the commander at the

20  Aviation Center, Mr. Robert Hill, who set up

21  that program at the University of

22  Tennessee.

23           And it has been a joint effort

## FREEDOM COURT REPORTING

Page 122

1   with the Government and AFS.  Typically, if

2   we send ten people, half are AFS employees

3   and half are Government employees.

4        Q.   But the training that you or the

5   AFS people attending that course, does it

6   benefit not only AFS, but the Government as

7   well?

8        A.   Yes, sir.

9        Q.   How is that?

10       A.   In terms of -- The Government

11  provides oversight for this contract in

12  terms of them ensuring that AFS is becoming

13  more efficient, realizing more cost savings,

14  increasing productivity.

15           The same thing -- The same type of

16  techniques, procedures you'll learn at that

17  course as an AFS employee, the Government

18  learns and then therefore, they can better

19  manage this contract and have a better

20  oversight of the contract.

21       Q.   If and when the contract between

22  the Government and AFS ends, what, if

23  anything, will AFS take of the facilities,

# EXHIBIT G

1

IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF ALABAMA

SOUTHERN DIVISION

PAULA F. DeFRANK,              )

      Plaintiff,              )

vs.                           )    CASE NO.:

ARMY FLEET SUPPORT, LLC,       )    1:07cv775-WKW

      Defendant.              )

The deposition of PAULA DeFRANK taken pursuant to the Alabama Rules of Civil Procedure before Tina L. Harrison, Court Reporter and Notary Public, State at Large, at Court Reporting Associates, Inc., 256 Honeysuckle Road, Suite 23, Dothan, Alabama, on the 27th day of March, 2008, commencing at approximately 9:00 a.m.



1    me, I had to go back on the helicopter the next day

2    and --

3        Q.    Sure.  But that doesn't mean that you

4    couldn't have somebody help you lift things if you

5    needed to or, if you couldn't bend, get somebody

6    else to do that, whatever it required bending for.

7        A.    Well, I said they will not -- would not

8    accommodate my restrictions or send anyone to help

9    me.  They wanted me to do the same job as the

10   person if they had no restrictions.

11       Q.    Now, Tony Wasco did not tell you that,

12   did he?

13       A.    Yes.  And then C. T. -- he also told

14   C. T. too.  And C. T. came out of the office, and

15   he told me -- and I told him -- I said, Yes.  I

16   said, I know that, but they're not willing even to

17   accommodate or even to show me any signs that

18   they're willing to work with me with my

19   restrictions to do the job.

20       Q.    You're talking about C. T. Dean?  You're

21   talking about what you said to C. T. Dean?

22       A.    Right.  Yes.

23       Q.    Okay.  Let me go back now.  When Tony

1    Wasco told you to go work on the helicopters, he
2    did not tell you that there wouldn't -- somebody
3    couldn't help you lift or somebody couldn't do
4    something that required bending if you could not do
5    it, did he?
6         A.    He said I had to go back -- I had to go
7    back to working on the aircraft tomorrow and I had
8    to do the jobs just as well as someone else.
9         Q.    Okay.  But that doesn't mean you can't
10   be accommodated if there's some particular task
11   that you're not able to do, did it?
12        A.    Right.
13        Q.    Now, you left work before the end of
14   your shift that day, did you not?
15        A.    Yes.
16        Q.    And you never came back?
17        A.    That's correct.
18        Q.    I mean, you've told me earlier that you
19   felt that you were capable of working on the
20   helicopters in January when you first came back to
21   work, and then again at the end of February you
22   felt like you were capable of working on the
23   helicopters.  Well, what had changed such that here

1    A.    Yes.  With the accommodations and with

2  the restrictions.

3    Q.    Okay.  Well, why didn't you go ahead and

4  go to work the next day on the helicopters?

5    A.    Because I had restrictions and they

6  didn't tell me that they were going to accommodate

7  me or help me with my restrictions.  He -- Tony

8  Wasco expected me to do the exact same jobs in the

9  same manner that everyone else was --

10    Q.    He did not say that, did he,

11  Ms. DeFrank?  He did not say that, did he?

12    A.    I don't remember.

13    Q.    And he didn't deny you any

14  accommodation.  He didn't say, No, we're not going

15  to have anybody help you lift something, or, We're

16  not going to have anybody do a job that requires

17  bending that you can't do, did he?

