IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAULA F. DeFRANK, | § |
| Plaintiff, | § |
| v. | §   CASE NO. 1:07cv775-WKW |
| ARMY FLEET SUPPORT, LLC, | § |
| Defendant. | § |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

KIRK C. SHAW
ARMBRECHT JACKSON LLP
POST OFFICE BOX 290
MOBILE, ALABAMA 36601
(251) 405-1300 - TELEPHONE
(251) 432-6843 - FACSIMILE

# TABLE OF CONTENTS

I. INTRODUCTION .................................................. 1

II. DEFENDANT'S IDENTIFICATION OF DISPUTED FACTS IN PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION ............. 2

III. ARGUMENT ..................................................... 5

PLAINTIFF HAS NOT MET HER BURDEN OF PROVING THAT AFS RECEIVES "FEDERAL FINANCIAL ASSISTANCE" FOR PURPOSES OF § 504 OF THE REHABILITATION ACT.

    A. The Seminars and Telephonic Responses Provided by the EEOC to AFS Do Not Amount to "Federal Financial Assistance" ............ 7

    B. The Use of The Physical Fitness Center and Soldier Center By Eligible AFS's Employees Does Not Make AFS the Recipient of "Federal Financial Assistance." ...................................... 8

    C. The Training Afforded AFS's Employees Under Its Contract With The Government Does Not Constitute "Federal Financial Assistance" For Purposes of § 504. .................................................. 10

    D. AFS's Mandated Use of Government-Owned Real and Personal Property at Fort Rucker Is Not "Federal Financial Assistance" For Purposes of § 504. .................................................. 12

CONCLUSION ........................................................ 15

CERTIFICATE OF SERVICE .......................................... 16

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAULA F. DeFRANK, | § |
| Plaintiff, | § |
| v. | § CASE NO. 1:07cv775-WKW |
| ARMY FLEET SUPPORT, LLC, | § |
| Defendant. | § |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.
INTRODUCTION

In Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response"), she admits that Defendant Army Fleet Support, LLC ("AFS") is a federal contractor. (Plf.'s Brief, p. 2, ¶¶ 1& 2; p. 10). She does not dispute that AFS's contract with the U.S. Army Aviation & Missile Command ("the Government") is a "procurement contract." (*Id.*, p. 10). She does not dispute that, because AFS is a federal contractor, she could have filed her claim of alleged disability discrimination against AFS with the OFCCP pursuant to §503 of the Rehabilitation Act for it to investigate and take appropriate action, if any. Plaintiff does not represent that she pursued her remedies under §503. Plaintiff also does not contend that she pursued her rights under the

Americans with Disabilities Act ("ADA") by timely filing a claim of disability discrimination under that Act with the EEOC.

The thrust of Plaintiff's argument is that AFS receives "federal financial assistance" in the performance of its contract with the Government and that such "assistance" subjects AFS to private causes of action under § 504 of the Rehabilitation Act, irrespective of her rights under § 503 and the ADA. Plaintiff argues that AFS receives federal financial assistance in the form of "services provided by federal personnel including technical assistance, counseling, training, and provision of statistical or expert information, as well as through its use of real and personal property provided by the federal government." (Plf.'s Brief, p. 11).

AFS denies that the above items constitute "federal financial assistance" under §504 so as to permit Plaintiff a private cause of action against AFS in addition to the remedies under §503 and the ADA that she did not pursue. For the reasons stated below and in AFS's initial brief, AFS's motion for summary judgment is due to be granted.

## II.
## DEFENDANT'S IDENTIFICATION OF DISPUTED FACTS
## IN PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION

AFS disputes the following statements that Plaintiff alleges in her Response are "Undisputed Facts":

1. "As a term of its contract with the Department of Defense ("DoD") AFS agreed to subject itself to DoD's regulations.... The DoD's regulations include provisions implementing Section 504 of the Rehabilitation Act." (Plf.'s Brief, p. 2, ¶ 3).

**Defendant disputes this statement to the extent that Plaintiff implies that AFS has agreed that it is subject to § 504 of the Rehabilitation Act.**

2. "... AFS employees are permitted to participate in health and wellness activities [at the U. S. Army's "Soldier Center"] along with military personnel.... AFS received the benefits of the Army's health and wellness programs offered through its Soldier Center free of charge." (*Id.* p. 3, ¶ 6).

