IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAULA F. DEFRANK,                     )
                                      )
                Plaintiff,            )
                                      )
        v.                            )       CASE NO. 1:07-CV-775-WKW [WO]
                                      )
ARMY FLEET SUPPORT, L.L.C.,           )
                                      )
                Defendant.            )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Paula F. DeFrank ("DeFrank") sued Army Fleet Support ("AFS") for

violations of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701-718,

and state-law fraud and deceit.  (Compl. Counts One & Two (Doc. # 1).)  AFS moved for

summary judgment against DeFrank on the federal claim, and requested that the remaining

state-law claim be dismissed pursuant to 28 U.S.C. § 1367(c)(3).[1] (Doc. # 21, at 1.)  DeFrank

filed a response opposing summary judgment (Resp. (Doc. # 24)), to which AFS replied

(Reply (Doc. # 29)).  Based upon careful consideration of the arguments of counsel, the

relevant law and the record as a whole, AFS's motion for summary judgment (Doc. # 21) is

due to be granted, and the state-law claim is due to be dismissed pursuant to § 1367(c)(3).

---

[1] A district court may decline to exercise supplemental jurisdiction over state-law claims if it has
dismissed the claims over which it has original jurisdiction.  § 1367(c)(3).

## I.  JURISDICTION

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1367(a). The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

DeFrank filed suit on August 28, 2007, alleging that when she was working for AFS at Fort Rucker, Alabama, AFS impermissibly discriminated against her by refusing to accommodate for her disability, and retaliated against her for pursuing her rights.  (Compl. ¶¶ 22-25.)  She filed this claim pursuant to § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).  She also alleges AFS induced her through misrepresentations to forego applying for unemployment benefits for which she was entitled, in violation of Ala. Code §§ 6-5-100-104.  (Compl. ¶¶ 26-32.)

AFS moves for summary judgment on the ground that DeFrank has no federal claim under § 504.  AFS argues that because it is a federal contractor, the remedy for this type of discrimination is under § 503 of the Rehabilitation Act, 29 U.S.C. § 793(a), and § 503 does not provide for a private right of action.  (Mem. Supp. Mot. Summ. J. 23 (Doc. # 23).)  AFS also argues that it does not otherwise fall under § 504.  (Mem. 18-25.)  In response, DeFrank avers that AFS is subject to suit under § 504 even though it is a federal contractor.  (*See* Resp. 10-11.)  The following facts are those relevant to this threshold issue alone – whether DeFrank can sue AFS under § 504.

At all relevant times during DeFrank's active employment, AFS had a contract with the United States Army Aviation and Missile Command ("Government") to provide aircraft maintenance and logistical support to the flight training programs at Fort Rucker.[2]  The contract was awarded through a competitive bidding process.  It was a "cost-plus" contract, meaning the Government reimbursed AFS for its costs plus an agreed-upon percentage of savings below the targeted costs, and AFS had the opportunity for performance-based incentive fees.  The terms of the contract required that "[a]ll work [would] be performed in government furnished facilities at Fort Rucker, Alabama, and other locations as required." (John L. Hamlin Aff. ¶ 7 & Work Statement § C.1 (Evidentiary Submission Ex. A (Doc. # 22)).)  The Government would "furnish the materials, supplies, equipment, machinery, [and] tools specified in the exhibits," (Hamlin Aff. ¶ 7 & Worksheet § C.10.1 (Evidentiary Submission Ex. A)), and it would provide "New Equipment Training" ("NET training") "for the maintenance of new equipment" (Work Statement § C.10.3 (Evidentiary Submission Ex. A)).  The contract also required AFS to "implement improvement initiatives and streamlining techniques utilizing tools, such as 'lean thinking.'"  (Work Statement § C.9.22 (Reply Ex. G).)