18    A.    No.

19    Q.    So you didn't come back the next day to

20  find out what accommodation you might be given

21  working on the helicopters?

22    A.    No.

23    Q.    You went to Dr. Mancuso?

# EXHIBIT H

STATE OF ALABAMA

COUNTY OF DALE

### SUPPLEMENTAL AFFIDAVIT OF JOHN L. HAMLIN

John L. Hamlin, after being first duly sworn, deposes and says as follows:

1.    My name is John L. Hamlin. I am over the age of majority and competent to testify to the matters stated herein. This Affidavit is based on my personal knowledge.

2.    I am General Manager of Army Fleet Support, LLC ("AFS"). Prior to September 17, 2007, I was Director, Business and Contracts, for AFS. I held that position beginning in December 2005 and until I became General Manager.

3.    The Performance Work Statement in the Government's Request for Proposals for the Fort Rucker contract contains the requirement that "[t]he Contractor shall implement improvement initiatives and streamlining techniques utilizing tools, such as "lean thinking", ...." *(Section C.9.22 of Attachment 1* (Continuation Sheet) of the Performance Work Statement, p. 5 to this Affidavit). "Lean thinking" is another term for "lean management," which I referred to in my deposition testimony in *Bennett v. AFS,* 1:06 CV-723-MHT, U.S. District Court for the Middle District of Alabama.

4.    The costs, including travel costs, to AFS associated with its employees receiving lean management training are allowable under the Government's contract and Federal Acquisition Regulations ("FAR") 31.205-44 and 31.205-46 (copies attached). It is not a subsidy by the Government to AFS. The procedure is for AFS to submit requisitions for its costs to the Government, which approves same and reimburses AFS for these costs.

Further, Affiant saith not.

_Jodan L. Hamlin_
JOHN L. HAMLIN

Sworn to and subscribed to
before me on this the 23rd
day of June, 2008.

_Chester R. Alexander_
NOTARY PUBLIC

[Affix Notarial Seal]

My Commission Expires:

_June 2, 2010_

2

| ATTACHMENT 1 CONTINUATION SHEET SECTION C.9 | Reference No. of Document Being Continued PIIN/SIINN DAAH23-03-R-0211    MOD/AMD | Page i |
|---|---|---|
| | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GENERAL PROVISIONS | SECTION C.9 21 March 2003 |
| Name of Offeror or Contractor: | | |

**C.9    GENERAL PROVISIONS** ....................................................................1

   **C.9.1    Reports and Records** ....................................................................1

   **C.9.2    Aircraft Inventory, Status, and Flying Time Reports** ..........1

   **C.9.3    Records Retention** ........................................................................1
   C.9.3.1    Weight and Balance Records....................................................1
   C.9.3.2    Aircraft Records Management..................................................1

   **C.9.4    Army Aviator's Flight Record (DA Forms 2408-12)**.........1

   **C.9.5    Warranties**......................................................................................1

   **C.9.6    Classified Material and Equipment** ........................................1

   **C.9.7    Aviation Life Support Equipment (ALSE) Regulatory Compliance** .........1
   C.9.7.1    ALSE Equipment .........................................................................1

   **C.9.8    Quality System** ..............................................................................2
   C.9.8.1    Quality Assurance.........................................................................2
   C.9.8.2    Other Quality Inspections ..........................................................2

   **C.9.9    Inspection and Acceptance for Purpose of Availability of Aircraft** ........2

   **C.9.10    Property Control System** .........................................................2

   **C.9.11    Financial Accountability** ..........................................................2

   **C.9.12    Property Administrator (PA)/Property Book Officer (PBO)** .........2
   C.9.12.1    Exclusions.....................................................................................3
   C.9.12.3.    Changes to Attachments 9 and 9aA (Equipment)..............3
   C.9.12.4    Approval of Disposal Actions...................................................3
   C.9.12.5    Final Approval of Accountability Adjustments.....................3
   C.9.12.6    Approval of Local Purchase Requests.....................................3
   C.9.12.7    Certify Receipt and Acceptance of Supplies ........................3