**AFS disputes that its employees other than those "that have a military connection," e.g. retired military personnel or reservists, are permitted to use the "Soldier Center" at Fort Rucker. The Health and Wellness Office in the Soldier Center is invited to participate in AFS's "health and wellness" *days* to make AFS's employees with a military connection aware of the services the Soldier Center provides to them. (Whelan Dep. in *Bennett v. AFS* (Plf.'s Exh. D), 34:12 - 36:18).**

3. "AFS is also loaned, at no cost, government furnished equipment and property ("GFE" and "GFP") to utilize in its contract with the DoD...." (Plf.'s Brief, p. 5, ¶ 15).

**AFS disputes Plaintiff's characterization that the Government "loans" it equipment and property. The contract between the Government and AFS *requires* AFS to use the Government's property and equipment. This is not a loan. (Hamlin Aff. (Def.'s Exh. A), ¶ 7 and attachment, p. 2, ¶ C.1, and pp. 5-6, ¶¶ C.10.1, C.10.1.1, C.10.1.2, C.10.3, C.10.8, C.10.9 & C.10.10).**

3

    4.    Plaintiff's paragraphs 18-24, pp. 6-8.

**AFS denies that these paragraphs are material to the issue before the Court in Defendant's Motion for Summary Judgment. Should the Court disagree with Defendant's position regarding these paragraphs, Defendant expressly denies the following assertions by Plaintiff in the paragraphs indicated on the grounds that such claims are not supported by the record:**

    a.    "DeFrank . . . continued to work in parts-return until her accommodations were withdrawn on April 4, 2006." (Plf.'s Brief, p. 6, ¶ 18).

**AFS disputes Plaintiff's characterization of supervision's instruction to Plaintiff on or about April 4, 2006, that she was to return to work on helicopters, as a "withdrawal of her accommodations." The record does not support a claim that Plaintiff would not have been accommodated for her medical restrictions while working on helicopters had she returned to work on April 5, which she did not. (DeFrank Dep. (Def.'s Exh. G), pp. 176:23 - 177:12; 179:3-22).** [1]

    b.    DeFrank was denied accommodation by Hanchey Field Assistant Manager, Ronald Farrington, and Manager, Lowell Green, on December 22, 2005. . . . (Plf's Brief, p. 7, ¶ 20).

    c.    On April 4, 2006, DeFrank's supervisor arbitrarily withdrew the accommodation granted her by Green. . . . DeFrank's supervisor . . . failed to engage in any interactive process with her regarding her restrictions and informed her that her physical limitations did not matter." (*Id.*, ¶ 21).

---

[1] AFS has moved, simultaneously with this Reply, to supplement its Evidentiary Submission to include, inter alia, additional pages from the deposition of Ms. DeFrank herein and the deposition of John L. Hamlin in Bennett v. AFS, 1:06-CV-723 – MHT, U. S. District Court for the Middle District of Alabama, in order for the Court to have the complete testimony of those individuals on the issues in question.

4

    d.    "AFS again failed to engage in any interactive process with DeFrank and denied her accommodation for her physical limitations." (*Id.*, ¶ 22).

    e.    DeFrank's physical restrictions substantially limit her from access to 65.29% of the jobs available in the labor market in the State of Alabama that require education, training and prior experience similar to hers. (*Id.*, p. 8, ¶ 23).

    f.    AFS notified DeFrank on October 19, 2006 that her employment had been terminated as of October 12, 2006. . . . DeFrank sought assistance from AFS's human resource department regarding application for unemployment compensation, but was informed that she could [not] receive unemployment because she was still an "employee" of AFS. (*Id.*, ¶ 24).

## III.
## ARGUMENT

**PLAINTIFF HAS NOT MET HER BURDEN OF PROVING THAT AFS RECEIVES "FEDERAL FINANCIAL ASSISTANCE" FOR PURPOSES OF § 504 OF THE REHABILITATION ACT.**

The burden is on Plaintiff to prove, among other things, that payments or compensation received by AFS from the federal government amounted to "federal financial assistance" under §504. *See, e.g., Mass v. Martin Marietta Corp.*, 805 F. Supp. 1530 (D. Colo. 1992) (summary judgment granted defendant where no jury could

reasonably find, based on plaintiff's evidence, that payments made to the defendant under government procurement contracts constituted federal financial assistance).