DeFrank claims AFS also received "training and technical assistance provided by employees of the Equal Employment Opportunity Commission ["EEOC"] approximately two

---

[2] Record citations will only be provided for disputed or unclear facts.  The facts will be presented in the light most favorable to DeFrank.

times per year" and that the training was provided free of charge.[3]  (Resp. ¶¶ 4-5.)  There is

also evidence that AFS works with the Government personnel through the Soldier Center

("Center") at Fort Rucker on AFS's health and wellness days.[4]  (Resp. ¶ 6.)  The other

benefits DeFrank claims AFS receives are access to the fitness centers on Fort Rucker, rent-

free use of property like aircraft hangers, access to the Government's library materials, a

"loan" of Government equipment, and Government maintenance on and products for AFS

vehicles.[5]  (Resp. ¶¶ 7-15.)  It is these facts that resolve the threshold issue of whether

DeFrank can maintain a cause of action under § 504.

---

[3] DeFrank relies on the deposition of Amelia Darlene Whelan ("Whelan") in another case.  The
referenced exchange is ambiguous:

Q:      Was AFS charged for seminars provided by the [EEOC]?
A:      No.  That's a free service they provide to every one.

(Whelan Dep. 54, June 20, 2007, *Bennett v. Army Fleet Support, LLC* (Resp. Ex. D).)  It is unclear
whether "every one" means every AFS employee, or all federal employees, or some larger subcategory.
It is not clear based on this briefing whether all federal agencies and departments receive free training,
whether all federal contractor employees receive free training, or whether everyone receives free training.

[4] According to AFS, Whelan's deposition shows that the Center's support is only offered to those
with a military connection.  (Reply 9 n.2.)  It is not clear from the deposition, however, whether Whelan
was stating that the Center training was *limited* to only those AFS employees with a military connection,
or was simply noting that AFS has many employees with a military connection.  (*See* Whelan *Bennett*
Dep. 32-36.)  Hamlin stated in his deposition in another case that classes taught through the Center were
available to all *active* duty Government employees, but the rest of his sentence is not provided as part of
the exhibit (Hamlin Dep. 59, June 21, 2007, *Bennett v. Army Fleet Support, LLC* (Resp. Ex. B)), and not
otherwise referenced by AFS.

[5] AFS does not dispute these facts but disputes how they are characterized, which will be
addressed in the Discussion section *infra*.

## III.  STATUTORY BACKGROUND

"Section 504 of the Rehabilitation Act [] prohibits discrimination against handicapped persons in any program or activity receiving federal financial assistance."[6]  *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986) [hereinafter *PVA*]. Implicated in this case is the meaning of two phrases: (1) "[f]ederal financial assistance"; and (2) "[f]ederal program or activity receiving" that assistance, 29 U.S.C. § 794(a).

The Rehabilitation Act does not define "[f]ederal financial assistance," but the Eleventh Circuit has followed other courts' definition of federal financial assistance as "a subsidy to an entity."  *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005).[7]

---

[6] Section 504 states in relevant part:

a) Promulgation of rules and regulations

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.  Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

29 U.S.C. § 794(a).

[7] In *Jones v. Metropolitan Atlanta Rapid Transit Authority*, 681 F.2d 1376 (11th Cir. 1982), the Eleventh Circuit held that § 504 "[o]n its face . . . applies to programs receiving federal financial aid of *any kind*," *id.* at 1379 (emphasis added), but it still must be federal financial assistance as limited by *Shotz*, 420 F.3d 1332.  In other words, regardless of the *kind* of federal financial assistance, the aid must be in the form of a subsidy.  Furthermore, the holding in *Jones* was in the context of whether § 504 was limited to programs receiving assistance for the "primary purpose of providing employment."  *Jones*, 681 F.2d at 1379.