   **C.9.13    Production Control**......................................................................3
   C.9.13.1    Central Production Control........................................................3
   C.9.13.2    Airfield Production Control.......................................................3

   **C.9.14    Contractor Flight Operations**..................................................3
   C.9.14.1    Safety Program .............................................................................3

   **C.9.15    Security** ...........................................................................................4
   C.9.15.1    Safeguarding Classified Information and Equipment............4

   **C.9.16    Access to Facilities** .....................................................................4

   **C.9.17    Support of Contingency Requirements**...................................4

   **C.9.18    Training Programs** .......................................................................4

   **C.9.19    Training Requirements** ...............................................................4

   **C.9.20    Utilities Conservation** .................................................................4

   **C.9.21    Environmental Compliance** .......................................................5

   **C.9.22    Improvement and Streamlining** ..............................................5

   **C.9.23    Contingency Support**...................................................................5

| ATTACHMENT I CONTINUATION SHEET | Reference No. of Document Being Continued | Page 1 |
|---|---|---|
| SECTION C.9 | PIIN/SINN DAAH23-03-R-0211    MOD/AMD | SECTION C.9 |
| | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GENERAL PROVISIONS | 21 March 2003 |

## C.9    GENERAL PROVISIONS

### C.9.1    Reports and Records

The Contractor shall maintain and update all records used for controlling the operation and maintenance of all Army materiel IAW The Army Maintenance Management System - AVIATION (TAMMS-A) prescribed in Department of Army (DA) Pamphlet 738-751, in current edition Maintenance Management Update, DA pamphlets, and Army regulations. All forms and records shall be maintained per applicable technical manuals and as required The Contractor is required to submit a report IAW DI-ALSS-81530 when manufacturing and/or purchasing material that required serialization. If Aviation Center Logistics Command (ACLC) directs the Contractor to deviate from the above, a letter approving deviation will be issued from the Contracting Officer (KO) or Contracting Officer Representative (COR) coordinated with US Army Aviation and Missile Command (AMCOM), AMSAM-MMC-MA. Electronic submission of documentation in a government-approved format is encouraged.

### C.9.2    Aircraft Inventory, Status, and Flying Time Reports

The Contractor shall prepare the Aircraft Inventory, Status, and Flying Time Report (DA Form 1352) as prescribed in Army Regulation (AR) 700-138 for all aircraft assigned to AMCOM at Fort Rucker and for tenant and satellite units IAW DI-MISC-80508. The Contractor shall also prepare armament reports as required by AR 700-138 for applicable aircraft, IAW DI-MISC-80508.

### C.9.3    Records Retention

The Contractor shall maintain sufficient files to document information contained in all reports required under this contract. The Contractor shall make all records and files applicable to this contract available for review at any time by any agency or individual authorized by the KO or COR.

### C.9.3.1    Weight and Balance Records

Weight and balance records shall be maintained in accordance with all Army Aviation Flight Regulations, AR 95-1, Technical Manual (TM) 55-1500-342-23, and FAA requirements.

### C.9.3.2    Aircraft Records Management

The Contractor shall maintain the records for all assigned aircraft in such a manner as to ensure 100 percent accuracy at all times. The Government reserves the right to conduct inspections and serial number verifications at any time and to any depth desired.

### C.9.4    Army Aviator's Flight Record (DA Forms 2408-12)

The Contractor shall forward all DA Forms 2408-12 at the airfields to Directorate of Aviation Schools (DAS).

### C.9.5    Warranties

The Contractor shall adhere to all warranty and repair provisions for all aircraft Government Furnished Equipment (GFE) and components and systems and subsystems thereof. Written authorization must be obtained from the Property Administrator (PA) prior to any deviations.

### C.9.6    Classified Material and Equipment

The Contractor shall provide security of all classified material and equipment IAW DOD Industrial Security Manual 5220.22-M.