The Eleventh Circuit has held that the test of whether a payment from the Government constitutes "federal financial assistance" depends upon whether the Government intended to give the recipient a "subsidy." In *Shotz v. American Airlines, Inc.*, 420 F.3d 1332 (11th Cir. 2005), the Eleventh Circuit stated:

> The Rehabilitation Act does not define "federal financial assistance." Courts, however, have defined the term as used in the Rehabilitation Act to mean the federal government's provision of a subsidy to an entity. *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990) (finding that a defendant receives "federal financial assistance" within meaning of Rehabilitation Act when it receives a subsidy) (citing *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1208-09 (9th Cir. 1984)); *see also Bachman v. Am. Soc.'y of Clinical Pathologists*, 577 F. Supp. 1257, 1264 (D.N.J. 1983) ("The term 'assistance' connotes a transfer of government funds by way of subsidy."). Generally, "to determine the applicability of [the Rehabilitation Act], [a court] must determine whether the government intended to give [the defendant] a subsidy," as opposed to compensation. *DeVargas*, 911 F.2d as 1382; *accord Delmonte v. Dep't of Bus. And Prof'l Regulation*, 877 F. Supp. 1563, 1565 (S.D. Fla. 1995).

*(Id.,* at 1335) (held that funds and benefits provided to the airline industry by Congress after the terrorist attacks of September 11, 2001, did not constitute "federal financial assistance"). In the present case, no reasonable jury could find that the items cited by Plaintiff were intended by the Government to be a "subsidy" to AFS.

6

A.  **The Seminars and Telephonic Responses Provided By The EEOC to AFS Do Not Amount to "Federal Financial Assistance."**

Plaintiff first argues that seminars presented by EEOC representatives to AFS's employees and the EEOC's responses to phone requests for assistance from AFS constitute "federal financial assistance" to AFS. (Plf.'s Brief, p. 11). However, Plaintiff admits that "*[s]uch training and assistance . . . is of the kind and type that is sought and received by business entities that do not have federal procurement contracts.*" (*Id.*) (emphasis added). Indeed, the seminars provided by the EEOC to AFS personnel are a "free service they provide to everyone," according to Darlene Whelan, AFS's Director of Employee Readiness. (Whelan Dep. (Plf.'s Exh. D), 54:5-6). Likewise, the court can take judicial notice of the fact that phone inquiries to the EEOC are something that *any* individual or employer can make.

If Plaintiff's argument that the EEOC's seminars and responses amount to "federal financial assistance" is accepted, then *every* employer who *ever* called the EEOC with a question or requested an EEOC representative to educate its employees on the anti-discrimination laws would be subject to § 504. Obviously, that would stretch the definition of "federal financial assistance" way too far. Cf. *U.S. Dept. of Transportation v. Paralyzed Veterans of America,* 477 U.S. 597, 608, 106 S.Ct. 2705, 91 L.Ed 2d 494 (1986) where the Court found that allowing the reach of § 504 to extend to beneficiaries

7

of federal financial assistance would cause "[t]he statutory 'limitation' on § 504's coverage [to] virtually disappear, a result Congress surely did not intend." *Id.* at 609.

There is no evidence that Congress intended, by authorizing the EEOC to provide seminars and counseling to the public, to require every employer who availed themselves of such opportunities to be subject to §504 of the Rehabilitation Act and private rights of action thereunder. Accordingly, these free services of the EEOC available to any employer should not be adjudged to be "federal financial assistance."

**B.     The Use of The Physical Fitness Center and Soldier Center By Eligible AFS's Employees Does Not Make AFS the Recipient of "Federal Financial Assistance."**

In *Paralyzed Veterans of America, supra,* the Supreme Court held that § 504 protection is triggered only by "receipt" of, and not "benefit" from, federal financial assistance.

> In almost any major federal program, Congress may intend to benefit a large class of persons, yet it may do so by funding -- that is, extending federal financial assistance to -- a limited class of recipients. Section 504 . . . draws the line of federal regulatory coverage between the recipient and the beneficiary.

477 U.S. at 609-10 (airlines that benefited from federal funds provided to airport operators for construction projects were <u>not</u> recipients of federal financial assistance for purposes of §504). Stated another way, "Congress chose to ban employment discrimination against the handicapped [in the Rehabilitation Act], not by all employers,

8

but only by the federal government and *recipients* of federal contracts and grants." *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S. Ct. 1248, 79 L.Ed 2d 568 (1984) (emphasis supplied). The Court has defined "recipient" for the purposes of §504 as the entity that received the money or other thing of value extended by the grant statute. *Paralyzed Veterans of America,* 477 U.S. at 607, n. 11.

In the present case, AFS is, at most, a "beneficiary" of the programs offered by the Physical Fitness Center and Soldier Center, just as the airlines were "beneficiaries" of the funding provided to airports. Eligible employees of AFS and other contractors at Fort Rucker, along with the soldiers and airmen stationed there, benefit from these facilities and their programs, but even those individuals are not "recipients" of federal financial assistance. They, too, are "beneficiaries."[2] AFS, as the employer of some of these individual beneficiaries, is one step further removed from being a "recipient" of "federal financial assistance" than its employees. AFS is an indirect beneficiary because its employees are presumably more physically fit and knowledgeable due to these facilities and programs, but AFS is not the "recipient" of any direct remuneration from the Government because of them.