Thus, "when the federal government makes payments for obligations incurred *as a market participant* such payments do not constitute 'federal assistance.'" *Arline v. Sch. Bd.*, 772 F.2d 759 (11th Cir. 1985) (emphasis added).  To determine whether what an entity receives is a subsidy, as opposed to something falling outside of § 504, such as compensation, the ultimate question is "'whether Congress intended for this type of assistance to trigger the coverage of § 504.'"  *Shotz*, 420 F.3d at 1336 (quoting *Delmonte v. Dep't of Bus. & Prof'l Regulation*, 877 F. Supp. 1563, 1565 (S.D. Fla. 1995)) (noting that although the question is whether Congress intended a subsidy, the question is reducible to whether Congress, through the act in that case providing funds, intended to trigger § 504).  Thus, even if an entity is the "direct recipient[] of funds and financial benefits," that aid is not "automatically" federal financial assistance.  *Id.* at 1336 n.1.  Congress must have intended for that assistance to be a subsidy that would subject recipients to the Rehabilitation Act's provisions.  *Id.*  Whether assistance is a qualifying subsidy depends on the statute or rule providing for the funds or other provision.  Another way to discern whether aid is federal financial assistance is to determine whether the recipients submitted to the relevant federal agency "written, executed assurances" that they would comply with the Rehabilitation Act, as usually required by Congress.  *Id.* at 1337; *see* 49 C.F.R. § 27.9(a) (requiring applicants for federal financial assistance to provide such written assurances).

The federal financial assistance also must have been received by a "program or activity" to qualify under § 504.  In *PVA*, 477 U.S. 597, the Supreme Court expounded on the meaning of receiving federal financial assistance.  "The statute covers those who *receive*

6

the aid, but does not extend as far as those who *benefit* from it." *Id.* at 607 (emphases added). "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *Id.* at 605. It is the receipt of funds that "triggers" the Rehabilitation Act provision because "Congress imposes the obligations of § 504 upon those who are in a position to accept or reject those obligations as part of a decision whether or not to 'receive' federal funds." *Id.* at 605-06. In other words, grantees of the funds paid the "'costs of providing employment for the handicapped as a *quid pro quo* for the receipt of federal funds.'"[8] *Id.* at 605 (quoting *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 633 n.13 (1984)). The Court declined to extend § 504's coverage to "those whom Congress specifically intended to benefit," *id.* at 609, or to those who would qualify by virtue of being "inextricably intertwined" with an institution that received federal financial assistance, *id.* at 610. Additionally, activities "being wholly owned by, and operated by or for, the United States" do not receive federal financial assistance under the Rehabilitation Act. *Id.* at 612 (internal quotation marks and citation omitted).

The Department of Defense ("DOD") has enacted specific regulations to prohibit discrimination under the Rehabilitation Act in "programs and activities disbursed and conducted by the [DOD]." *Smith v. Christian*, 763 F.2d 1322, 1325 (11th Cir. 1985) (per curiam) (citing 32 C.F.R. § 56.1 (1984)). The Eleventh Circuit in the past found this list of

---

[8] Contractors paid that cost as well, *PVA*, 477 U.S. at 605, but in exchange for contracts with agreed-upon provisions to be bound to the Rehabilitation Act, § 503; *see* discussion *infra*.

programs and activities to be "an extensive and exhaustive list of [DOD] activities subject to the Rehabilitation Act," *id.* In *Smith*, the list omitted any mention of the program at issue (one related to procuring military personnel), confirming the court's conclusion that it was not covered under § 504. *Id.*

     If AFS is a program or activity receiving federal financial assistance, DeFrank has an implied private right of action under § 504. *See, e.g.*, *Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1377 n.1 (11th Cir. 1982). If DeFrank cannot sue under § 504, however, she has no available remedy under § 503. First, DeFrank has not sued under § 503, but second, there is no private right of action under § 503, *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1078 (5th Cir. 1980).[9] Section 503 requires that any contract in excess of $10,000 between a federal department or agency "for the procurement of personal property or nonpersonal services (including construction) for the United States shall contain a provision requiring that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a). Under that provision, "[i]f an individual with a disability believes any contractor has failed or refused to comply with the provisions of a contract with the United States, relating to employment of individuals with disabilities," her remedy is limited to administrative enforcement by the Department of Labor. 29 U.S.C. § 793(b); *accord Rogers*, 611 F.2d at 1078, 1084.