### C.9.7    Aviation Life Support Equipment (ALSE) Regulatory Compliance

The Contractor shall ensure compliance with all applicable regulations and shall ensure that aircraft maintenance contractor personnel utilize the proper ALSE equipment and receive the appropriate operator training.

### C.9.7.1    ALSE Equipment

The Government will provide ALSE for maintenance personnel conducting flight duties.

**C.9.8    Quality System**

The Contractor shall establish and maintain a complete quality management system to assure the requirements of the contract are provided as specified. This program shall be in accordance with the provisions of the latest revision of ISOANSI/ASQ 9001-2000 Quality System or equivalent systems for quality assurance in production, installation, and servicing, and ANSI/ASQH001 Quality System Model for Environmental Management. Copies of each quality plan, with performance metrics and process for continuous improvement, shall be provided within 30 days after contract start date and as changes occur in accordance with DI-MGMT-80004. The quality plan must be government approved.

**C.9.8.1    Quality Assurance**

The Government will perform second party and third party audits on the Contractor's Quality Management System (QMS) in accordance with the Quality System Audit Plan to be presented to the Contractor prior to each audit.

**C.9.8.2    Other Quality Inspections**

All other quality inspections will be in accordance with the inspection of services clause of this contract.

**C.9.9    Inspection and Acceptance for Purpose of Availability of Aircraft**

Flight line inspection and acceptance of aircraft shall be by the pilot, copilot, instructor pilot, student pilot, crew chief, or Quality Assurance Evaluation (QAE)/Aircraft Inspector, and will determine that the aircraft meets the requirements of "Aircraft Availability" as defined in C.11.1.5. In the case of disagreement between inspector and the Contractor, if requested, an aircraft will be issued. The disagreement will be resolved at a later time as determined by the KO or CO. The Government reserves the right to inspect all aircraft issued as available whether flown or not. Aircraft rejected will not be considered as available for purposes of measuring the mission performance incentive.

**C.9.10    Property Control System**

The Contractor shall submit in accordance with Federal Acquisition Regulation (FAR) 45.5 and Defense Federal Acquisition Regulations (DFARS) 245.5, in writing, a complete property control system to the PA for approval within 60 days after the effective date of the contract. The Contractor shall use as a guide the applicable portions of the following regulations: AR 37-12, AR 37-60, AR 37-111, AR 37-120, AR 725-50, AR 735-11, AR 735-72, US Army Aviation Center (AAVNC) Regulation 37.5, USAAVNC Circular 37.1, (Technical Manual) TM 38-L03 Series, and Standard Financial System (STANFIN) User Manual. The Contract shall request prior approval for deviation, amendment, or modification to the provisions of FAR 45.5 and DFARS 245.5, or the previously approved property control system, in writing, from the KO.

**C.9.11    Financial Accountability**

The Contractor shall maintain financial accountability of all transactions on government-furnished and contractor-acquired property, to include property acquired from commercial sources such as TH-67 repair parts and equipment. The Contractor shall use as a guide the applicable portions of AR 37-1, Defense Finance and Accounting System - Indianapolis (DFAS-IN Reg. 37-1, DFAS-IN 37-100-97, DOD Financial Management Regulation 7000.14, AR 725-5, AR 735-5 (Supply Update 14), and the STANFINS Users Manual. Financial accountability on Army managed items shall be maintained using Standard Army Management Information System (STAMIS). The TH-67 financial accountability shall be maintained through reconciliation procedures approved by the Property Administrator (PA) through which all billings and payments related to TH-67 repair parts purchases, commercial repairs, local repairs, and overhauls are verified against vendor billings, receipt documentation, and 1034 Forms used to bill the Government for reimbursement for payments made to vendors. In addition, input of Demand History Add (DHA) into the Centralized Demand Database (CDDB) via Standard Army Retail Supply System-I (SARSS1) shall be verified to ensure sufficient budgeting for TH-67 repair parts by the Cost and Economic Accounting Center (CEAC).