An analogous situation was presented in *Foss v. City of Chicago,* 817 F.2d 34 (7th Cir. 1987). There, a fireman argued that his fire department was subject to

---

[2] Contrary to Plaintiff's assertion, not all AFS employees are eligible to use the Soldier Center at Ft. Rucker. Only those employees "with a military connection," e.g., retired military or reservists, may use the Soldier Center. AFS involves the Center in its "health and wellness days" so that eligible AFS employees are aware of the Center's programs and can avail themselves of the opportunities open to them. (Whelan Dep. (Plf.'s Exh. D), 34:10 – 38:15).

9

§504 because its decision not to rehire him denied him the benefit of a federal death benefit and a Fire Academy training program. The two programs were admittedly federally funded. The District Court dismissed the complaint on the grounds that the fire department was not the "recipient" of federal financial assistance under either program. It found that the death benefit program paid benefits directly to, and was clearly directed to, individual firefighters and others, not the fire department as a whole. As to the Fire Academy training program, the court found that the individual firefighter was the "recipient" of that training; the fire department was merely a beneficiary thereof. The court granted the Fire Department's motion to dismiss. On appeal, the Seventh Circuit affirmed the dismissal and adopted the District Judge's opinion as its own. (*Id.* at 35).

In summary, AFS is, at most, an indirect beneficiary of the programs offered by Fort Rucker's Physical Fitness Center and Soldier Center in that those programs benefit the health and well-being of some of AFS's employees. However, neither the employees, nor AFS, are the "recipients" of federal financial assistance for purposes of §504.

    **C.    The Training Afforded AFS's Employees Under its Contract With The Government Does Not Constitute "Federal Financial Assistance" For Purposes of § 504.**

Plaintiff argues that the training AFS employees receive that is provided by or paid for by the Government, e.g., lean management, new equipment and hazardous material training, is "federal financial assistance" because it is "outside the terms of the

10

'procurement contract'" and of benefit to AFS "in future endeavors." (Plf.'s Brief, p. 13). Plaintiff is simply wrong in his claim that this training is "outside the ...contract."

The contract between the Government and AFS expressly provides that "[t]he Government will, when required, provide NET [New Equipment Training] to the Contractor [AFS] for the maintenance of new equipment introduced which the Contractor is required to support." (Hamlin Aff. (Def.'s Exh. A), p. 5, §C.10.3 of attachment thereto; Hamlin Dep. in *Bennett* (Plf.'s Exh. B), 55:3 – 57:7). Under this provision, AFS employees have been trained on a variety of "new equipment," e.g., new models of the Black Hawk and Chinook helicopters, specialized equipment for environmental (haz-mat) training purposes, and new computer programs including hardware and software. (Hamlin Dep. in *Bennett* (Plf.'s Exh. B), 55:3 – 57:7).

Training and travel costs for new programs that the Government desires AFS to do, such as "lean management," is also permitted under the Federal Acquisition Regulations ("FAR"). (FAR 31.205-44 & 46 (copies attached); Hamlin Dep. in *Bennett* (Plf.'s Exh. B), 41:15-21; Hamlin Dep. in *Bennett* (Def.'s Exh. F, 121:12 – 122: 20). In fact, the contract *dictates* that "[t]he contractor shall implement improvement initiatives and streamlining techniques utilizing tools, such as 'lean thinking.' . . .." (Hamlin Supp. Aff. (Def. Exh. H), §§ 3 & 4 and attachment, p. 5, § C.9.22). "Lean management" is, as Mr. Hamlin has explained, "primarily a process to reduce waste, to become more efficient, more productive in the work place." (Hamlin Dep. in *Bennett* (Plf.'s Exh. D),

11

41:22 – 42:2). It's an "all employee philosophy, from the senior person in the company to the hourly employees." (*Id., 42:3 – 7*). AFS and Government employees have received lean management training from "several organizations, " including "subcontractors, … some Government employees and AFS employees…." (*Id.*, 42: 13:18). The training of AFS personnel has benefited the Government as well as AFS. (Hamlin Dep. in *Bennett* (Def.'s Exh. F), p. 122: 4–8).

The lean management training funded by the Government was a means to an end. While it benefited AFS, the Government is the ultimate beneficiary by enabling AFS managers and employees to become more efficient to save on costs. AFS was directed by the Government in its contract to undertake "lean thinking." The reimbursement of AFS's costs for such training was authorized under Federal Acquisition Regulations. It was not a "subsidy" to AFS, nor has Plaintiff produced any evidence that it was intended by the Government to be a subsidy. *Shotz,* 420 F.3d at 1335.