---

[9] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

## IV.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10]  Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Rule 56(e)(2).  To avoid summary judgment, the non-moving party "must do more than

---

[10] AFS suggests in its brief that the court could "address" its motion under the standard for a motion to dismiss instead (Mot. 12 n.1), which the court declines to do.  Nor is a subject-matter jurisdictional challenge appropriate.  *See Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981) ("[A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action.  The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.") (discussing *Bell v. Hood*, 327 U.S. 678 (1945)); *see also, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (relying on *Williamson*).

simply show that there is some metaphysical doubt as the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## V.  DISCUSSION

DeFrank has no cause of action under § 504 of the Rehabilitation Act.  She has failed to show how any of the alleged aid AFS receives from the Government is the receipt of assistance for AFS programs and activities intended to trigger § 504.  The alleged programs or activities are addressed in turn.

DeFrank has not alleged sufficient facts to support a claim that the EEOC training services were provided only to AFS free of charge.  There is also no evidence that the provision of EEOC training functioned as a subsidy, let alone a subsidy that AFS received, rather than one from which it benefitted.  As AFS argues in its reply, "[t]here is no evidence that Congress intended, by authorizing the EEOC to provide seminars and counseling to the public, to require *every employer* [that] avail[s] [itself] of such opportunities to be subject to § 504."  (Reply 8.)  This argument seems particularly correct considering that the list of

10

programs and activities the DOD recognizes under its regulations as those for which the

Rehabilitation Act applies does not include EEOC training.  *See* 32 C.F.R. § 56.7.[11]

Nor is AFS the recipient of a subsidy because of the Center's contribution to health

and wellness services.  AFS's *employees* may have received or benefitted from those

services, but AFS itself is not the recipient of them.  (*See* Reply ¶ 9.)  In fact, AFS is one step

removed from the employees, whether they are deemed recipients or beneficiaries.  Even

DeFrank acknowledges that these services were outside the contract with AFS.  (Resp. ¶ 6.)

There is no evidence that *AFS* received federal financial assistance through a subsidy from

the Center.  At most, AFS's employees *individually* benefitted from the services the Center

directly extended to them.[12]

The remaining assistance DeFrank claims AFS received – ostensibly as "subsidies"

– were part and parcel to the contract.  The contract required NET training, including for

Black Hawk helicopters (*see* Resp. ¶ 11), and the Government required that assistance *for

the purpose of* accomplishing the ends of the contract to the Government's benefit.  (Work

Statement § C.10.3 (Evidentiary Submission Ex. A) ("The Government will, when required,

provide NET to the Contractor for the maintenance of new equipment introduced which the

Contractor is required to support.").)  It was not a form of subsidy *to* AFS.  Lean

---

[11] Of course, just because the regulation does not list the EEOC training as a program or activity does not mean that the training fails to fit the statute's definition, but the absence from the regulations "underscore[s]" the conclusion that the EEOC training does not fall under § 504.  *Smith*, 763 F.2d at 1325.

[12] This same argument applies to the use of the Center's fitness facilities – AFS's *employees* are beneficiaries of that provision, but AFS is not receiving a subsidy from the Center on account of the facility's availability.

management training or some similar type of streamlining technique was also required, but again, it was the *Government* that had the incentive to provide the service to AFS.[13] Furthermore, the Federal Acquisition Regulations ("FAR Regulations")[14] prescribe the allowable costs in contracts between the Government and commercial organizations, 48 C.F.R. § 31.205, and those regulations evidence no intent on the part of the regulatory authorities that the training sessions at issue here were *subsidies*.[15]   The FAR Regulations permit contract costs to include "[c]osts of training and education that are related to the field in which the employee is working or may reasonably be expected to work," but explicitly prohibit allowing costs that more closely resemble subsidies instead of costs.[16]  48 C.F.R. 31.205-44.[17]  DeFrank has not shown that the training available to DOD is outside the cost

---

[13] Lean management is "a process to reduce waste, to become more efficient, [and] more productive in the work place," (Hamlin *Bennett* Dep. 41-42), goals that are clearly to the Government's benefit, and is a means for the Government to oversee its contract (Hamlin *Bennett* Dep. 122 (Reply Ex. F)).