**C.9.12    Property Administrator (PA)/Property Book Officer (PBO)**

The PA will serve as the PBO. The PA will designate a representative of Supply Surveillance Branch (SSB) ACLC to serve as the Stock Record Accountable Officer (SRAO). The Contractor shall designate, in writing, one individual for facilities and industrial property and one (1) for material to be held accountable and responsible for Government Property provided to the Contractor under the terms of the contract, except for exclusions listed as follows:

| ATTACHMENT 1<br>CONTINUATION SHEET | Reference No. of Document Being Continued<br>PIIN/SINN DAAH23-03-R-0211    MOD/AMD | Page 3 |
|---|---|---|
| SECTION C.9 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT<br>GENERAL PROVISIONS | SECTION C.9<br>21 March 2003 |

**C.9.12.1    Exclusions**

The following actions are Government-In-Nature (GIN) and will be performed by the Government. The Contractor shall perform those functions in support of these exclusions as defined by this contract.

**C.9.12.3.    Changes to Attachments 9 and 9aA (Equipment)**

With coordination and written delegation from the KO, the PBO shall approve changes to Attachments 9 and 9a modifying the types and quantities of property authorized under the contract. Changes to authorizations are considered effective upon PBO approval. The PBO shall request periodic revisions by the KO. Changes to authorizations by the PBO shall serve as authority for modification to Table of Distribution and Allowances (TDA) WOU9AA for the aircraft maintenance contract.

**C.9.12.4    Approval of Disposal Actions**

The Contractor shall obtain approval by the SRAO/PBO before actual shipment of property to the Defense Reutilization and Marketing Office (DRMO).

**C.9.12.5    Final Approval of Accountability Adjustments**

The Contractor shall forward all inventory adjustment reports (IAR) and Statements of Gains or Losses to the SRAO or PBO, as appropriate, within two (2) work days after the adjustment transactions have been processed to update on-hand balances or financial records. The contractor shall prepare reports IAW DI-MGMT-80442.

**C.9.12.6    Approval of Local Purchase Requests**

As appropriate, the PA, PBO, and SRAO will review and the KO will approve all local purchase requests.

**C.9.12.7    Certify Receipt and Acceptance of Supplies**

Certifying receipt and acceptance of supplies and equipment from contractor and vendors (local purchase). The Contractor shall provide all receipt documentation to the SRAO/PBO for items received. After the certified receipt is returned by the SRAO/PBO, the Contractor shall complete the processing of the receipt IAW time frames specified in AR 725-50.

**C.9.13    Production Control**

Complete production information shall be available to the KO or COR.

**C.9.13.1    Central Production Control**

The Contractor shall maintain a central production control to provide for the central collection, recording, collation, analysis, and reporting of statistical information; ensure monthly 1352 readiness report is accurate and submitted with-in time constraints as determined by AR 700-138; provide minutes and prepare weekly maintenance briefing packets; provide monthly Maintenance Status Report (MSR) projections for aircraft readiness; report aircraft assigned and locations as changes occur; and ensure timely transmittal of TAAMS-A data within three (3) working days of action completion. The contractor shall prepare the status reports IAW DI-MGMT-80368.

**C.9.13.2    Airfield Production Control**

The Contractor shall maintain airfield production controls to accomplish the following: manage aircraft; plan, schedule, and control all maintenance; provide for total material requirements; plan, project, issues, establish priorities, manage and preposition supplies; and provide for the collecting, recording, collating, analyzing, and reporting statistical information. The functional office will determine maintenance test pilots workload and priority.

**C.9.14    Contractor Flight Operations**

The Contractor shall prepare and maintain current, specific, written procedures, separate and distinct from industrial procedures, to cover flight operations at all operating facilities in accordance with AR 95-20.

**C.9.14.1    Safety Program**

The Contractor shall establish and maintain a comprehensive safety program in accordance with AR 385-10 for the prevention of accidents involving personnel, equipment and property. The Contractor's flight, ground, industrial, and explosive safety programs shall be in accordance with AR 95-20, AR 385 series, AR 420-90 and shall utilize the current edition of Guide to Aviation Resources Management for Aircraft Mishap Prevention, to perform semi-

| ATTACHMENT 1 CONTINUATION SHEET | Reference No. of Document Being Continued PIIN/SINN DAAH23-03-R-0211    MOD/AMD | Page 4 |
|---|---|---|
| SECTION C.9 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GENERAL PROVISIONS | SECTION C.9 21 March 2003 |

annual safety surveys. The Contractor shall prepare modifications to this guide necessary to meet local requirements to the Government Flight Representative (GFR) IAW DI-MISC-80508. The contractor shall prepare Occupational Hazard Reports IAW DI-MISC-80508.