**D.    AFS's Mandated Use of Government-owned Real and Personal Property at Fort Rucker Is Not "Federal Financial Assistance" for purposes of § 504.**

Finally, Plaintiff argues that AFS's use of the Government's real property and personal property at Fort Rucker constitutes a "loan" of such property amounting to federal financial assistance. (Plf.'s Brief, pp. 15 & 18). Plaintiff cites no authority in support of her argument. Perhaps that is because the only authority that the undersigned

has discovered in which that argument was made supports AFS's position that the use of such property does not constitute federal financial assistance. In *Mass v. Martin Marietta Corp., supra,* the plaintiff argued that employer Martin Marietta used "government equipment in manufacturing goods furnished to the government" under its federal contracts. 805 F. Supp. at 1542. The District Judge responded to this argument by stating as follows:

> I find no authority that either payment pursuant to a contract or use of government-owned property (or both together) constitute "federal financial assistance." I find this evidence wholly insufficient to support the conclusion that the government intended to subsidize defendant. No reasonable jury could conclude that Defendant receives financial assistance. (citation omitted). *Id.*

In the case at bar, the Government's Request for Proposals and resulting contract *dictate* that the Government will furnish the Contractor with, among other things:

- "[T] materials, supplies, equipment, machinery, tools specified in the exhibits." (Hamlin Aff., (Def.'s Exh. A), § C.10.1 at p. 5 of the attachment thereto).

- "[E]xisting aircraft maintenance facilities . . .." (*Id.,* § C.10.1.1, p. 5, & Attach. 10, pp. 12-13).

- "[V]ehicles for official use by Contractor." (*Id.,* § C.10.1.2, p. 5, & Attach. 11, pp. 14-17.

However, AFS does not have unrestricted use of the Government's property. For example, one limitation on AFS's use of the property is that "Government-owned vehicles shall not be used to transport contractor employees between their houses and

13

places of employment or for any personal benefit or use." (*Id.*, § C.10.1.2, p. 5). Another is that AFS is prohibited from using the Government's facilities or equipment to support other contracts without the permission of the contracting officer. (Hamlin Dep. in *Bennett* (Def.'s Exh. F), 39:7-10).

Thus, there is no "loan" of the Government's real or personal property to AFS, as Plaintiff argues. There are limitations on AFS's use of the Government's property. AFS can not use the Government's property as it wishes so long as it returns the property at the end of the contract term to the Government, as would be the case in a "loan". The situation is analogous to that of a homeowner who allows a servant to use the homeowner's vacuum cleaner and other tools to maintain her house. The servant has the use of the homeowner's real and personal property, but there is no "loan" involved.

The Department of Defense's regulations require that any recipient of "federal financial assistance" execute a form assuring DoD that their programs or activities will comply with its regulations implementing § 504. 32 CFR § 56.9(b). Significantly, Plaintiff has not produced any such form here. That is because AFS's use of the Government's facilities and equipment at Ft. Rucker is not considered to be "federal financial assistance" for purposes of § 504. Rather, it is a mandate of the contract with which AFS must comply.

14

## CONCLUSION

Plaintiff has failed to produce substantial evidence that the Government intended to give AFS a "subsidy" when it required AFS, as the successful bidder, to use the Government's facilities and equipment to maintain the military's helicopters at Ft. Rucker. *Shotz*, 420 F.3d at 1335. Plaintiff has not proved that either the EEOC's seminars and responses to AFS, the use of the Physical Fitness Center or Soldier Center by eligible AFS employees, the training provided by the Government to AFS personnel, or the mandated use of Government-owned facilities and equipment at Fort Rucker are intended by the Government to be a "subsidy" to AFS. Thus, Plaintiff is limited to her remedies against AFS under § 503 of the Rehabilitation Act and the Americans With Disabilities Act. She cannot pursue a private cause of action against AFS under § 504.

Accordingly, AFS's motion for summary judgment is due to be granted.

Respectfully submitted,

ARMBRECHT JACKSON LLP
Post Office Box 290
Mobile, Alabama 36601
Phone:      (251) 405-1302
Facsimile:  (251) 432-6843


By___/s/ Kirk C. Shaw (SHAW0466)_____

Attorney for Army Fleet Support LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Jimmy Jacobs, LLC
4137 Carmichael Road, Suite 100
Montgomery, AL 36106

/s/ Kirk C. Shaw (SHAWK0466)