[14] The FAR Regulations are also available at: http://www.acquisition.gov/far/current/pdf/FAR.pdf.

[15] The Federal Acquisition Regulations System, which is issued under the joint authorities of the Administrator of General Services, the Secretary of Defense, and the Administrator for the National Aeronautics and Space Administration, "consists of the Federal Acquisition Regulation (FAR), which is the primary document, and agency acquisition regulations that implement or supplement the FAR."  48 C.F.R. 1.101.  Part 31.000 of the FAR Regulations "contains cost principles and procedures" for pricing contracts and the allowance of costs in contract provisions.  48 C.F.R. § 31.000.

[16] Section 31.205 "does not cover every element of cost," and if the cost is not included in that section, it may or may not be allowed.  48 C.F.R. § 31.204.

[17] What the regulation specifically prohibits from allowable costs is: overtime compensation for training and education; the costs of salaries for those attending school during work hours; costs of tuition and other fees in certain circumstances; grants to educational or training institutions; training or education costs for other than bona fide employees; and contractor contributions to savings plans.  48 C.F.R. 31.205-44.

to DOD under its contract.  In fact, the it appears to provide the Government with a means to reduce costs by properly training contractual party's employees.

Finally, DeFrank's characterization of the arrangement between the Government and AFS for the use of the Government's equipment as a "loan" is conclusory.[18]  As AFS states, and no evidence contradicts it, AFS does not have unrestricted use of the Government's property.  (Reply 13.)  For example, the contract prohibits the use of Government-owned vehicles "to transport contractor employees between their homes and places of employment or for any personal business or benefit."  (Work Statement § C.10.1.2 (Evidentiary Submission Ex. A).)  Nor does AFS have the option to buy or keep the equipment past the duration of the contract.  (*See* Hamlin Aff. ¶ 7.)  Additionally, under a cost-plus contract, the Government benefits from reducing the cost a contractor can charge for its services, and one way to reduce that cost is to provide the equipment for the designated project.  (*See* Mem. 22 & Hamlin Aff. ¶ 10.)  The equipment the Government provides under the terms of the contract is not a subsidy but a cost that the Government internalizes, arguably to save the Government money.[19]  The same can be said for the facilities the Government provides for AFS to fulfill its contractual obligations.

---

[18] DeFrank also points to the free Government publications and library services AFS receives. DeFrank has not shown that those publications would actually cost a non-AFS entity any money to access.  Even if AFS did receive these services free and other entities did not, however, DeFrank has not shown how the provisions of those materials signals an intent to trigger § 504 of the Rehabilitation Act, *i.e.*, by using the language "program or activity."

[19] As an additional relevant note, DeFrank referenced no written assurances from AFS that it would comply with the Rehabilitation Act as a program or activity receiving federal financial assistance. *See Shotz*, 420 F.3d at 1337; *see* 49 C.F.R. § 27.9(a) (regarding written assurances).

DeFrank has failed to show how any of the programs or activities it claims AFS receives from the Government triggers the applicability of § 504. Accordingly the federal claim is due to be dismissed. The state-law claim also may be dismissed because supplemental jurisdiction is discretionary, § 1367(c)(3).

## VI. CONCLUSION

Accordingly, it is ORDERED that:

(1)     The motion for summary judgment (Doc. # 21) is GRANTED as to the federal claim; and

(2)     The remaining state-law claim (Doc. # 1) is DISMISSED pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate judgment will be entered.

DONE this 20th day of March, 2009.

        /s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

14