**C.9.15    Security**

The Contractor shall prepare and submit to the KO or COR for review and approval, detailed procedures by which the Contractor shall implement a physical security program for arms, ammunition, and explosives in accordance with AR 190-11, including with supplements and physical security updates; and a security program for all non-sensitive unclassified Government property in accordance with AR 190-31, including supplements, physical security updates, and USAAVNC Regulation 190-31. The Contractor shall prepare Building Security and Police Check sheets IAW DI-MISC-80508. The Contractor shall prepare Unit Fire Marshals Inspection Reports IAW DI-MISC-80508.

**C.9.15.1    Safeguarding Classified Information and Equipment**

The Contractor shall comply with DOD 5220.22M requirements for safeguarding classified information and equipment. Classified components on OH-58D Kiowa Warrior, AH-64D Longbow and RAH-66 Comanche aircraft will either be properly stored or under the control of a cleared person.

**C.9.16    Access to Facilities**

The Contractor shall provide access to Government owned, contractor operated facilities for inspection by any agency or individual authorized access by the KO or COR.

**C.9.17    Support of Contingency Requirements**

The Contractor shall support contingency requirements as set forth in US Army Aviation Center directives upon the direction of the KO or COR.

**C.9.18    Training Programs**

The Contractor shall develop a plan for implementation of training programs to ensure the appropriate level of skilled personnel is maintained throughout contract performance IAW with DI-ILSS-80872.

**C.9.19    Training Requirements**

Prior to implementing special repair authorizations, selected personnel must be trained to perform or inspect depot level maintenance covered in special repair authorizations. This training must be task specific and documented in training folders. Personnel must be trained to perform or inspect repairs beyond Aviation Unit and Aviation Intermediate (AVUM/AVIM) repairs. This training may be more general but should cover the use of maintenance allocation charts, procedures for requesting and documenting approvals for such maintenance and inspection standards, and how to coordinate US Army Aviation and Missile Command (AMCOM) LAR and Engineer support through Materiel and Systems Management Branch (M&SMB). This training must be documented and maintained on file.

**C.9.20    Utilities Conservation**

The Contractor shall instruct employees in utilities conservation practice and shall operate under conditions, which preclude the waste of utilities. The Contractor shall comply with the US Army Aviation Center (USAAVNC), Fort Rucker, Energy Conservation Plan "Energy Conservation Now."

| ATTACHMENT I CONTINUATION SHEET | Reference No. of Document Being Continued PIIN/SINN DAAH23-03-R-0211    MOD/AMD | Page 5 |
|---|---|---|
| SECTION C.9 | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT GENERAL PROVISIONS | SECTION C.9 21 March 2003 |

**C.9.21    Environmental Compliance**
The Contractor shall comply with all federal, state, and local environmental statutes and regulations that implement the same.

**C.9.22    Improvement and Streamlining**
The Contractor shall implement improvement initiatives and streamlining techniques utilizing tools, such as "lean thinking", product value management; high performance work organizations, etc.

**C.9.23    Contingency Support**
The Contractor shall provide contingency support, as required, to ensure continuous operations. The Contractor shall participate in the development of Government plans that involve contractor's controlled resources.

# FAC 2005–06  OCTOBER 31, 2005

(1) Costs of organizing, setting up, and sponsoring the meetings, conventions, symposia, etc., including rental of meeting facilities, transportation, subsistence, and incidental costs;

(2) Costs of attendance by contractor employees, including travel costs (see 31.205-46); and

(3) Costs of attendance by individuals who are not employees of the contractor, provided—

(i) Such costs are not also reimbursed to the individual by the employing company or organization, and

(ii) The individuals attendance is essential to achieve the purpose of the conference, meeting, convention, symposium, etc.

## 31.205-44  Training and education costs.

Costs of training and education that are related to the field in which the employee is working or may reasonably be expected to work are allowable, except as follows:

(a) Overtime compensation for training and education is unallowable.

(b) The cost of salaries for attending undergraduate level classes or part-time graduate level classes during working hours is unallowable, except when unusual circumstances do not permit attendance at such classes outside of regular working hours.

(c) Costs of tuition, fees, training materials and textbooks, subsistence, salary, and any other payments in connection with full-time graduate level education are unallowable for any portion of the program that exceeds two school years or the length of the degree program, whichever is less.

(d) Grants to educational or training institutions, including the donation of facilities or other properties, scholarships, and fellowships are considered contributions and are unallowable.

(e) Training or education costs for other than bona fide employees are unallowable, except that the costs incurred for educating employee dependents (primary and secondary level studies) when the employee is working in a foreign country where suitable public education is not available may be included in overseas differential pay.

(f) Contractor contributions to college savings plans for employee dependents are unallowable.

## 31.205-45  [Reserved]

## 31.205-46  Travel costs.

(a) *Costs for transportation, lodging, meals, and incidental expenses.* (1) Costs incurred by contractor personnel on official company business are allowable, subject to the limitations contained in this subsection. Costs for transportation may be based on mileage rates, actual costs incurred, or on a combination thereof, provided the method used results in a reasonable charge. Costs for lodging, meals, and incidental expenses may be based on per diem, actual expenses, or a combination

thereof, provided the method used results in a reasonable charge.

(2) Except as provided in paragraph (a)(3) of this subsection, costs incurred for lodging, meals, and incidental expenses (as defined in the regulations cited in (a)(2)(i) through (iii) of this paragraph) shall be considered to be reasonable and allowable only to the extent that they do not exceed on a daily basis the maximum per diem rates in effect at the time of travel as set forth in the—

(i) Federal Travel Regulations, prescribed by the General Services Administration, for travel in the contiguous United States, available on a subscription basis from the—

Superintendent of Documents
U.S. Government Printing Office
Washington DC 20402

Stock No. 922-002-00000-2;

(ii) Joint Travel Regulation, Volume 2, DoD Civilian Personnel, Appendix A, prescribed by the Department of Defense, for travel in Alaska, Hawaii, and outlying areas of the United States, available on a subscription basis from the—

Superintendent of Documents
U.S. Government Printing Office
Washington DC 20402

Stock No. 908-010-00000-1; or

(iii) Standardized Regulations (Government Civilians, Foreign Areas), Section 925, "Maximum Travel Per Diem Allowances for Foreign Areas," prescribed by the Department of State, for travel in areas not covered in (a)(2)(i) and (ii) of this paragraph, available on a subscription basis from the—

Superintendent of Documents
U.S. Government Printing Office
Washington, DC 20402

Stock No. 744-008-00000-0.

(3) In special or unusual situations, actual costs in excess of the above-referenced maximum per diem rates are allowable provided that such amounts do not exceed the higher amounts authorized for Federal civilian employees as permitted in the regulations referenced in (a)(2)(i), (ii), or (iii) of this subsection. For such higher amounts to be allowable, all of the following conditions must be met:

(i) One of the conditions warranting approval of the actual expense method, as set forth in the regulations referenced in paragraphs (a)(2)(i), (ii), or (iii) of this subsection, must exist.

(ii) A written justification for use of the higher amounts must be approved by an officer of the contractor's organization or designee to ensure that the authority is properly administered and controlled to prevent abuse.

(iii) If it becomes necessary to exercise the authority to use the higher actual expense method repetitively or on a continuing basis in a particular area, the contractor must obtain advance approval from the contracting officer.

(iv) Documentation to support actual costs incurred shall be in accordance with the contractor's established practices, subject to paragraph (a)(7) of this subsection, and provided that a receipt is required for each expenditure of $75.00 or more. The approved justification required by paragraph (a)(3)(ii) and, if applicable, paragraph (a)(3)(iii) of this subsection must be retained.

(4) Paragraphs (a)(2) and (a)(3) of this subsection do not incorporate the regulations cited in subdivisions (a)(2)(i), (ii), and (iii) of this subsection in their entirety. Only the maximum per diem rates, the definitions of lodging, meals, and incidental expenses, and the regulatory coverage dealing with special or unusual situations are incorporated herein.

(5) An advance agreement (see 31.109) with respect to compliance with paragraphs (a)(2) and (a)(3) of this subsection may be useful and desirable.

(6) The maximum per diem rates referenced in paragraph (a)(2) of this subsection generally would not constitute a reasonable daily charge—

(i) When no lodging costs are incurred; and/or

(ii) On partial travel days (e.g., day of departure and return).

Appropriate downward adjustments from the maximum per diem rates would normally be required under these circumstances. While these adjustments need not be calculated in accordance with the Federal Travel Regulation or Joint Travel Regulations, they must result in a reasonable charge.

(7) Costs shall be allowable only if the following information is documented—

(i) Date and place (city, town, or other similar designation) of the expenses;

(ii) Purpose of the trip; and

(iii) Name of person on trip and that person's title or relationship to the contractor.

(b) Airfare costs in excess of the lowest customary standard, coach, or equivalent airfare offered during normal business hours are unallowable except when such accommodations require circuitous routing, require travel during unreasonable hours, excessively prolong travel, result in increased cost that would offset transportation savings, are not reasonably adequate for the physical or medical needs of the traveler, or are not reasonably available to meet mission requirements. However, in order for airfare costs in excess of the above standard airfare to be allowable, the applicable condition(s) set forth above must be documented and justified.

(c)(1) "Cost of travel by contractor-owned, -leased, or -chartered aircraft," as used in this paragraph, includes the cost of lease, charter, operation (including personnel), maintenance, depreciation, insurance, and other related costs.

(2) The costs of travel by contractor-owned, -leased, or -chartered aircraft are limited to the standard airfare described in paragraph (b) of this subsection for the flight destination unless travel by such aircraft is specifically required by contract specification, term, or condition, or a higher amount is approved by the contracting officer. A higher amount may be agreed to when one or more of the circumstances for justifying higher than standard airfare listed in paragraph (b) of this subsection are applicable, or when an advance agreement under paragraph (c)(3) of this subsection has been executed. In all cases, travel by contractor-owned, -leased, or -chartered aircraft must be fully documented and justified. For each contractor-owned, -leased, or -chartered aircraft used for any business purpose which is charged or allocated, directly or indirectly, to a Government contract, the contractor must maintain and make available manifest/logs for all flights on such company aircraft. As a minimum, the manifest/log shall indicate—

(i) Date, time, and points of departure;

(ii) Destination, date, and time of arrival;

(iii) Name of each passenger and relationship to the contractor;

(iv) Authorization for trip; and

(v) Purpose of trip.

(3) Where an advance agreement is proposed (see 31.109), consideration may be given to the following:

(i) Whether scheduled commercial airlines or other suitable, less costly, travel facilities are available at reasonable times, with reasonable frequency, and serve the required destinations conveniently.

(ii) Whether increased flexibility in scheduling results in time savings and more effective use of personnel that would outweigh additional travel costs.

(d) Costs of contractor-owned or -leased automobiles, as used in this paragraph, include the costs of lease, operation (including personnel), maintenance, depreciation, insurance, etc. These costs are allowable, if reasonable, to the extent that the automobiles are used for company business. That portion of the cost of company-furnished automobiles that relates to personal use by employees (including transportation to and from work) is compensation for personal services and is unallowable as stated in 31.205-6(m)(2).

**31.205-47 Costs related to legal and other proceedings.**

(a) *Definitions.* As used in this subpart—

"Costs" include, but are not limited to, administrative and clerical expenses; the costs of legal services, whether performed by in-house or private counsel; the costs of the services of accountants, consultants, or others retained by the contractor to assist it; costs of employees, officers, and directors; and any similar costs incurred before, during, and after commencement of a judicial or administrative proceeding which bears a direct relationship to the proceeding.